# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LOGAN LANDES and JAMES GODDARD, individually and on behalf of all others similarly situated,**<br><br>       **Plaintiffs,**<br><br>   **v.**<br><br>**SONY MOBILE COMMUNICATIONS (U.S.A.), INC. and SONY ELECTRONICS, INC.,**<br><br>     **Defendants.** | **Case No. 2:17-cv-2264--JFB-SIL** |

## <u>SETTLEMENT AGREEMENT</u>

## TABLE OF CONTENTS

**Page**

I.      PROCEDURAL HISTORY ................................................................................. 3

II.     DEFINITIONS .................................................................................................... 4

III.    SETTLEMENT RELIEF ................................................................................... 8

IV.     NOTICE TO THE CLASS ............................................................................... 14

V.      REQUESTS FOR EXCLUSION ..................................................................... 19

VI.     OBJECTIONS TO SETTLEMENT ................................................................ 20

VII.    RELEASE AND WAIVER .............................................................................. 22

VIII.   ATTORNEYS' FEES, COSTS, AND EXPENSES AND NAMED PLAINTIFFS
        AWARDS ......................................................................................................... 26

IX.     PRELIMINARY APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT
        AND RELATED ORDERS .............................................................................. 27

X.      MODIFICATION OR TERMINATION OF THIS AGREEMENT ................ 30

XI.     GENERAL MATTERS AND RESERVATIONS ............................................ 33

**TABLE OF EXHIBITS**

| **Document** | **Exhibit Number** |
|---|---|
| Final Judgment | 1 |
| Final Order | 2 |
| In-Database Claim Form | 3 |
| Long Form Notice | 4 |
| List of Mobile Devices | 5 |
| Preliminary Approval Order | 6 |
| Short Form Notice | 7 |
| Standard Claim Form | 8 |
| MSRP Chart for Mobile Devices | 9 |
| Notification Letter | 10 |
| Settlement Notice Administrator's Declaration | 11 |

**WHEREAS**, Plaintiffs allege, among other things, that Sony (as defined below) designed, manufactured, distributed, advertised and sold certain Mobile Devices that were alleged to be misrepresented as "waterproof;"

**WHEREAS**, Plaintiffs are represented by Levi & Korsinsky LLP;

**WHEREAS**, Plaintiffs, on behalf of the classes, allege that certain Sony smartphones and tablets are deceptively advertised as waterproof, but are, in fact, "not waterproof and are not designed for or capable of ordinary underwater use;" *See* Complaint ¶ 1.

**WHEREAS**, Plaintiffs, on behalf of the classes, further allege that "Sony exploited certain international water resistance ratings in order to launch a deceptive marketing campaign promoting the Devices" and cite to numerous advertisements and other marketing; *Id*. ¶¶ 14, 19-60;

**WHEREAS**, Plaintiffs seek certification of a nationwide class of all persons who purchased the devices as well as Illinois and California subclasses, excluding certain persons and entities who/which, by way of example, purchased the devices for resale; *Id*. ¶¶ 61-72;

**WHEREAS**, Sony denies any and all liability;

**WHEREAS**, as a result of extensive arm's length negotiations as well as mediation sessions conducted by Patrick A. Juneau, Named Plaintiffs, Plaintiffs' Class Counsel (all terms as defined below) and Sony have entered into this Agreement;

**WHEREAS**, Plaintiffs' Class Counsel have conducted substantial discovery, have investigated the facts and underlying events relating to the subject matter of the claims, have carefully analyzed the applicable legal principles, and have concluded, based upon their investigation, and taking into account the risks, uncertainties, burdens and costs of further prosecution of their claims, as well as having evaluated the strengths and weaknesses of Named

Plaintiffs' claims and Sony's defenses, and taking into account the substantial benefits to be received pursuant to this Agreement as set forth below, which, in the view of the Named Plaintiffs and Plaintiffs' Class Counsel, is designed for the purpose of putting to rest all controversies with Sony that were or could have been alleged relating to the Action, and that a resolution and compromise on the terms set forth herein is fair, reasonable, adequate, and in the best interests of the Plaintiffs, Named Plaintiffs and the Class;

**WHEREAS**, Sony, for the purpose of avoiding burden, expense, risk, and uncertainty of continuing to litigate the claims, and for the purpose of putting to rest all controversies with Plaintiffs, Named Plaintiffs, the Class, and/or the Action that were or could have been alleged relating to the Action, and without any admission of liability or wrongdoing, desires to enter into this Agreement;

**WHEREAS**, Plaintiffs' Class Counsel represent and warrant that they are fully authorized to enter into this Agreement on behalf of Named Plaintiffs and the Class, and that Plaintiffs' Class Counsel have consulted with and confirmed that all Named Plaintiffs fully support this Agreement; and

**WHEREAS**, it is agreed that this Agreement shall not be deemed or construed to be an admission, concession, or evidence of any violation of any federal, state, or local statute, regulation, rule, or other law, or principle of common law or equity, or of any liability or wrongdoing whatsoever, by Sony or any of the Released Parties (as defined below), or of the truth or validity of any of the claims that Named Plaintiffs have asserted;

**NOW, THEREFORE**, without any admission or concession by Named Plaintiffs or Plaintiffs' Class Counsel of any lack of merit to their allegations and claims, and without any admission or concession by Sony of any liability or wrongdoing or lack of merit in its defenses,

in consideration of the mutual covenants and terms contained herein, and subject to the final approval of the Court, Named Plaintiffs, Plaintiffs' Class Counsel, and Sony agree as follows:

## I.    PROCEDURAL HISTORY

A.    On January 13, 2016, Named Plaintiffs served a demand letter pursuant to California Civil Code § 1782 and other applicable laws on Sony.

B.    On March 29, 2016, pursuant to confidentiality agreement between the Parties, Plaintiffs served document requests on Sony.

C.    Plaintiffs' Class Counsel have reviewed over 11,000 documents produced by Sony.

D.    Plaintiffs' Class Counsel has conferred with a damages expert concerning the potential damages that relate to the claims in their complaint.

E.    As part of extensive arm's length negotiations, Patrick A. Juneau conducted mediation sessions with Plaintiffs' Class Counsel and Sony.

F.    Plaintiffs' Class Counsel conducted an interview of Anders Grynge, Director of Sony Customer Services for the Americas, on December 4, 2016.

G.    On April 14, 2017, Plaintiffs Logan Landes and James Goddard filed a class action complaint in *Landes et al. v. Sony Mobile Communications (U.S.A.), Inc. and Sony Electronics Inc.,* No. 2:17-cv-2264-JFB-SIL (United States District Court for the Eastern District of New York) alleging, among other things, that Sony (as defined below) designed, manufactured, distributed, advertised and sold certain Mobile Devices that were alleged to be misrepresented as "waterproof."

## II.   <u>DEFINITIONS</u>

A.     As used in this Agreement and the attached exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference), the following terms have the following meanings, unless this Agreement specifically provides otherwise:

1.     "Action" means Landes et al. v. Sony Mobile Communications (U.S.A.), Inc. and Sony Electronics, Inc., No. 2:17-cv-2264-JFB-SIL (E.D.N.Y.).

2.     "Agreement" or "Settlement Agreement" means this Settlement Agreement and the exhibits attached hereto or incorporated herein, including any subsequent amendments and any exhibits to such amendments, which are the settlement (the "Settlement").

3.     "Attorneys' Fees, Costs, and Expenses" means such funds as may be approved by the Court to compensate Plaintiffs' Class Counsel who claim to have assisted in conferring the benefits upon the Class under this Settlement for their fees and expenses incurred and to be incurred by Plaintiffs' Class Counsel in connection with the Action and the Settlement, as described in Section VIII of this Agreement.

4.     "Claim" means the claim of a Class Member or his or her or its representative submitted on an In-Database Claim Form or a Standard Claim Form for prior water-related warranty rejections, as provided in Section III.C of this Agreement.

5.     "Claimant" means a Class Member who has submitted a Claim.

6.     "Claim Period" means the time period in which Class Members may submit a Claim Form for review to the Class Action Settlement Administrator.  The Claim Period shall run from the date of initial notice to the Class to sixty (60) days after the date of the Fairness Hearing.  The expiration of the Claim Period shall be specified in the Short Form Notice, Long Form Notice, and on the settlement website.

7.     "Claim Process" means the process for submitting and reviewing Claims described in this Agreement.

8.     "Class" means, for settlement purposes only, all persons, entities or organizations who, at any time as of or before the entry of the preliminary approval order, purchased, own(ed), received as a gift or received as a customer service exchange the Mobile Devices manufactured, marketed, sold and/or distributed by Sony Mobile Communications (USA) Inc. in any of the fifty States, the District of Columbia, and Puerto Rico.  Excluded from the Class are: (a) any persons or entities that purchased or acquired the Mobile Devices for commercial use or resale; (b) any claims aggregators; (c) any person who claims to be an assignee of rights associated with the Mobile Products; (d) Sony Mobile Communications (USA) Inc., its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; (e) Plaintiffs' Class Counsel; (f) judicial officers and their immediate family members and associated court staff assigned to this case; and (g) persons or entities who or which timely and properly exclude themselves from the Class.

9.     "Class Action Settlement Administrator" means the third-party agent or administrator agreed to by the Parties and appointed by the Court to implement the Claims and settlement requirements of this Agreement, subject to the Court's approval.  The Parties agree that Heffler Claims Group shall serve as Class Action Settlement Administrator, subject to approval by the Court.

10.     "Class Member" means a member of the Class.

11.     "Court" means the United States District Court for the Eastern District of New York.

12.     "Fairness Hearing" means the hearing for the purposes of the Court determining whether to approve this Agreement as fair, reasonable, and adequate.

13.     "Final Effective Date" means the latest date on which the Final Order and/or Final Judgment approving this Agreement becomes final.   For purposes of this Agreement:

a.     if no appeal has been taken from the Final Order and/or Final Judgment, "Final Effective Date" means the date on which the time to appeal therefrom has expired; or

b.     if any appeal has been taken from the Final Order and/or Final Judgment, "Final Effective Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing en banc and petitions for certiorari or any other form of review, have been finally disposed of in a manner that affirms the Final Order or Final Judgment; or

c.     subject to Court approval, if Plaintiffs' Class Counsel and Sony agree in writing, the "Final Effective Date" can occur on any other agreed date.

14.     "Final Judgment" means the Court's final judgment as described in Section IX of this Agreement, which is to be substantially in the form attached hereto as Exhibit 1.

15.     "Final Order" means the Court's order approving the Settlement and this Agreement, as described in Section IX of this Agreement, which is to be substantially in the form attached hereto as Exhibit 2.

16.     "In-Database Claim Form" means the document, in substantially the same form as Exhibit 3 attached to this Agreement.

17.     "Long Form Notice" means the Long Form Notice substantially in the form attached hereto as Exhibit 4.

18.     "Mobile Devices" means those Sony products listed on the attached Exhibit 5.

19.     "Named Plaintiffs" or "Plaintiffs" means Logan Landes and James Goddard.

20.     "Notice Program" means the notice program described in Section IV.

21.     "Parties" means Named Plaintiffs and Sony, collectively, as each of those terms is defined in this Agreement.

22.     "Plaintiffs' Class Counsel" means Levi & Korsinsky LLP.

23.     "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the Settlement as outlined in Section IX of this Agreement and to be substantially in the form attached hereto as Exhibit 6.

24.     "Release" means the release and waiver set forth in Section VII of this Agreement and in the Final Judgment and Final Order.

25.     "Released Parties" or "Released Party" means Sony Corporation of America, Sony Mobile Communications AB, Sony Mobile Communications (US) Inc., Sony Electronics Inc., and Sony Corporation of America, and each of their past, present and future parents, predecessors, successors, spin-offs, assigns, holding companies, joint-ventures and joint-venturers, partnerships and partners, members, divisions, stockholders, bondholders, subsidiaries, related companies, affiliates, officers, directors, employees, associates, dealers, representatives, suppliers, vendors, authorized sellers and re-sellers, advertisers, service providers, distributors and sub-distributors, agents, attorneys, administrators and advisors.  The

Parties expressly acknowledge that each of the foregoing is included as a Released Party even though not identified by name herein.

26. "Settlement Notice Administrator" means the Court-appointed third-party agent or administrator agreed to by the Parties and appointed by the Court to implement the settlement notice and consult on the Notice Program. The Parties agree that Jeanne Finegan of HF Media LLC shall serve as Settlement Notice Administrator, subject to approval by the Court.

27. "Short Form Notice" means the Short Form Notice substantially in the form as attached hereto as Exhibit 7.

28. "Sony" means Sony Mobile Communications (USA) Inc.

29. "Sony's Counsel" means John P. Hooper and Reed Smith LLP.

30. "Standard Claim Form" means the document, in substantially the same form as Exhibit 8 attached to this Agreement.

B. Other capitalized terms used in this Agreement but not defined in this Section II shall have the meanings ascribed to them elsewhere in this Agreement.

C. The terms "he or she" and "his or her" include "it" or "its" where applicable.

## III.   <u>SETTLEMENT RELIEF</u>

In consideration for the dismissal of the Action with prejudice, as contemplated in this Agreement, and for the full and complete Release, Final Judgment and Final Order provided below, Sony agrees to provide the following relief: (1) warranty extension; (2) changes to packaging, labeling and advertising; and (3) claim process relating to prior water-related warranty claim rejections. The relief and costs associated with providing the relief and otherwise implementing the relief specified in Section III of this Agreement shall be paid by Sony.

A.    **Warranty Extension**

1.    Upon the issuance of the Final Order and Final Judgment, Sony agrees to extend the limited warranty for damage resulting from water intrusion: (a) by an additional 12 months for those Mobile Devices where the warranty is still in effect as of the date of the issuance of the Preliminary Approval Order ("Active Warranty Mobile Devices"); and (b) six months for those Mobile Devices that are out-of-warranty as of the date of the issuance of the Preliminary Approval Order ("Expired Warranty Mobile Devices").  For the Active Warranty Mobile Devices, the date for the extension of the warranty shall be measured from the purchase date.  For the Expired Warranty Mobile Devices, the date of the extension shall begin on the date of the issuance of the Final Order and Final Judgment and expire six months thereafter.  All other terms and conditions of the limited warranty, if still in effect, shall apply.  While Sony shall have no obligation to implement the terms of this Section III.A until the occurrence of the Final Effective Date, Sony may, in its discretion, implement all or any part of the settlement relief delineated in this Section III.A prior to the applicable deadlines set forth herein.

2.    Pursuant to this warranty extension, if Sony's water resistance test indicates that there are clear indications of misuse or abuse per its standard protocol for warranty claims, including, but not limited to, the seals and/or flaps were open at the time of damage, of the Mobile Devices, Sony shall have no obligation to repair or replace or otherwise fix the Mobile Devices.

B.    **Changes to Packaging, Labeling and Advertising**

1.    Within 90 days of the issuance of the Preliminary Approval Order, for the Mobile Devices currently being sold by Sony or any newly-introduced models with IP 65/68 substantiation, Sony shall change its advertising and marketing intended for end users in the

United States relating to "waterproof" or substantially identical terms to "water resistance" or its substantial and/or functional equivalent.  Sony also agrees to notify its third party resellers regarding such advertising changes and the terms of this Settlement Agreement.  In the event that a reseller continues to use the phrase "waterproof" in its advertising or marketing, Sony shall not be responsible for such action or inaction.  Within 90 days of the issuance of the Preliminary Approval Order, Sony shall provide advance copies of representative samples of advertising or marketing changes to Plaintiffs' Class Counsel for their review and comment, which will be similar in substance to materials already provided to Plaintiffs' Class Counsel.  The changes required by this section shall not apply to the global developer website located at http://developer.sonymobile.com.

      C.        **Claim Process Relating to Prior Water-Related Warranty Claim Rejections**

            1.        **Claim Eligibility**

                  a.      Eligible Class Members, during the Claim Period, may submit Claims provided that Class Members: (i) complete and timely submit In-Database Claim Forms or Standard Claim Forms; (ii) have Claims that are eligible for reimbursement; and (iii) do not opt out of the settlement.  The In-Database Claim Forms or Standard Claim Forms shall be available on the settlement website and can be submitted in either hard-copy or on-line.  In no event shall a Class Member be entitled to more than one payment per Mobile Device for the claims at issue.

                  b.      For Eligible Class Members who previously had timely claims for water-related damages denied by Sony for their in-warranty Mobile Devices, as identified in Sony's records, Sony shall issue a check of 50% of the at-issue Manufacturer's Suggested Retail Price ("MSRP") for the applicable Mobile Device, as indicated in Exhibit 9, to those Class

Members who complete and timely return an In-Database Claim Form during the Claim Period. Once the Class Member goes to the website to complete and submit the In-Database Claim Form, the In-Database Claim Form will be, where available and applicable, prepopulated with information for that particular Class Member, based on information in Sony's database, which may be updated by the Class Member. Class Members in this category shall be sent a notification letter that shall be substantially similar to Exhibit 10 with an In-Database Claim Form that shall be substantially similar to Exhibit 3. The notification letter shall notify the Class Members that they are on the list of persons who previously had submitted a water-related claim that was denied and that they are eligible for relief from this Settlement Agreement, provided they perform several simple tasks in a timely manner. The Claim Form shall require the Class Member to provide basic information, such as confirming or revising their physical address, in order to be sent the settlement relief check. Class Members in this category shall also be sent a copy of the Long Form Notice.

   c. Eligible Class Members who are not in Sony's records as having provided an address or who have a letter or other demonstrative evidence from Sony rejecting their timely in-warranty claim for water intrusion that are not otherwise in Sony's records, may submit, during the Claim Period, Claims for damaged Mobile Devices that were previously submitted to Sony for water intrusion issues for in-warranty Mobile Devices and whose claims for relief were denied by Sony for reasons other than where there are clear indications of misuse or abuse, including, but not limited to, the seals and/or flaps were open at the time of damage, of the Mobile Devices. Class Members must timely complete the Standard Claim Form, attached hereto as Exhibit 8, which will require certain claim response information from Sony. Sony shall issue a check of 50% of the at-issue MSRP for the applicable Mobile Device, as indicated in

Exhibit 9, to those Class Members who complete and timely return a Standard Claim Form during the Claim Period.  If the Claim is rejected for payment, Plaintiffs' Class Counsel and Sony's Counsel may meet and confer in an attempt to resolve these denied Claims, as provided in Section III.C.2.b.ii.

        2.    <u>Claim Review and Processing</u>

        a.    The Class Action Settlement Administrator shall receive and process the Claims, whether submitted electronically via the settlement website or by U.S. Mail, and the Class Action Settlement Administrator shall administer the review and processing of Claims.  The Class Action Settlement Administrator shall have the authority to determine whether In-Database Claim Forms or Standard Claim Forms submitted by Class Members are complete and timely.

        b.    If a Claim is deficient, the Class Action Settlement Administrator shall mail a notice deficiency letter to the Class Member requesting that the Class Member complete the deficiencies and resubmit the In-Database Claim Form or Standard Claim Form within forty-five (45) days of the date of the letter from the Class Action Settlement Administrator.  If the Class Member fails to provide the requested documentation or information, that Claim shall be denied without further processing.  The Class Action Settlement Administrator shall use their best efforts to complete their review of timely and completed In-Database Claim Forms or Standard Claim Forms within ninety (90) days of receipt.  The Class Action Settlement Administrator's review period for submitted In-Database Claim Forms or Standard Claim Forms shall not be required to commence any earlier than sixty (60) days after the occurrence of the Final Effective Date.

i.      If accepted for payment, the Class Action Settlement Administrator shall pay the Claim of the Class Member and shall use its best efforts to pay timely, valid and approved Claims within ninety (90) days after receipt of the Claim, provided however, that this date occurs after the occurrence of the Final Effective Date.  The Class Action Settlement Administrator shall periodically request funds from Sony to pay the approved Claims in advance of the date mentioned in this Section and with sufficient time to allow Sony to obtain and provide the funds to the Class Action Settlement Administrator.

ii.      If the Claim is rejected for payment, the Class Action Settlement Administrator shall notify Plaintiffs' Class Counsel and Sony's Counsel of said rejection of the Class Member's Claim and the reason(s) why.  The decision of the Class Action Settlement Administrator is final, provided however, that Plaintiffs' Class Counsel and Sony's Counsel may meet and confer in an attempt to resolve these denied Claims.  If Plaintiffs' Class Counsel and Sony's Counsel jointly recommend payment of the Claims or payment of a reduced claim amount, then Sony's Counsel shall inform the Class Action Settlement Administrator, who shall instruct Sony to pay said Claims.  If Plaintiffs' Class Counsel and Sony's Counsel disagree, they shall notify the Class Action Settlement Administrator who shall make a final decision as to whether the Claims shall be paid.

3.      The Class Action Settlement Administrator shall timely provide copies of all rejection notices to Plaintiffs' Class Counsel and Sony's Counsel.  Any Class Member whose Claims is rejected for payment shall not receive any payment for the Claim submitted and shall, in all other respects, be bound by the terms of the Settlement Agreement and by the Final Order and Final Judgment entered in the Action, unless such Class Member has submitted a timely request for exclusion pursuant to Section V.

- 13 -

4.      The Class Action Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim Process.  The Class Action Settlement Administrator may, in its discretion, deny, in whole or in part, any Claim to prevent actual or possible fraud and abuse.

5.      No person shall have any claim against Sony, the Class Action Settlement Administrator, the Named Plaintiffs, Plaintiffs' Class Counsel and Sony's Counsel based on any eligibility determinations made in accordance with the Settlement Agreement.

D.      <u>Early Implementation</u>:  Sony may, in its discretion, implement all or any part of the settlement relief delineated in Sections III.A and III.B of this Agreement prior to the applicable deadlines set forth herein.  The obligations detailed in Section III.C of this Agreement shall not be implemented any earlier than the Final Effective Date.

E.      No person shall have any claim against Sony, the Class Action Settlement Administrator, the Settlement Notice Administrator, the Named Plaintiffs, the Class, or Plaintiffs' Class Counsel based on any eligibility determinations made in accordance with the Settlement Agreement.

## IV.      <u>NOTICE TO THE CLASS</u>

A.      **Components and Cost of the Notice Program**

1.      The Notice Program will be accomplished through a combination of the Short Form Notice, notice through the Settlement website, Long Form Notice, and other applicable notice, each of which is described below, as specified in the Preliminary Approval Order, the Declaration of the Settlement Notice Administrator (attached hereto as Exhibit 11), and this Agreement and in order to comply with all applicable laws, including but not limited to, Fed. R. Civ. P. 23, the Due Process Clause of the United States Constitution, and any other applicable

statute, law or rule.  The costs of disseminating the notice and otherwise implementing the notice specified in Section IV of this Agreement shall be paid by Sony.

      B.      **Short Form Notice**

The Settlement Notice Administrator shall cause the publication of the Short Form Notice as described in the Declaration of the Settlement Notice Administrator, and in such additional newspapers, magazines and/or other media outlets as shall be agreed upon by the Parties.  The form of Short Form Notice agreed upon by the Parties is in the form substantially similar to the one attached to the Agreement as Exhibit 7.

      C.      **Internet Website**

The Class Action Settlement Administrator shall establish a Settlement website that will inform Class Members of the terms of this Agreement, their rights, dates and deadlines and related information.  The website shall include, in .pdf format, materials agreed upon by the Parties and/or required by the Court, including, but not limited to, the Long Form Notice, the Settlement Agreement, Frequently Asked Questions and Answers, and Court documents that may be of interest to most Class Members.

      D.      **Long Form Notice**

      1.      The Long Form Notice shall be sent by either U.S. Mail, postage prepaid, or by e-mail by the Class Action Settlement Administrator where addresses are reasonably and readily available to Sony through its own customer registration databases or other such lists as it may possess.  The Class Action Settlement Administrator shall send via first-class mail, the Long Form Notice to those persons who request it in writing or through the toll-free telephone number. The Long Form Notice shall be available on the settlement website.

2. Contents of Long Form Notice. The Long Form Notice shall be in a form substantially similar to the document attached to this Agreement as Exhibit 4, and shall advise Class Members of the following:

a. General Terms: The Long Form Notice shall contain a plain and concise description of the nature of the Action, the history of the litigation of the claims, the preliminary certification of the Class for settlement purposes, and the Settlement, including information on the identity of Class Members, how the Settlement would provide relief to the Class and Class Members, what claims are released under the Settlement and other relevant terms and conditions.

b. Opt-Out Rights: The Long Form Notice shall inform Class Members that they have the right to opt out of the Settlement. The Long Form Notice shall provide the deadlines and procedures for exercising this right.

c. Objection to Settlement: The Long Form Notice shall inform Class Members of their right to object to the Settlement and appear at the Fairness Hearing. The Long Form Notice shall provide the deadlines and procedures for exercising these rights.

d. Attorneys' Fees, Costs, and Expenses: The Long Form Notice shall inform Class Members about the amounts being sought by Plaintiffs' Class Counsel as Attorneys' Fees, Costs and Expenses and individual awards to the Plaintiffs and Named Plaintiffs, and shall explain that Sony will pay the fees and expenses awarded to Plaintiffs' Class Counsel and individual awards to the Plaintiffs and Named Plaintiffs in addition to amounts being made available for relief to Class Members by this Settlement.

E.      **Toll-Free Telephone Number**

The Class Action Settlement Administrator shall establish a toll-free telephone number that will provide settlement-related information to Class Members using an automated response system.

F.      **Internet Banner Notifications**

As indicated in the Declaration of the Settlement Notice Administrator, the Settlement Notice Administrator shall establish banner notifications on the internet that will provide settlement-related information to Class Members and shall utilize additional internet-based notice efforts.

G.      **Class Action Fairness Act Notice**

The Class Action Settlement Administrator shall send to each appropriate State and Federal official, the materials specified in 28 U.S.C. § 1715 and otherwise comply with its terms. The identities of such officials and the content of the materials shall be mutually agreeable to the Parties.

H.      **Duties of the Class Action Settlement Administrator and the Settlement Notice Administrator**

1.      The Class Action Settlement Administrator shall be responsible for, without limitation: (a) printing, mailing or arranging for the mailing of the Short Form Notice; (b) handling returned mail not delivered to Class Members; (c) attempting to obtain updated address information for any Short Form Notices returned without a forwarding address; (d) making any additional mailings required under the terms of this Agreement; (e) responding to requests for Long Form Notice; (f) receiving and maintaining on behalf of the Court any Class Member correspondence regarding requests for exclusion and/or objections to the Settlement; (g) forwarding written inquiries to Plaintiffs' Class Counsel or their designee for a response, if

warranted; (h) establishing a post-office box for the receipt of any correspondence; (i) responding to requests from Plaintiffs' Class Counsel and/or Sony's Counsel; (j) establishing a website and toll-free voice response unit with message capabilities to which Class Members may refer for information about the Action and the Settlement; and (k) otherwise implementing and/or assisting with the dissemination of the notice of the Settlement.  The Class Action Settlement Administrator shall also be responsible for, without limitation, implementing the terms of the Claim Process and related administrative activities.

2.      The Settlement Notice Administrator shall be responsible for arranging for the publication of the Short Form Notice, establishing internet banner notifications and for consulting on the Notice Program.  The Settlement Notice Administrator and/or the Class Action Settlement Administrator shall coordinate their activities to minimize costs in effectuating the terms of this Agreement.

3.      If the Class Action Settlement Administrator and/or the Settlement Notice Administrator make a material or fraudulent misrepresentation to, or conceal requested material information or fails to perform adequately on behalf of Sony or the Class, the Parties may agree to remove the Class Action Settlement Administrator and/or the Settlement Notice Administrator.  Disputes regarding the retention or dismissal of the Class Action Settlement Administrator and/or the Settlement Notice Administrator shall be referred to the Court for resolution.

4.      The Class Action Settlement Administrator and/or the Settlement Notice Administrator may retain one or more persons to assist in the completion of his or her responsibilities.

5.      Not later than 20 days before the date of the Fairness Hearing, the Class Action Settlement Administrator shall file with the Court a list of those persons who have opted out or excluded themselves from the Settlement.  Not later than 20 days before the date of the Fairness Hearing, the Settlement Notice Administrator shall file with the Court the details outlining the scope, method and results of the Notice Program.

6.      The Class Action Settlement Administrator and the Parties shall promptly after receipt provide copies of any requests for exclusion, objections and/or related correspondence to each other.

I.      **Self-Identification**

Persons or entities who believe that they are Class Members may contact Class Counsel or the Settlement Notice Administrator or complete and file a Claim Form and provide necessary documentation indicating that they wish to be eligible for the relief provided in this Settlement Agreement.

V.      <u>**REQUESTS FOR EXCLUSION**</u>

A.      Any potential Class Member who wishes to be excluded from the Class must mail a written request for exclusion to the Class Action Settlement Administrator at the address provided in the Long Form Notice, postmarked on a date ordered by the Court specifying that he or she wants to be excluded and otherwise complying with the terms stated in the Long Form Notice and Preliminary Approval Order.  The Class Action Settlement Administrator shall forward copies of any written requests for exclusion to Plaintiffs' Class Counsel and Sony's Counsel.  A list reflecting all requests for exclusion shall be filed with the Court by the Class Action Settlement Administrator no later than 20 days before the Fairness Hearing.  If a potential Class Member files a request for exclusion, he or she may not file an objection under Section VI.

B.      Any potential Class Member who does not file a timely written request for exclusion as provided in Section V shall be bound by all subsequent proceedings, orders and judgments, including, but not limited to, the Release, Final Judgment and Final Order in the Action, even if he, she or it has litigation pending or subsequently initiates litigation against Sony relating to the claims and transactions released in the Action.  Sony's Counsel shall provide to the Class Action Settlement Administrator, within 20 business days of the entry of the Preliminary Approval Order, a list of all counsel for anyone who has then-pending litigation against Sony relating to claims involving the Mobile Devices and/or otherwise covered by the Release.

## VI.      OBJECTIONS TO SETTLEMENT

A.      Any Class Member who has not filed a timely written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of this Settlement Agreement, the requested award of Attorneys' Fees, Costs, and Expenses, or the requested incentive awards to the Named Plaintiffs, must file with the Court and provide copies to Plaintiffs' Class Counsel and Sony's Counsel on a date ordered by the Court a written statement of his or her objections. The written objection of any Class Member must include: (a) a heading which refers to the Action; (b) the objector's full name, telephone number, and address (the objector's actual residential address must be included); (c) if represented by counsel, the full name, telephone number, and address of all counsel; (d) all of the reasons for his or her objection; (e) whether the objector intends to appear at the Fairness Hearing on his or her own behalf or through counsel; (f) a statement that the objector is a Class Member, including the Mobile Device(s)' model name and approximately when and where the Mobile Device(s) was purchased; and (g) the objector's dated, handwritten signature (an electronic signature or attorney's signature are not sufficient). Any documents supporting the objection must also be attached to the objection.  If any testimony

is proposed to be given in support of the objection, the names of all persons who will testify must be set forth in the objection. Class Members may do so either on their own or through an attorney retained at their own expense. The objection must include proof that he or she falls within the definition of the Class.

B.     Any Class Member who files and serves a written objection, as described in the preceding Section VI(A), may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the Settlement, or to the award of Attorneys' Fees, Costs and Expenses or awards to the individual Plaintiffs. Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must deliver a notice of intention to appear to Plaintiffs' Class Counsel identified in the Long Form Notice and to Sony's Counsel, and file said notice with the Court, on a date ordered by the Court.

C.     Any Class Member who files and serves a written objection, as described in the preceding Section VI(A), may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of this Settlement Agreement, the requested award of Attorneys' Fees, Costs, and Expenses, or the requested awards to the Named Plaintiffs. Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must file with the Court a notice of intention to appear, with courtesy copies to one of Class Counsel identified in the Long Form Notice and to Sony's Counsel, on a date ordered by the Court.

D.     Any Class Member who objects to the Settlement shall be entitled to all of the benefits of the Settlement if this Agreement and the terms contained herein are approved, as long

as the objecting Class Member complies with all requirements of this Agreement applicable to Class Members, including the timely submission of Claim Form and other requirements herein.

## VII.    RELEASE AND WAIVER

A.     The Parties agree to the following release and waiver, which shall take effect upon entry of the Final Judgment and Final Order.

B.     In consideration for the Settlement, Named Plaintiffs and each Class Member, on behalf of themselves and any other legal or natural persons who may claim by, through or under them, agree to fully, finally and forever release, relinquish, acquit, discharge and hold harmless the Released Parties from any and all claims, demands, suits, petitions, liabilities, causes of action, rights, and damages of any kind and/or type regarding the subject matter of the Action, including, but not limited to, compensatory, exemplary, punitive, expert and/or attorneys' fees or by multipliers, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, violations of any state's deceptive, unlawful, or unfair business or trade practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, any breaches of express, implied or any other warranties, RICO, or the Magnuson-Moss Warranty Act, or any other source, or any claim of any kind related arising from, related to, connected with, and/or  in any way involving the Action, claims involving waterproof, water resistant or similar terms, and/or the Mobile Devices that are, or could have been, defined, alleged or described in the Complaint, the Action, or any amendments of complaints filed in the Action, including, but not limited to, the communications, disclosures, nondisclosures, representations, statements, claims, omissions, messaging, design, manufacturing, testing, studies, advertising, marketing, promotion, packaging, displays, brochures, functionality,

servicing, performance, warrantying, sale, resale, gift or replacement of the Mobile Devices relating to waterproof, water resistant or similar terms.

C.      Notwithstanding the foregoing, the Released Parties shall be held harmless by any Named Plaintiffs or Class Member for any released claim asserted against the Released Parties, by that Named Plaintiffs or Class Member, either directly or by any legal or natural persons who claim by, through, or under that Named Plaintiffs or Class Member.

D.      The Final Judgment and Final Order will reflect these terms.

E.      Named Plaintiffs and each Class Member expressly agree that this Release, the Final Order, and/or the Final Judgment is, will be, and may be raised as a complete defense to, and will preclude any action or proceeding encompassed by, this Release.

F.      Named Plaintiffs and each Class Member shall not now or hereafter institute, maintain, prosecute, assert, and/or cooperate in the institution, commencement, filing, or prosecution of any suit, action, and/or proceeding, against the Released Parties, either directly or indirectly, on their own behalf, on behalf of a class or on behalf of any other person or entity with respect to the claims, causes of action and/or any other matters released through this Settlement.

G.      In connection with this Agreement, Named Plaintiffs and each Class Member acknowledge that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action and/or the Release herein.  Nevertheless, it is the intention of Plaintiffs' Class Counsel, Named Plaintiffs and each Class Member fully, finally and forever to settle, release, discharge, and hold harmless all such matters, and all claims relating thereto

which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the Action.

H.      Named Plaintiffs expressly understand and acknowledge and all Class Members will be deemed by the Final Judgment and Final Order to acknowledge and waive Section 1542 of the Civil Code of the State of California, which provides that:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Named Plaintiffs and Class Members expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights.

I.      Named Plaintiffs represent and warrant that they are the sole and exclusive owners of all claims that they personally are releasing under this Agreement.  Named Plaintiffs further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that Named Plaintiffs are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Action or in any benefits, proceeds or values under the Action.  Class Members submitting a Claim Form shall represent and warrant therein that they are the sole and exclusive owner of all claims that they personally are releasing under the Settlement and that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any

- 24 -

way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that such Class Member(s) are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Action or in any benefits, proceeds or values under the Action.

J.      Without in any way limiting its scope, and, except to the extent otherwise specified in the Agreement, this Release covers by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, and/or disbursements incurred by any attorneys, Plaintiffs' Class Counsel, Named Plaintiffs or Class Members who claim to have assisted in conferring the benefits under this Settlement upon the Class.

K.      In consideration for the Settlement, Sony and its past or present officers, directors, employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, and assigns shall be deemed to have, and by operation of the Final Approval Order shall have, released Plaintiffs' Class Counsel and each current and former Named Plaintiffs from any and all causes of action that were or could have been asserted pertaining solely to the conduct in filing and prosecuting the litigation or in settling the Action.

L.      Plaintiffs' Class Counsel and any other attorneys who receive attorneys' fees and costs from this Settlement acknowledge that they have conducted sufficient independent investigation and discovery to enter into this Settlement Agreement and, by executing this Settlement Agreement, state that they have not relied upon any statements or representations made by the Released Parties or any person or entity representing the Released Parties, other than as set forth in this Settlement Agreement.

M.     The Parties specifically understand that there may be further pleadings, discovery requests and responses, testimony, or other matters or materials owed by the Parties pursuant to existing pleading requirements, discovery requests, or pretrial rules, procedures, or orders, and that, by entering into this Agreement, the Parties expressly waive any right to receive, hear, or inspect such pleadings, testimony, discovery, or other matters or materials.

N.     Nothing in this Release shall preclude any action to enforce the terms of the Agreement, including participation in any of the processes detailed herein.

O.     Named Plaintiffs and Plaintiffs' Class Counsel hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of the Agreement and shall be included in any Final Judgment and Final Order entered by the Court.

## VIII.  ATTORNEYS' FEES, COSTS, AND EXPENSES AND NAMED PLAINTIFFS AWARDS

A.     The Parties did not discuss the payment of Attorneys' Fees, Costs, and Expenses, and incentive awards, until after the substantive elements of the Settlement Agreement had been agreed upon.

B.     After agreeing to the principal terms set forth in this Settlement Agreement, Plaintiffs' Class Counsel and Sony's Counsel negotiated the amount of Attorneys' Fees, Costs, and Expenses that, separate and apart from the consideration for this settlement, following application to the Court and subject to Court approval, would be paid by Sony as the fee award and costs award to Plaintiffs' Class Counsel.  As a result of negotiations, Plaintiffs' Class Counsel agrees to make on behalf of all plaintiffs' counsel, and Sony agrees not to oppose, an application for an award of Attorneys' Fees, Costs, and Expenses in the Action in an amount not to exceed $1,000,000.00.  This award shall be the sole compensation paid by Sony for all plaintiffs' counsel in the Action and/or for work incurred that inured to the benefit of the Class.

C.      Plaintiff's Class Counsel may petition the Court for incentive awards of up to $1,000.00 per Named Plaintiff for bringing the Action and for their time in connection with the Action.

D.      Within thirty (30) days after the occurrence of the Final Effective Date, Sony shall pay the Attorneys' Fees, Costs, and Expenses and incentive awards that are awarded by the Court to an account established by Plaintiffs' Class Counsel.   Thereafter, Plaintiffs' Class Counsel shall distribute the award of Attorneys' Fees, Costs, and Expenses among Plaintiffs' Class Counsel and the incentive awards to Named Plaintiffs.

E.      The amount(s) of any Attorneys' Fees, Costs, and Expenses, and the incentive awards to Named Plaintiffs are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement.  No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any Attorneys' Fees, Costs, and Expenses awarded by the Court to Plaintiffs' Class Counsel, or concerning the amounts of incentive awards that are awarded by the Court to Named Plaintiffs, shall affect whether the Final Order and Final Judgment are final or constitute grounds for cancellation or termination of the settlement.  In no event shall Sony pay an amount for Attorneys' Fees, Costs, and Expenses in the Action, as awarded by the Court, in an amount in excess of $1,000,000.00.

## IX.    PRELIMINARY APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT AND RELATED ORDERS

A.      The Parties shall seek from the Court, within 14 days after the execution of this Agreement, a Preliminary Approval Order in a form substantially similar to Exhibit 6.  The Preliminary Approval Order shall, among other things:

1.      Certify a nationwide settlement-only Class, approve plaintiffs as Named Plaintiffs and appoint Plaintiffs' Class Counsel as counsel for the class, pursuant to Fed. R. Civ. P. 23;

2.      Preliminarily approve the Settlement;

3.      Require the dissemination of the Notice and the taking of all necessary and appropriate steps to accomplish this task;

4.      Determine that the Notice Program complies with all legal requirements, including, but not limited to, the Due Process Clause of the United States Constitution;

5.      Schedule a date and time for a Fairness Hearing to determine whether the Settlement should be finally approved by the Court;

6.      Require Class Members who wish to exclude themselves to submit an appropriate and timely written request for exclusion as directed in this Agreement and Long Form Notice and that a failure to do so shall bind those Class Members who remain in the Class;

7.      Require Class Members who wish to object to this Agreement to submit an appropriate and timely written statement as directed in this Agreement and Long Form Notice;

8.      Require Class Members who wish to appear to object to this Agreement to submit an appropriate and timely written statement as directed in the Agreement and Long Form Notice;

9.      Require attorneys representing Class Members, at the Class Members' expense, to file a notice of appearance as directed in this Agreement and Long Form Notice;

10.     Issue a preliminary injunction and stay all other actions pending final approval by the Court;

11.     Issue a preliminary injunction enjoining potential Class Members, pending the Court's determination of whether the Settlement should be given final approval, from challenging in any action or proceeding any matter covered by this Settlement, except for proceedings in this Court to determine whether the Settlement will be given final approval;

12.     Appoint the Class Action Settlement Administrator and the Settlement Notice Administrator;

13.     Authorize Sony to take all necessary and appropriate steps to establish the means necessary to implement the Agreement; and

14.     Issue other related orders to effectuate the preliminary approval of the Agreement.

B.     After the Fairness Hearing, the Parties shall seek to obtain from the Court a Final Judgment and Final Order in the forms substantially similar to Exhibits 1 and 2, respectively. The Final Judgment and Final Order shall, among other things:

1.     Find that the Court has personal jurisdiction over all Plaintiffs and Class Members, that the Court has subject matter jurisdiction over the claims asserted in the Action, and that venue is proper;

2.     Finally approve the Agreement and Settlement, pursuant to Fed. R. Civ. P. 23;

3.     Confirm the certification of the Class for settlement purposes only;

4.     Find that the notice and the notice dissemination methodology complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

5.      Dismiss the Action with prejudice and without costs (except as provided for herein as to costs);

6.      Incorporate the Release set forth in the Agreement and make the Release effective as of the date of the Final Judgment and Final Order;

7.      Issue a permanent injunction;

8.      Authorize the Parties to implement the terms of the Agreement;

9.      Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Agreement, the Final Judgment and Final Order, and for any other necessary purpose; and

10.     Issue related Orders to effectuate the final approval of the Agreement and its implementation.

## X.      <u>MODIFICATION OR TERMINATION OF THIS AGREEMENT</u>

A.      The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that after entry of the Final Judgment and Final Order, the Parties may by written agreement effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Class or approval by the Court if such changes are consistent with the Court's Final Judgment and Final Order and do not limit the rights of Class Members under this Agreement.

B.      This Agreement shall terminate at the discretion of either Sony or the Named Plaintiffs, through Plaintiffs' Class Counsel, if: (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Agreement or the Settlement that the terminating party in its (or their) sole judgment and discretion reasonably determine(s) is material, including, without limitation, the terms of relief, the findings, or conclusions of the

- 30 -

Court, the provisions relating to notice, the definition of the Class, and/or the terms of the Release; or (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters, narrows or expands, any portion of the Final Order and Judgment, or any of the Court's findings of fact or conclusions of law, that the terminating party in its (or their) sole judgment and discretion reasonably determine(s) is material.  The terminating party must exercise the option to withdraw from and terminate this Agreement, as provided in this Section X, by a signed writing served on the other Parties no later than 20 days after receiving notice of the event prompting the termination.  The Parties will be returned to their positions status quo ante.

C.      Sony shall have the right, but not the obligation, to terminate this Agreement if the total number of timely and valid requests for exclusion exceed 1.5% of the putative class members.

D.      If an option to withdraw from and terminate this Agreement arises under Section X(B) above, neither Sony nor Named Plaintiffs are required for any reason or under any circumstance to exercise that option and any exercise of that option shall be in good faith.

E.      If, but only if, this Agreement is terminated pursuant to Section X(B), above, then:

1.      This Agreement shall be null and void and shall have no force or effect, and no Party to this Agreement shall be bound by any of its terms, except for the terms of Section X(D) herein;

2.      The Parties will petition the Court to have any stay orders entered pursuant to this Agreement lifted;

3.      All of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Sony, Plaintiffs or any Class Member, all

of whom shall be restored to their respective positions existing immediately before the execution of this Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that no Party's substantive or procedural rights is prejudiced by the settlement negotiations and proceedings;

4.     Released Parties expressly and affirmatively reserve all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Action, including, without limitation, the argument that the Action may not be litigated as a class action;

5.     Named Plaintiffs and all other Class Members, on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors, expressly and affirmatively reserve and do not waive all motions as to, and arguments in support of, all claims, causes of actions or remedies that have been or might later be asserted in the Action including, without limitation, any argument concerning class certification, and treble or other damages;

6.     Sony, and the other Released Parties expressly and affirmatively reserve and do not waive all motions and positions as to, and arguments in support of, all defenses to the causes of action or remedies that have been sought or might be later asserted in the actions, including without limitation, any argument or position opposing class certification, liability or damages;

7.     Neither this Agreement, the fact of its having been made, nor the negotiations leading to it, nor any discovery or action taken by a Party or Class Member pursuant to this Agreement shall be admissible or entered into evidence for any purpose whatsoever;

8.     Any settlement-related order(s) or judgment(s) entered in this Action after the date of execution of this Agreement shall be deemed vacated and shall be without any force or effect;

9.      All costs incurred in connection with the Settlement, including, but not limited to, notice, publication, and customer communications, will be paid from the Settlement Fund.  Neither Plaintiffs nor Plaintiffs' Class Counsel shall be responsible for any of these costs or other settlement-related costs;

10.      Any attorneys' fees and expenses previously paid to Plaintiffs' Class Counsel shall be returned to Sony; and

11.      Notwithstanding the terms of this paragraph, if Settlement is not consummated, Plaintiffs' Class Counsel may include any time spent in Settlement efforts as part of any statutory fee petition filed at the conclusion of the case, and Sony reserves the right to object to the reasonableness of such requested fees.

## XI.   GENERAL MATTERS AND RESERVATIONS

A.      Sony has denied and continues to deny each and all of the claims and contentions alleged in the Action, and has denied and continues to deny that it has committed any violation of law or engaged in any wrongful act that was alleged, or that could have been alleged, in the Action.  Sony believes that it has valid and complete defenses to the claims asserted against it in the Action and denies that it committed any violations of law, engaged in any unlawful act or conduct, or that there is any basis for liability for any of the claims that have been, are, or might have been alleged in the Action.  Nonetheless, Sony has concluded that it is desirable that the Action be fully and finally settled in the matter and upon the terms and conditions set forth in this Agreement.

B.      The obligation of the Parties to conclude the Settlement is and shall be contingent upon each of the following:

1.      Entry by the Court of the Final Judgment and Final Order approving the Settlement, from which the time to appeal has expired or which has remained unmodified after any appeal(s); and

2.      Any other conditions stated in this Agreement.

C.      The Parties and their counsel agree to keep the existence and contents of this Agreement confidential until the date on which the Motion for Preliminary Approval is filed; provided, however, that this Section shall not prevent Sony from disclosing such information, prior to the date on which the Motion for Preliminary Approval is filed, to state and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers or attorneys, mobile phone carriers or Mobile Phone resellers, nor shall it prevent Sony from disclosing such information based on the substance of this Agreement.  Nor shall it prevent the Parties and their counsel from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of this Agreement.

D.      Named Plaintiffs and Plaintiffs' Class Counsel agree that the confidential information made available to them solely through the settlement process was made available, as agreed to, on the condition that neither Named Plaintiffs nor their counsel may disclose it to third parties (other than experts or consultants retained by Named Plaintiffs in connection with the Action); that it not be the subject of public comment; that it not be used by Named Plaintiffs or Plaintiffs' Class Counsel in any way in this litigation or otherwise should the Settlement not be achieved, and that it is to be returned if a Settlement is not concluded; provided, however, that nothing contained herein shall prohibit Named Plaintiffs from seeking such information through

formal discovery if not previously requested through formal discovery or from referring to the existence of such information in connection with the Settlement of the Action.

E.     Information provided by Sony and/or Sony's Counsel to the Named Plaintiffs, Plaintiffs' Class Counsel, any individual Class Member, counsel for any individual Class Member, and/or administrators, pursuant to the negotiation and implementation of this Agreement, includes trade secrets and highly confidential and proprietary business information and shall be deemed "Highly Confidential" pursuant to the protective orders that have been or will be entered in the Action, and shall be subject to all of the provisions thereof.  Any materials inadvertently produced shall, upon Sony's request, be promptly returned to Sony's Counsel, and there shall be no implied or express waiver of any privileges, rights and defenses.

F.     Within 90 days after the Final Effective Date (unless the time is extended by agreement of the Parties), Plaintiffs' Class Counsel, and any expert or other consultant employed by them in such capacity or any other individual with access to documents provided by Sony, and/or Sony's Counsel to Plaintiffs' Class Counsel shall either: (i) return to Sony's Counsel, all such documents and materials (and all copies of such documents in whatever form made or maintained) produced during the settlement process by Sony and/or Sony's Counsel and any and all handwritten notes summarizing, describing or referring to such documents; or (ii) certify to Sony's Counsel that all such documents and materials (and all copies of such documents in whatever form made or maintained) produced by Sony, and/or Sony's Counsel and any and all handwritten notes summarizing, describing or referring to such documents have been destroyed, provided, however, that this Section XI shall not apply to any documents made part of the record in connection with a Claim, nor to any documents made part of a Court filing, nor to Plaintiffs' Class Counsel's work product.  Six months after the distribution of the settlement funds to Class

Members who submitted valid Claim Forms, the Class Action Settlement Administrator shall return or destroy all documents and materials to Sony's and/or Sony's Counsel and/or Plaintiffs' Class Counsel that produced the documents and materials, except that it shall not destroy any and all Claim Forms, including any and all information and/or documentation submitted by Class Members.  Nothing in this Agreement shall affect any confidentiality order or protective order in the Action.

G.      Sony's execution of this Agreement shall not be construed to release – and Sony expressly does not intend to release – any claim Sony may have or make against any insurer for any cost or expense incurred in connection with this Settlement, including, without limitation, for attorneys' fees and costs.

H.      Plaintiffs' Class Counsel represent that: (1) they are authorized by the Named Plaintiffs to enter into this Agreement with respect to the claims in this Action; and (2) they are seeking to protect the interests of the Class.

I.      Plaintiffs' Class Counsel further represent that the Named Plaintiffs: (1) have agreed to serve as representatives of the Class proposed to be certified herein; (2) are willing, able, and ready to perform all of the duties and obligations of representatives of the Class, including, but not limited to, being involved in discovery and fact finding; (3) have read the pleadings in the Action or have had the contents of such pleadings described to them; (4) are familiar with the results of the fact-finding undertaken by Plaintiffs' Class Counsel; (5) have been kept apprised of settlement negotiations among the Parties, and have either read this Agreement, including the exhibits annexed hereto, or have received a detailed description of it from Plaintiffs' Class Counsel and they have agreed to its terms; (6) have consulted with Plaintiffs' Class Counsel about the Action and this Agreement and the obligations imposed on

- 36 -

representatives of the Class; (7) have authorized Plaintiffs' Class Counsel to execute this Agreement on their behalf; and (8) shall remain and serve as representatives of the Class until the terms of this Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Court at any time determines that said Named Plaintiffs cannot represent the Class.

J.      The Parties acknowledge and agree that no opinion concerning the tax consequences of the Settlement to Class Members is given or will be given by the Parties, nor are any representations or warranties in this regard made by virtue of this Agreement.  Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, each Class Member will be solely responsible for correctly characterizing this payment for tax purposes and for paying any taxes owed on this payment, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

K.      Sony represents and warrants that the individual(s) executing this Agreement is authorized to enter into this Agreement on behalf of Sony.

L.      This Agreement, complete with its exhibits, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument executed by Plaintiffs' Class Counsel and Sony's Counsel on behalf of Sony.  The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Agreement exist among or between them, and that in deciding to enter into this Agreement, they rely solely upon their judgment and knowledge.  This Agreement supersedes any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject matter of this Agreement.

M.      This Agreement and any amendments thereto shall be governed by and interpreted according to the law of the State of New York, notwithstanding its conflict of laws provisions.

N.      Any disagreement and/or action to enforce this Agreement shall be commenced and maintained only in the United States District Court for the Eastern District of New York.

O.      Whenever this Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays and Federal Holidays) express delivery service as follows:

> 1.      If to Sony, then to:
>
> John P. Hooper
> Reed Smith LLP
> 599 Lexington Avenue
> 28th Floor
> New York, New York 10022
> Tel. 212-521-5400
> Fax 212-521-5450
> E-mail: jhooper@reedsmith.com
>
> 2.      If to Plaintiffs, then to:
>
> Nancy A. Kulesa
> Levi & Korsinsky LLP
> 733 Summer Street, Suite 304
> Stamford, CT 06901
> Tel. (212) 363-7500
> Fax: (212-363-7171
> E-mail: nkulesa@zlk.com

P.      All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a Federal Holiday, or, when the

act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.  As used in this Section XI "Federal Holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Patriot's Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President, the Congress of the United States or the Clerk of the United States District Court for the Central District of California.

Q.     The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

R.     The Class, Named Plaintiffs, Plaintiffs' Class Counsel, Sony and/or Sony's Counsel shall not be deemed to be the drafter of this Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter.  All Parties agree that this Agreement was drafted by counsel for the Parties during extensive arm's length negotiations.  No parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Agreement was made or executed.

S.     The Parties expressly acknowledge and agree that this Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state.  In no event shall this Agreement, any of its provisions or any negotiations, statements or court proceedings

relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Agreement or the rights of the Parties or their counsel.  Without limiting the foregoing, neither this Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Released Parties, Plaintiffs, or the Class or as a waiver by the Released Parties, Plaintiffs or the Class of any applicable privileges, claims or defenses.

T.     Plaintiffs expressly affirm that the allegations contained in the operative complaint were made in good faith, but consider it desirable for the Action to be settled and dismissed because of the substantial benefits that the Settlement will provide to Class Members.

U.     The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

V.     The waiver by one Party of any breach of this Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Agreement.

W.     If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

X.      The Parties, their successors and assigns, and their counsel agree to cooperate fully with one another in seeking Court approval of this Agreement and to use their best efforts to effect the prompt consummation of this Agreement and the Settlement.

Y.      This Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

Z.      In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if Sony, on behalf of Defendant, and Plaintiffs' Class Counsel, on behalf of Named Plaintiffs and Class Members, mutually agree in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement.  Any such agreement shall be reviewed and approved by the Court before it becomes effective.

THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY PLAINTIFFS' CLASS COUNSEL
AS AUTHORIZED BY NAMED PLAINTIFFS

BY _Nancy A. Kulesa_                           DATE: July 12, 2017
NANCY A. KULESA
LEVI & KORSINSKY LLP

APPROVED AND AGREED TO BY SONY MOBILE COMMUNICATIONS (U.S.A.), INC.

BY _____            DATE: July _____, 2017
DON MESA
VICE PRESIDENT, MARKETING

APPROVED AND AGREED TO BY SONY ELECTRONICS, INC.

BY _____            DATE: July _____, 2017
TANIA HURT
VICE PRESIDENT OF FINANCE

APPROVED AND AGREED TO AS TO FORM
BY SONY'S COUNSEL

BY _____            DATE: July _____, 2017
JOHN P. HOOPER
REED SMITH LLP

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY PLAINTIFFS' CLASS COUNSEL
AS AUTHORIZED BY NAMED PLAINTIFFS


BY_____          DATE:  July _____, 2017
NANCY A. KULESA
LEVI & KORSINSKY LLP

APPROVED AND AGREED TO BY SONY MOBILE COMMUNICATIONS (U.S.A.), INC.


BY_____          DATE:  July _11_, 2017
DON MESA
VICE PRESIDENT, MARKETING


APPROVED AND AGREED TO BY SONY ELECTRONICS, INC.


BY_____          DATE:  July _____, 2017
TANIA HURT
VICE PRESIDENT OF FINANCE


APPROVED AND AGREED TO AS TO FORM
BY SONY'S COUNSEL


BY_____          DATE:  July _____, 2017
JOHN P. HOOPER
REED SMITH LLP

- 42 -

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY PLAINTIFFS' CLASS COUNSEL
AS AUTHORIZED BY NAMED PLAINTIFFS


BY _____          DATE:  July _____, 2017
NANCY A. KULESA
LEVI & KORSINSKY LLP

APPROVED AND AGREED TO BY SONY MOBILE COMMUNICATIONS (U.S.A.), INC.


BY _____          DATE:  July _____, 2017
DON MESA
VICE PRESIDENT, MARKETING


APPROVED AND AGREED TO BY SONY ELECTRONICS, INC.


BY _____          DATE:  July _11_, 2017
TANIA HURT
VICE PRESIDENT OF FINANCE


APPROVED AND AGREED TO AS TO FORM
BY SONY'S COUNSEL


BY _____          DATE:  July _____, 2017
JOHN P. HOOPER
REED SMITH LLP

- 42 -

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY PLAINTIFFS' CLASS COUNSEL
AS AUTHORIZED BY NAMED PLAINTIFFS


BY _____          DATE:  July _____, 2017
NANCY A. KULESA
LEVI & KORSINSKY LLP

APPROVED AND AGREED TO BY SONY MOBILE COMMUNICATIONS (U.S.A.), INC.


BY _____          DATE:  July _____, 2017
DON MESA
VICE PRESIDENT, MARKETING


APPROVED AND AGREED TO BY SONY ELECTRONICS, INC.


BY _____          DATE:  July _____, 2017
TANIA HURT
VICE PRESIDENT OF FINANCE


APPROVED AND AGREED TO AS TO FORM
BY SONY'S COUNSEL


BY _____          DATE:  July 21 , 2017
JOHN P. HOOPER
REED SMITH LLP

# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LOGAN LANDES and JAMES GODDARD,** individually and on behalf of all others similarly situated,<br><br>                     **Plaintiffs,**<br><br>          **v.**<br><br>**SONY MOBILE COMMUNICATIONS (U.S.A.), INC. and SONY ELECTRONICS, INC.,**<br><br>                     **Defendants.** | **Case No. 2:17-cv-2264-JFB-SIL**<br><br><br><br><br><br>**[PROPOSED]**<br><u>**FINAL JUDGMENT**</u> |

IT IS on this _____ day of _____ 2017, HEREBY ADJUDGED AND DECREED PURSUANT TO RULES 23 AND 58 OF FEDERAL RULES OF CIVIL PROCEDURE AS FOLLOWS:

(1)     On this date, the Court entered a Final Order Approving Class Action Settlement (Dkt. No. __);

(2)     For the reasons stated in the Court's Final Order Approving Class Action Settlement, judgment is hereby entered in accordance with the Final Order Approving Class Action Settlement and this Action is dismissed with prejudice; and

(3)     A copy of this Final Judgment shall be filed in, and applies to, this Action.

SO ORDERED this ____ day of _____ 2017.

_____
                    Hon. Joseph F. Bianco

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **LOGAN LANDES and JAMES GODDARD,** individually and on behalf of all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**SONY MOBILE COMMUNICATIONS (U.S.A.), INC. and SONY ELECTRONICS, INC.,**<br><br>**Defendants.** | **Case No. 2:17-cv-2264-JFB-SIL**<br><br><br>**[PROPOSED]**<br>**FINAL ORDER APPROVING**<br><u>**CLASS ACTION SETTLEMENT**</u> |

WHEREAS, the Court, having considered the Settlement Agreement dated July 12, 2017 (the "Settlement Agreement") between and among the Class Representatives, Plaintiffs' Class Counsel and Defendants Sony Mobile Communications (U.S.A.), Inc. and Sony Electronics, Inc. (together, "Sony"), the Court's _____, 2017 Order Granting Preliminary Approval of the Class Settlement, Directing Notice to the Class, and Scheduling Fairness Hearing (Dkt. No. ____) (the "Preliminary Approval Order"), having held a Fairness Hearing on December 1, 2017, and having considered all of the submissions and arguments with respect to the Settlement Agreement, and otherwise being fully informed, and good cause appearing therefore (all capitalized terms have the meaning set forth in the Settlement Agreement);

IT IS HEREBY ORDERED AS FOLLOWS:

1.     This Final Order Approving the Class Action Settlement ("Final Order") incorporates, and makes a part hereof, the Settlement Agreement, the Preliminary Approval Order, and all exhibits to the Settlement Agreement and the Preliminary Approval Order.  Unless

otherwise provided herein, the terms defined in the Settlement Agreement and Preliminary Approval Order shall have the same meanings for purposes of this Final Order and the accompanying Final Judgment.

2.      The Court has personal jurisdiction over all parties in this Action, including but not limited to all Class Members.

3.      This Court has subject matter jurisdiction over this Action, including without limitation jurisdiction to approve the Settlement Agreement, grant final certification of the Class, to settle and release all claims released in the Settlement Agreement and to dismiss this Action with prejudice and enter final judgment in the Action.

## I.      THE SETTLEMENT CLASS

4.      Based on the record before the Court, including all submissions in support of the Settlement Agreement, objections and responses thereto and all prior proceedings in the Action, as well as the Settlement Agreement itself and its related documents and exhibits, the Court hereby certifies the following nationwide Class (the "Class") for settlement purposes only:

> All persons, entities or organizations who, at any time as of or before [date of Preliminary Approval Order], purchased, own(ed), received as a gift or received as a customer service exchange the Mobile Devices manufactured, marketed, sold and/or distributed by Sony Mobile Communications (USA), Inc. in any of the fifty States, the District of Columbia and Puerto Rico.  Excluded from the Class are: (a) any persons or entities that purchased or acquired the Mobile Devices for commercial use or resale; (b) any claims aggregators; (c) any person who claims to be an assignee of rights associated with the Mobile Products; (d) Sony Mobile Communications (USA) Inc., their officers, directors and employees; their affiliates and affiliates' officers, directors and employees; their distributors and distributors' officers, directors and employees; (e) Plaintiffs' Class Counsel; (f) judicial officers and their immediate family members and associated court staff assigned to this case; and (g) persons or entities who or which timely and properly exclude themselves from the Class.

5.      The Court finds that only those persons/entities/organizations listed on Appendix B to this Final Order have timely and properly excluded themselves from the Class and, therefore, are not bound by this Final Order or the accompanying Final Judgment.

6.      The Court finds, for settlement purposes and conditioned upon the entry of the Final Order and Final Judgment and upon the occurrence of the Final Effective Date, that the Class meets all the applicable requirements of FED. R. CIV. P. 23(a) and (b)(3):

(a)      *Numerosity*.  The Class, which is ascertainable, consists of nearly a million members located throughout the United States and satisfies the numerosity requirement of FED. R. CIV. P. 23(a)(1).  Joinder of these widely-dispersed, numerous Class Members into one suit would be impracticable.

(b)      *Commonality*.  There are some questions of law or fact common to the Class with regard to the alleged activities of Sony in this case.  These issues are sufficient to establish commonality under FED. R. CIV. P. 23(a)(2).

(c)      *Typicality*.  The claims of Class Representatives are typical of the claims of the Class Members they seek to represent for purposes of settlement.

(d)      *Adequate Representation*.  Plaintiffs' interests do not conflict with those of absent members of the Classes, and Plaintiffs' interests are co-extensive with those of absent Class Members.  Additionally, this Court recognizes the experience of Plaintiffs' Class Counsel Nancy Kulesa and Shannon Hopkins of Levi & Korsinsky LLP.  Plaintiffs and their counsel have prosecuted this action vigorously on behalf of the Class.  The Court finds that the requirement of adequate representation of the Class has been fully met under FED. R. CIV. P. 23(a)(4).

(e)      *Predominance of Common Issues*.  The questions of law or fact common to the Class Members, as pertains to consideration of the Settlement, predominate over any questions affecting any individual Class Member.

(f)      *Superiority of the Class Action Mechanism*.  The class action mechanism provides a superior procedural vehicle for settlement of this matter compared to other available alternatives.  Class certification promotes efficiency and uniformity of judgment because the many Class Members will not be forced to separately pursue claims or execute settlements in various courts around the country.

7.      The designated Class Representatives are confirmed as follows:  Logan Landes and James Goddard.  The Court finds that these Class Members have adequately represented the

3

Class for purposes of entering into and implementing the Settlement Agreement.  The Court reaffirms the appointment of Nancy Kulesa and Shannon Hopkins of Levi & Korsinsky LLP as Plaintiffs' Class Counsel.

8.     In making all of the foregoing findings, the Court has exercised its discretion in certifying the Class.

## II.     NOTICE TO CLASS MEMBERS

9.     The record shows and the Court finds that notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order (Dkt. No. ___).  The Court finds that such notice:  (i) constitutes reasonable and the best practicable notice to Class Members under the circumstances of the Action; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons who do not exclude themselves from the Class, (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED. R. CIV. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.

10.    The Court further finds that the Parties, through the Settlement Notice Administrator, provided notice of the Settlement Agreement to the appropriate state and federal government officials pursuant to 28 U.S.C. § 1715.  Furthermore, the Court has given the appropriate state and federal government officials the requisite ninety (90) day time period to

comment or object to the Settlement Agreement before entering its Final Order and Final Judgment.

### III.    FINAL APPROVAL OF SETTLEMENT AGREEMENT

11.    The Court finds that the Settlement Agreement resulted from extensive arm's length, good faith negotiations between Plaintiffs' Class Counsel and Sony, through experienced counsel.

12.    Pursuant to FED. R. CIV. P. 23(e), the Court hereby finally approves, in all respects, the Settlement as set forth in the Settlement Agreement and finds that the Settlement, the Agreement, and all other parts of the Settlement are, in all respects, fair, reasonable, and adequate, and in the best interest of the Class and are in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Class Action Fairness Act, and any other applicable law.  The Court hereby declares that the Settlement Agreement is binding on all Class Members, except those identified on Appendix B, and it is to be preclusive in the Action.  The decisions of the Class Action Settlement Administrator relating to the review, processing, determination and payment of Claims submitted pursuant to the Agreement are final and not appealable.

13.    The Court finds that the Settlement Agreement is fair, reasonable and adequate based on the following factors, among other things:  "(a) the complexity, expense and likely duration of the litigation; (b) the reaction of the class to the settlement; (c) the stage of the proceedings and the amount of discovery completed; (d) the risks of establishing liability; (e) the risks of establishing damages; (f) the risks of maintaining the class action through the trial; (g) the ability of the defendants to withstand a greater judgment; (h) the range of reasonableness of the settlement fund in light of the best possible recovery; and (i) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *See*

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 117 (2d Cir. 2005) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

14.     The Parties are hereby directed to implement and consummate the Settlement according to the terms and provisions of the Settlement Agreement.  In addition, the Parties are authorized to agree to and adopt such amendments and modifications to the Settlement Agreement as (i) shall be consistent in all material respects with this Final Order, and (ii) do not limit the rights of the Class.

15.     The Court has considered all objections, timely and proper or otherwise, to the Settlement Agreement and denies and overrules them as without merit.

### IV.     DISMISSAL OF CLAIMS, RELEASE AND INJUNCTION

16.     The Action is hereby dismissed with prejudice on the merits and without costs to any party, except as otherwise provided herein or in the Settlement Agreement.

17.     Upon entry of this Final Order and the Final Judgment, Named Plaintiffs and each Class Member (except those listed on Appendix B), on behalf of themselves and any other legal or natural persons who may claim by, through or under them, agree to fully, finally and forever release, relinquish, acquit, discharge and hold harmless the Released Parties from any and all claims, demands, suits, petitions, liabilities, causes of action, rights, and damages of any kind and/or type which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) regarding the subject matter of the Action, including, but not limited to, compensatory, exemplary, punitive, expert and/or attorneys' fees or by multipliers, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, violations of any state's deceptive, unlawful, or unfair business or trade

6

practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, any breaches of express, implied or any other warranties, RICO, or the Magnuson-Moss Warranty Act, or any other source, or any claim of any kind related arising from, related to, connected with, and/or in any way involving the Action, claims involving waterproof, water resistant or similar terms, and/or the Mobile Devices that are, or could have been, defined, alleged or described in the Complaint, the Action, or any amendments of complaints filed in the Action, including, but not limited to, the communications, disclosures, nondisclosures, representations, statements, claims, omissions, messaging, design, manufacturing, testing, studies, advertising, marketing, promotion, packaging, displays, brochures, functionality, servicing, performance, warrantying, sale, resale, gift or replacement of the Mobile Devices relating to waterproof, water resistant or similar terms.

18.     To the fullest extent they may lawfully waive such rights, Named Plaintiffs and all Class Members are deemed by Final Judgment and Final Order to acknowledge and expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions Section 1542 of the Civil Code of the State of California and any law of any state or territory that is equivalent to section 1542.  Section 1542 provides that:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

19.     The Court orders that the Settlement Agreement shall be the exclusive remedy for all claims released in the Settlement for all Class Members not listed on Appendix B, and that this Final Order, the Final Judgment and/or the Settlement Agreement may be raised as a complete defense to, and will preclude, any action or proceeding encompassed by the subject

matter herein.  Therefore, except for those listed on Appendix B, Plaintiffs and each Class Member, and their representatives, are hereby permanently barred and enjoined from instituting, maintaining, prosecuting, asserting, and/or cooperating in the institution, commencement, filing, or prosecution of any suit, action, and/or proceeding against any of the Released Parties, either directly or indirectly, on their own behalf, on behalf of a class or on behalf of any other person or entity with respect to the claims, causes of action and/or any other matters released through the Settlement Agreement.  Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance of this permanent injunction is necessary and appropriate in aid of its continuing jurisdiction and authority over the Settlement and the Action.

20.    Without in any way limiting its scope, and, except to the extent otherwise specified in the Settlement Agreement, the Release covers by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, and/or disbursements incurred by any attorneys, Plaintiffs' Class Counsel, Named Plaintiffs or Class Members who claim to have assisted in conferring the benefits under this Settlement upon the Class.

21.    In consideration for the Settlement, Sony and its past or present officers, directors, employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, and assigns shall be deemed to have, and by operation of this Final Approval Order shall have, released Plaintiffs' Class Counsel and each current and former Named Plaintiffs from any and all causes of action that were or could have been asserted pertaining solely to the conduct in filing and prosecuting the litigation or in settling the Action.

## V.    <u>OTHER PROVISIONS</u>

22.    Without affecting the finality of this Final Order or the accompanying Final Judgment, the Court retains continuing and exclusive jurisdiction over the Action and all matters

relating to the administration, consummation, enforcement and interpretation of the Settlement Agreement and of this Final Order and the accompanying Final Judgment, to protect and effectuate this Final Order and the accompanying Final Judgment, and for any other necessary purpose.  The Parties, the Class Representatives, and each Class Member not listed on Appendix B are hereby deemed to have irrevocably submitted to the exclusive jurisdiction of this Court, for the purpose of any suit, action, proceeding or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement, including the exhibits thereto, and only for such purposes.

23.     In the event that the Final Effective Date does not occur, certification of the Class shall be automatically vacated and this Final Order and the accompanying Final Judgment, and other orders entered in connection with the Settlement and releases delivered in connection with the Settlement, shall be vacated and rendered null and void as provided by the Settlement Agreement.

24.     Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement.  Likewise, the Parties may, without further order of the Court, agree to and adopt such amendments to the Settlement Agreement (including exhibits) as are consistent with this Final Order and the accompanying Final Judgment and do not limit the rights of Class Members under the Settlement Agreement.

25.     Nothing in this Final Order or the accompanying Final Judgment shall preclude any action in this Court to enforce the terms of the Settlement Agreement.

26.     Neither this Final Order nor the accompanying Final Judgment (nor any document related to the Settlement Agreement) is or shall be construed as an admission by the Parties.

Neither the Settlement Agreement (or its exhibits), this Final Order, the accompanying Final Judgment, or any document related to the Settlement Agreement shall be offered in any proceeding as evidence against any of the Parties of any fact or legal claim; provided, however, that Sony and the Released Parties may file any and all such documents in support of any defense that the Settlement Agreement, this Final Order, the accompanying Final Judgment and any other related document is binding on and shall have res judicata, collateral estoppel, and/or preclusive effect in any pending or future lawsuit by any person who is subject to the release described above, in Paragraphs 17-20, asserting a released claim against any of the Released Parties.

27.    The Class Action Settlement Administrator shall fulfill any escheatment obligations that arise.

28.     A copy of this Final Order shall be filed in, and applies to, the Action.

SO ORDERED this _____ day of _____ 2017.

_____
U.S.D.J. Joseph F. Bianco

# APPENDIX A

## MOBILE DEVICES

| |
|---|
| Xperia M2 Aqua |
| Xperia M4 Aqua |
| Xperia ZR |
| Xperia Z Ultra |
| Xperia Z1 |
| Xperia Z1 Compact |
| Xperia Z1s (T-Mobile) |
| Xperia Z2 |
| Xperia Z3 |
| Xperia Z3 Compact |
| Xperia Z3 (T-Mobile) |
| Xperia Z3v (Verizon) |
| Xperia Z3 Dual |
| Xperia Z3+ Dual |
| Xperia Z3+ |
| Xperia Z5 |
| Xperia Z5 Compact |
| Xperia Z2 Tablet (WiFi) |
| Xperia Z2 Tablet (LTE) |
| Xperia Z2 Tablet (Verizon LTE) |
| Xperia Z3 Tablet Compact (WiFi) |
| Xperia Z3 Tablet Compact (LTE) |
| Xperia Z4 Tablet (WiFi) |
| Xperia Z4 Tablet (LTE) |

## APPENDIX B

## PERSONS, ENTITIES AND ORGANIZATIONS THAT HAVE PROPERLY EXCLUDED THEMSELVES FROM THE CLASS

# Exhibit 3

**IN-DATABASE CLAIM FORM FOR PAYMENT IN**
*Landes et al. v. Sony Mobile Communications (U.S.A.), Inc., et al.*

**Pursuant to the cover letter that was sent to you with this In-Database Claim Form, you are eligible for payment of 50% of the at-issue Manufacturer's Suggested Retail Price ("MSRP") for your Mobile Device because you previously submitted a warranty claim for water intrusion for an in-warranty Mobile Device to Sony and your claim was denied by Sony. You need only: (1) timely complete and submit this In-Database Claim Form; (2) not exclude yourself from the Class; and (3) satisfy any other terms and conditions of the Settlement Agreement.**

For information on the MSRP of your Mobile Device and for other details regarding the class action settlement, please first visit *[website]*. If you still have questions regarding the claims process, *[call/email ___]*.

**<u>INSTRUCTIONS FOR COMPLETING THIS CLAIM FORM AND SUBMITTING A CLAIM FOR PAYMENT</u>**

1) You can complete the Claim Form online at www.[website].com, or on paper. Check the form carefully to make sure all of the information is correct and that you have filled in any missing information.

2) Capitalized terms in this Claim Form have the same meaning as provided in the Settlement Agreement, which is available at *[website]*. <u>No funds will be paid out unless and until the settlement is finally approved by the Court, including the resolution of any appeals in favor of upholding the settlement.</u>

3) If you print this Claim Form out, type or print legibly in blue or black ink. Do not use any highlighters. Provide **<u>all</u>** requested information to complete and submit this Claim Form, as specified below, and sign the Claim Form.

4) **You must submit your completed Claim Form by mail or electronically no later than [date]. Please check the settlement website, [website], which will be periodically updated. The completed Claim Form can be submitted on line at [website] or mailed to**:

**[Settlement Notice Administrator Address]**

*Important*: Keep a copy of your completed Claim Form because your Claim Form will not be returned.

**If you fail to timely and fully complete this Claim Form, your Claim may be denied. If your Claim is denied, you will not receive a cash payment for your Claim. The Settlement Claims Administrator has the right to request verification of eligibility to participate in this settlement.** If your claim is rejected for any reason, you will be notified.

1

**SECTION I – CLASS MEMBER AND MOBILE DEVICE INFORMATION**

| Name: | | |
|---|---|---|
| *Last* | *First* | *Middle Initial* |
| | | |

| *Type of Mobile Device* |
|---|
| |

| *Your Address:* |
|---|
| *Number/Street/P.O. Box No.* |
| |

| *City:* | | *State:* | *Zip Code:* |
|---|---|---|---|
| | | | |
| *Telephone Number:* | | *Email Address:* | |
| | | | |


**SECTION II –WARRANTY INFORMATION FOR PRIOR WATER INTRUSION CLAIM**

Did you previously submit a warranty claim to Sony alleging water intrusion to your in-warranty Mobile Device and Sony denied the claim?

No
Yes

**If you answered "No" to question 1, you are not eligible to submit a claim.**

**SECTION III – ATTESTATION**

By signing this form, you affirm that you **HAVE NOT** received a replacement device from or otherwise been paid by Sony for this claim.

I affirm under the laws of the United States of America, that the information in this Claim Form is true and correct to the best of my knowledge, information and belief. I understand that my Claim Form may be subject to audit, verification and the Settlement Notice Administrator and Court review.

Signature _____

Date _____


**SECTION IV – CLAIM FORM COMPLETION AND SUBMISSION CHECKLIST**

Be sure that your completed Claim Form includes your name, current address, telephone number, contact information and the type of Mobile Device.

Keep a copy of your completed Claim Form for your records.

2

Sign and date your Claim Form.

Finally, your completed Claim Form must be submitted electronically no later than [DATE] or postmarked no later than [DATE].  The completed Claim Form can be submitted on line at [website] or mailed to:

[Settlement Notice Administrator Address]

\*\*\*\*\*

Sony, the Settlement Claims Administrator, and/or the Settlement Notice Administrator are not responsible for any misdelivered, lost, illegible, damaged, destroyed, or otherwise not received mail or e-mail.

Claim Forms will be processed and approved in accordance with the terms of the Settlement Agreement.  Please check the settlement website, **[website]**, for updates.

# Exhibit 4

**Authorized by the U.S. District Court for the Eastern District of New York**

**IF YOU PURCHASED A SONY MOBILE DEVICE, YOU COULD GET BENEFITS FROM A CLASS ACTION SETTLEMENT**

*Para ver este aviso en espanol, visita www.[website]*

- There is a proposed settlement that has been preliminarily approved in a class action lawsuit against Sony Mobile Communications (U.S.A.), Inc. and Sony Electronics, Inc. (hereinafter collectively "Sony") concerning certain Sony mobile devices ("Mobile Devices"). Those included in the settlement have legal rights and options and deadlines by which they must exercise them.
- You are included if you purchased, own(ed), received as a gift or received as a customer service exchange the Mobile Devices manufactured, marketed, sold and/or distributed by Sony Mobile Communications (U.S.A.), Inc. in any of the 50 States, the District of Columbia and Puerto Rico (*see* Question 3 below for a list of eligible devices).
- The settlement provides for: (1) a warranty extension; (2) changes to packaging, labeling and advertising; and (3) a claim process relating to prior water-related warranty claim rejections.

Please read this Notice carefully. Your legal rights are affected, whether you act or don't act. You are encouraged to periodically check the website, **[website]**, because it will be updated with additional information.

# A. BASIC INFORMATION

## 1. What is this Notice about?

A Court authorized this Notice because you may have a right to know about a proposed settlement of a class action lawsuit and about all of your options and associated deadlines before the Court decides whether to give final approval to the settlement. The name of the lawsuit is *Landes v. Sony Mobile Communications (U.S.A.), Inc. et al.,* Case No. 2:17-cv-2264-JFB-SIL (E.D.N.Y.). The defendants are Sony Mobile Communications (U.S.A.), Inc. and Sony Electronics, Inc. This Notice explains the lawsuit, the settlement, and your legal rights. You are NOT being sued. The Court still has to decide whether to finally approve the settlement. Payments and other benefits will be distributed only if the Court finally approves the settlement and after any appeals are resolved in favor of the settlement. Please be patient and check the website identified in this Notice regularly. <u>Please do not contact Sony, cellular phone carriers, or retail stores carrying the Mobile Devices as the Court has ordered that all</u>

questions be directed to the Class Action Settlement Administrator.

***Your legal rights may be affected even if you do not act.***
***Please read this Notice carefully***

**YOUR RIGHTS AND CHOICES**

| YOU MAY: | | DUE DATE |
|---|---|---|
| AUTOMATICALLY OBTAIN A WARRANTY EXTENSION | Sony stands behind the reliability of the Mobile Devices by extending the limited warranty coverage for damage resulting from water intrusion: (a) by an additional 12 months for those Mobile Devices where the warranty is still in effect as of the date of the issuance of the Preliminary Approval Order ("Active Warranty Mobile Devices"); and (b) six months for those Mobile Devices that are out-of-warranty as of the date of the issuance of the Preliminary Approval Order ("Expired Warranty Mobile Devices").  This will take effect upon the issuance of the Final Order and Final Judgment. | *For the Active Warranty Mobile Devices, the date for the extension of the warranty shall be measured from the purchase date, if it is still in warranty as of the date of the issuance of the Preliminary Approval Order.  For the Expired Warranty Mobile Devices, the date of the extension of the warranty shall begin on the date of the issuance of the Final Order and Final Judgment and expire six months thereafter.* |
| FILE A CLAIM TO SEEK REIMBURSEMENT | You may submit Claims for prior water-related warranty claim rejections by Sony for your in-warranty Mobile Devices.  This is the only way that you can get reimbursed for 50% of the at-issue Manufacturer's Suggested Retail Price ("MSRP") for the applicable Mobile Device.  There are two different Claim Forms with different requirements, as further discussed below. | *The deadline to submit Claim Forms is sixty (60) days after the Court's Fairness Hearing.* |
| OBJECT | Write to the Court about why you don't like the settlement. | *[date]* |
| EXCLUDE YOURSELF | Ask to get out (opt out) of the settlement.  If you do this, you are not entitled to certain settlement benefits, but you keep your right to sue Sony about the issues in the lawsuit. | *[date]* |

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

2

| APPEAR IN THE LAWSUIT OR GO TO THE FAIRNESS HEARING | You are not required to enter an appearance in the lawsuit in order to participate in the settlement, but you may enter an appearance on your own or through your own lawyer in addition to filing an objection if you do not opt out. You can also ask to speak in Court at the Fairness Hearing about the settlement. | *[Appearance deadline - date]*<br><br>*[Fairness Hearing date and time]* |
|---|---|---|
| DO NOTHING | You may not receive certain settlement benefits that you may otherwise be eligible for and you give up the right to sue the Sony entities about the issues in the lawsuit. | |

## 2.   What is the lawsuit about?

The class action lawsuit claims and alleges that Sony sold Mobile Devices that were deceptively advertised as "waterproof." The lawsuit pursues claims for violations of various state consumer protection statutes, among other claims. You can read the Complaint by visiting **www.[website].** Sony denies any claims of wrongdoing and/or violation of the law and denies that the Mobile Devices are defective. The parties agreed to resolve these matters before they were decided by the Court.

On January 13, 2016, Named Plaintiffs Logan Landes and James Goddard ("Named Plaintiffs" or "Plaintiffs") served a demand letter pursuant to California Civil Code § 1782, and other applicable laws, on Sony. On March 29, 2016, pursuant to confidentiality agreement between the parties, Plaintiffs served document requests on Sony. Plaintiffs' Class Counsel Levi & Korsinky LLP ("Plaintiffs' Class Counsel") have reviewed over 11,000 documents produced by Sony. Plaintiffs' Class Counsel has conferred with a damages expert concerning the potential damages that relate to the claims in their complaint. As part of extensive arm's length negotiations, Patrick A. Juneau conducted mediation sessions with Plaintiffs' Class Counsel and Sony. Plaintiffs' Class Counsel conducted an interview of Anders Grynge, Director of Sony Customer Services for the Americas, on December 4, 2016.

On April 14, 2017, Plaintiffs filed a class action complaint in *Landes, et al. v. Sony Mobile Communications (U.S.A.), Inc. et al.*, No. 2:17-cv-2264-JFB-SIL (United States District Court for the Eastern District of New York) alleging, among other things, that Sony designed, manufactured, distributed, advertised and sold certain Mobile Devices

QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
PLEASE DO **NOT** CALL THE JUDGE OR THE CLERK OF COURT

3

that were alleged to be misrepresented as "waterproof," but are, in fact, "not waterproof and are not designed for or capable of ordinary underwater use." Complaint ¶ 1. Plaintiffs, on behalf of the classes, further allege that "Sony exploited certain international water resistance ratings in order to launch a deceptive marketing campaign promoting the Devices" and cite to numerous advertisements and other marketing. *Id.* ¶¶ 19-60. Plaintiffs seek certification of a nationwide class of all persons who purchased the devices as well as Illinois and California subclasses, excluding certain persons and entities who/which, by way of example, purchased the devices for resale. *Id.* ¶¶ 61-72.

## 3.   What Sony mobile devices are included in the settlement?

The following Sony mobile devices ("Mobile Devices") distributed for sale in the United States, the District of Columbia, and Puerto Rico are in the settlement:

| |
|---|
| Xperia M2 Aqua |
| Xperia M4 Aqua |
| Xperia ZR |
| Xperia Z Ultra |
| Xperia Z1 |
| Xperia Z1 Compact |
| Xperia Z1s (T-Mobile) |
| Xperia Z2 |
| Xperia Z3 |
| Xperia Z3 Compact |
| Xperia Z3 (T-Mobile) |
| Xperia Z3v (Verizon) |
| Xperia Z3 Dual |
| Xperia Z3+ Dual |
| Xperia Z3+ |
| Xperia Z5 |
| Xperia Z5 Compact |
| Xperia Z2 Tablet (WiFi) |

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

4

| |
|---|
| Xperia Z2 Tablet (LTE) |
| Xperia Z2 Tablet (Verizon LTE) |
| Xperia Z3 Tablet Compact (WiFi) |
| Xperia Z3 Tablet Compact (LTE) |
| Xperia Z4 Tablet (WiFi) |
| Xperia Z4 Tablet (LTE) |

## 4.   Why is this a class action?

In a class action, people called "class representatives" sue on behalf of other people who have similar claims.   All of these people together are the "Class" or "Class Members" if the Court approves this procedure.   Then, that Court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

## 5.   Why is there a settlement?

Both sides in the lawsuit agreed to a settlement to avoid the cost and risk of further litigation, including a potential trial, and so that the Class Members can get benefits, in exchange for releasing Sony from liability.   The settlement does not mean that Sony broke any laws and/or did anything wrong, and the Court did not decide which side was right.   Sony stands behind the advertising and warranty of its Mobile Devices.   The settlement here has been preliminarily approved by the Court, which authorized the issuance of this Notice.   The Named Plaintiffs, who are also Class Representatives, and the lawyers representing them (called "Class Counsel") believe that the settlement is in the best interests of all Class Members.

The essential terms of the settlement are summarized in this Notice.   The Settlement Agreement along with all exhibits and addenda sets forth in greater detail the rights and obligations of the parties.   If there is any conflict between this Notice and the Settlement Agreement, the Settlement Agreement governs.

# B. WHO IS IN THE SETTLEMENT?

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

To see if you are affected or if you can get money or benefits, you first have to determine whether you are a Class Member.

## 6.   How do I know if I am part of the settlement?

You are part of the settlement if you are a person, entity or organization who, at any time as of or before **[date of Preliminary Approval Order]**, purchased, own(ed), received as a gift or received as a customer service exchange the Mobile Devices manufactured, marketed, sold and/or distributed by Sony Mobile Communications (U.S.A.), Inc. in any of the fifty States, the District of Columbia, and Puerto Rico. This is called the "Class."

Excluded from the Class are: (a) any persons or entities that purchased or acquired the Mobile Devices for commercial use or resale; (b) any claims aggregators; (c) any person who claims to be an assignee of rights associated with the Mobile Devices; (d) Sony Mobile Communications (U.S.A.), Inc., its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; (e) Plaintiffs' Class Counsel; (f) judicial officers and their immediate family members and associated court staff assigned to this case; and (g) persons or entities who or which timely and properly exclude themselves from the Class.

## 7.   I'm still not sure if I'm included in the settlement.

If you are not sure whether you are included in the Class, you may call **[toll free number of Class Action Settlement Administrator]**.   Please do not contact Sony, cellular phone carriers, or retail stores carrying the Mobile Devices as the Court has ordered that all questions be directed to the Class Action Settlement Administrator.

# C. THE SETTLEMENT BENEFITS—WHAT YOU GET AND HOW TO GET IT

## 8.   What does the settlement provide?

If you are a Class Member, what you are eligible to receive depends on several factors.   The settlement benefits are outlined generally below, but more information

QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]
PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED
PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT

6

can be found at the settlement website.   The Court still has to decide whether to finally approve the settlement.   Sony may begin to offer some of these benefits over time, beginning pursuant to the terms of the Settlement Agreement, upon entry of the Preliminary Approval Order by the Court.   However, no benefits have to be provided until and unless the Court finally approves the settlement and only after any appeal period expires or any appeals are resolved in favor of the settlement.   We do not know when the Court will finally approve the settlement if it does so or whether there will be any appeals that would have to be resolved in favor of the settlement before certain benefits would be provided, so we do not know precisely when any benefits may be available.   Please check **[settlement website]** regularly for updates regarding the settlement.

*Please note that you may have to take action within certain deadlines to receive certain benefits, such as completing and submitting a claim form*.   If you do nothing, you may not receive certain benefits from the settlement, and, as a Class Member, you will not be able to sue Sony about the issues in the lawsuit.

## a.      Warranty Extension Program

Upon the issuance of the Final Order and Final Judgment, Sony agrees to extend the limited warranty for damage resulting from water intrusion: (a) by an additional 12 months for those Mobile Devices where the warranty is still in effect as of the date of the issuance of the Preliminary Approval Order ("Active Warranty Mobile Devices"); and (b) six months for those Mobile Devices that are out-of-warranty as of the date of the issuance of the Preliminary Approval Order ("Expired Warranty Mobile Devices"). For the Active Warranty Mobile Devices, the date for the extension of the warranty shall be measured from the purchase date.   For the Expired Warranty Mobile Devices, the date of the extension shall begin on the date of the issuance of the Final Order and Final Judgment and expire six months thereafter.   All other terms and conditions of the limited warranty, if still in effect, shall apply.   While Sony shall have no obligation to implement this relief until the occurrence of the Final Effective Date, Sony may, in its discretion, implement all or any part of this relief prior to the applicable deadlines set forth herein.

## b.    Advertising Changes.

QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]
PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED
PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT

Within 90 days of the issuance of the Preliminary Approval Order, for the Mobile Devices currently being sold by Sony or any newly-introduced models with IP 65/68 substantiation, Sony shall change its advertising and marketing intended for end users in the United Sates relating to "waterproof" or substantially identical terms to "water resistance" or its substantial and/or functional equivalent. Sony also agrees to notify its third party resellers regarding such advertising changes and the terms of this Settlement Agreement. In the event that a reseller continues to use the phrase "waterproof" in its advertising or marketing, Sony shall not be responsible for such action or inaction. Within 90 days of the issuance of the Preliminary Approval Order, Sony shall provide advance copies of representative samples of advertising or marketing changes to Plaintiffs' Class Counsel for their review and comment, which will be similar in substance to materials already provided to Plaintiffs' Class Counsel. The changes required by this Section shall not apply to the global developer website located at http://developer.sonymobile.com.

## c.    Claim Reimbursement.

If the settlement is finally approved, including resolving any appeals in favor of upholding the settlement, eligible Class Members, during the Claim Period, may submit Claims provided that Class Members: (i) complete and timely submit In-Warranty Claim Forms or Standard Claim Forms; (ii) have Claims that are eligible for reimbursement; and (iii) do not opt out of the settlement. The Standard Claim Form shall be available on the settlement website. Either Claim Form can be submitted in either hard-copy or online. In no event shall a Class Member be entitled to more than one payment per Mobile Device for the claims at issue.

### i.    In-Warranty Claim Forms

For Eligible Class Members who previously had timely claims for water-related damages denied by Sony for their in-warranty Mobile Devices, as identified in Sony's records, Sony shall issue a check of 50% of the at-issue Manufacturer's Suggested Retail Price ("MSRP") for the applicable Mobile Device, as indicated in Exhibit 9 to the Settlement Agreement, which is found on the website, to those Class Members who complete and timely return an In-Warranty Claim Form during the Claim Period. The MSRP ranges from $249.99 to $679.99, depending upon the applicable Mobile Device.

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

Class Members in this category shall be sent a notification letter that shall be sent with an In-Database Claim Form.   The notification letter shall notify the Class Members that they are on the list of persons who previously had submitted a water-related claim that was denied by Sony and that they are eligible for relief from this Settlement Agreement, provided they perform several simple tasks in a timely manner.   The Claim Form shall require the Class Member to provide basic information, such as confirming or revising their physical address, in order to be sent the settlement relief check.

### ii. Standard Claim Form

Eligible Class Members who are not in Sony's records as having provided an address, may submit, during the Claim Period, Claims for damaged Mobile Devices that were previously submitted to Sony for water intrusion issues for in-warranty Mobile Devices and whose claims for relief were denied by Sony for reasons other than where there are clear indications of misuse or abuse, including, but not limited to, the seals and/or flaps were open at the time of damage, of the Mobile Devices.   Class Members must timely complete the Standard Claim Form.   Sony shall issue a check of 50% of the at-issue MSRP for the applicable Mobile Device to those Class Members who complete and timely return a Standard Claim Form during the Claim Period.   If the Claim is rejected for payment, Plaintiffs' Class Counsel and Sony's Counsel may meet and confer in an attempt to resolve these denied Claims, as provided in the Settlement Agreement.

### iii. Claim Review and Processing

The Class Action Settlement Administrator shall receive and process the Claims, whether submitted electronically via the settlement website or by U.S. Mail, and the Class Action Settlement Administrator shall administer the review and processing of Claims.   The Class Action Settlement Administrator shall have the authority to determine whether In-Warranty Claim Forms or Standard Claim Forms submitted by Class Members are complete and timely.

If a Claim is deficient, the Class Action Settlement Administrator shall mail a notice deficiency letter to the Class Member requesting that the Class Member complete the deficiencies and resubmit the In-Warranty Claim Form or Standard Claim Form within forty-five (45) days of the date of the letter from the Class Action Settlement Administrator.   If the Class Member fails to provide the requested documentation or

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

9

information, that Claim shall be denied without further processing.

The Class Action Settlement Administrator shall use their best efforts to complete their review of timely and completed In-Warranty Claim Forms or Standard Claim Forms within ninety (90) days of receipt. The Class Action Settlement Administrator's review period for submitted In-Warranty Claim Forms or Standard Claim Forms shall not be required to commence any earlier than sixty (60) days after the occurrence of the Final Effective Date.

Please note that the Class Action Settlement Administrator has the right to request verification of the information provided in the Claim Forms, including, but not limited to, receipt(s) or other supporting documentation. If the Class Member does not timely comply and/or is unable to produce documents to substantiate and/or verify the information on the Claim Form and the Claim is otherwise not approved, the Claim may be reduced or denied.

### iv. When Will I Get Paid for a Submitted Claim?

If accepted for payment, the Class Action Settlement Administrator shall pay the Claim of the Class Member and shall use its best efforts to pay timely, valid and approved Claims within ninety (90) days after receipt of the Claim, provided however, that this date occurs after the occurrence of the Final Effective Date. The Class Action Settlement Administrator shall periodically request funds from Sony to pay the approved Claims in advance of the date mentioned in this Section and with sufficient time to allow Sony to obtain and provide the funds to the Class Action Settlement Administrator.

If the Claim is rejected for payment, the Class Action Settlement Administrator shall notify Plaintiffs' Class Counsel and Sony's Counsel of said rejection of the Class Member's Claim and the reason(s) why. The decision of the Class Action Settlement Administrator is final, provided however, that Plaintiffs' Class Counsel and Sony's Counsel may meet and confer in an attempt to resolve these denied Claims. If Plaintiffs' Class Counsel and Sony's Counsel jointly recommend payment of the Claims or payment of a reduced claim amount, then Sony's Counsel shall inform the Class Action Settlement Administrator, who shall instruct Sony to pay said Claims. If Plaintiffs' Class Counsel and Sony's Counsel disagree, they shall notify the Class Action Settlement Administrator who shall make a final decision as to whether the Claims shall be paid.

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

10

***Important***:   *In order to receive reimbursement for a Claim, eligible Class Members must complete and submit the proper Claim Form **on or before [date]**.*   If you are an eligible Class Member, you can complete and submit a Claim Form online at www.[website].   Alternatively, if you are an eligible Class Member, you can obtain a Claim Form from the settlement website, print it out, complete it, and mail it on or before **[date]** to the settlement administrator at [contact and address].   Class Members submitting Claim Forms must timely provide all information requested on the Claim Form in order to demonstrate eligibility to receive a payment.

## 9.   What am I giving up in exchange for the settlement benefits?

If the settlement becomes final, Class Members who do not exclude themselves from the Class will release Sony from liability and will not be able to sue Sony about the issues in the lawsuit.   The Settlement Agreement at Section VII describes the released claims in necessary legal terminology, so read it carefully.   For ease of reference, we also attach the full release Section in Appendix A to this Notice.   The Settlement Agreement is available at www.**[website].**   You can talk to one of the lawyers listed in Question 15 below for free or you can, of course, talk to your own lawyer at your own expense if you have questions about the released claims or what they mean.

# D. EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue or continue to sue Sony over the legal issues in the lawsuit, then you must take steps to get out of this settlement.   This is called asking to be excluded from the Class, also referred to as "opting out" of the Class.

## 10.   If I exclude myself, can I get anything from this settlement?

If you exclude yourself, you cannot get settlement benefits.   If you ask to be excluded, you cannot object to the settlement.   But, if you timely and properly request exclusion, the settlement will not prevent you from suing, continuing to sue or remaining or becoming part of a different lawsuit against Sony in the future about the issues in the lawsuit.   If you exclude yourself, you will not be bound by anything that happens in this lawsuit and you may not object to the settlement.

## 11.   If I don't exclude myself, can I sue later?

QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT

11

Unless you exclude yourself, you give up the right to sue Sony for the claims resolved by this settlement.   If the settlement is finally approved, you will be permanently enjoined and barred from initiating or continuing any lawsuit or other proceeding against Sony about the issues in the lawsuit.

## 12.   How do I get out of the settlement?

To exclude yourself from the settlement, you **must** send a letter by mail saying that you want to be excluded from the settlement *Landes, et al. v. Sony Mobile Communications (U.S.A.), Inc., et al.,* and mention the case number 2:17-cv-2264-JFB-SIL.   In the letter, you **must** include your name, address, and telephone number, the Mobile Device's model name, approximately when and where the model was purchased, your signature and statement that you want to be excluded from the Class or settlement in *Landes, et al. v. Sony Mobile Communications (U.S.A.), Inc., et al*. 2:17-cv-2264-JFB-SIL (E.D.N.Y.).   You can't ask to be excluded over the phone or at [**settlement website**].   You **must** mail your exclusion request postmarked no later than [**date**] to:

[**contact and address**]

Your exclusion request must be received by [**contact**] no later than [**date**] to be considered by the Court.   The deadlines found in this Notice may be changed by the Court.   Please check www.[**settlement website**] regularly for updates regarding the settlement.

# E. THE LAWYERS REPRESENTING YOU

## 13.   Do I have a lawyer in the case?

Yes.   The Court has appointed lawyers to represent you and other Class Members. These lawyers are called "Class Counsel":   Nancy A. Kulesa and Shannon L. Hopkins of Levi & Korsinsky LLP are Class Counsel.   Their contact information is as follows:

Nancy A. Kulesa
Shannon L. Hopkins
Levi & Korsinsky LLP

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT**

30 Broad Street
24th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Website: www.zlk.com

If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense.

## 14.   How will the lawyers be paid?

The law firms that worked on this Action will ask the Court for an award of attorneys' fees in the amount not to exceed $1,000,000.00 for fees and out-of-pocket costs and expenses.   Sony will not oppose the request for attorneys' fees, costs and expenses in this amount.

Class Counsel will also ask the Court to award each of the Class Representatives service awards in the amount of $1,000.00 for the time and effort each spent representing Class Members.   Sony will not oppose the request for Class Representative service awards in this amount.

The Court must approve the request for attorneys' fees, costs and expenses and the request for service awards.   The amounts awarded by the Court will be paid by Sony in addition to all other settlement benefits.   Under no circumstances will Sony's payment of attorneys' fees, costs and expenses and Class Representative service awards reduce your settlement benefits.

## F. OBJECTING TO THE SETTLEMENT

You can tell the Court if you don't agree with the settlement or some part of it.

## 15.   How do I tell the Court if I don't like the settlement?

Any Class Member who has not filed a timely written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of this Settlement Agreement, the requested award of Attorneys' Fees, Costs, and Expenses, or the

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

13

requested incentive awards to the Named Plaintiffs, must deliver to Plaintiffs' Class Counsel and Sony's Counsel identified below so that it is received by [DATE] and on file with the Clerk of Court on or before [DATE] a written statement of his/her/its objection.   The written objection of any Class Member must include: (a) a heading which refers to *Landes, et al. v. Sony Mobile Communications (U.S.A.), Inc., et al.,* Case No. 2:17-cv-2264-JFB-SIL (E.D.N.Y.); (b) the objector's full name, telephone number, and address (the objector's actual residential address must be included); (c) if represented by counsel, the full name, telephone number, and address of all counsel; (d) all of the reasons for his or her objection; (e) whether the objector intends to appear at the Fairness Hearing on his or her own behalf or through counsel; (f) a statement that the objector is a Class Member, including the Mobile Device(s)' model name and approximately when and where the Mobile Device(s) was purchased; and (g) the objector's dated, handwritten signature (an electronic signature or attorney's signature are not sufficient).   Any documents supporting the objection must also be attached to the objection.   If any testimony is proposed to be given in support of the objection, the names of all persons who will testify must be set forth in the objection. Class Members may do so either on their own or through an attorney retained at their own expense.   The objection must include proof that you fall within the definition of the Class.

To object, you **must** send a written objection to Plaintiffs' Class Counsel and Sony's Counsel at the addresses below so that the objection is received by Plaintiffs' Class Counsel and Sony's Counsel no later than **[date]**.   To have your objection considered by the Court, you also must file the objection with the Clerk of Court (identified below) so that it is received and filed no later than **[date]**.

| Clerk of Court | Class Counsel | Sony's Counsel |
|---|---|---|
| United States District Court | Nancy A. Kulesa | John P. Hooper |
| Eastern District of New York | Levi & Korsinsky LLP | Reed Smith |
| 100 Federal Plaza | 30 Broad Street | 599 Lexington Avenue |
| Central Islip, NY 11722 | 24th Floor | 28th Floor |
|  | New York, NY 10004 | New York, NY 10022 |

## 16.    What's the difference between objecting and excluding?

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

14

Excluding yourself is telling the Court that you don't want to be part of the Class.   If you exclude yourself, you have no basis to object because the settlement no longer affects you. Objecting is telling the Court that you don't like something about the settlement.   You can object only if you stay in the Class.

If you are a Class Member and you do nothing, you will remain a Class Member and all of the Court's orders will apply to you, you will be eligible for the settlement benefits described above as long as you satisfy the conditions for receiving each benefit, and you will not be able to sue Sony over the issues in the lawsuit.

# G. THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to grant final approval to the settlement.   If you have filed an objection on time and attend the hearing, you may ask to speak, but you don't have to attend or speak.

## 17.   When and where will the Court decide whether to grant final approval of the settlement?

The Court will hold a Fairness Hearing at **[p.m.]** on **[date]** at the United States District Courthouse for the Eastern District of New York in courtroom 1020, located at 100 Federal Plaza, Central Islip, NY 11722 .   At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate.   If there are objections, the Court will consider them.   The Court will only listen to people who have met the requirement to speak at the hearing (*See* Question 19 below).   After the hearing, the Court will decide whether to grant final approval the settlement, and, if so, how much to pay the lawyers representing Class Members.   We do not know how long these decisions will take.   The Court may reschedule the Fairness Hearing, so check the website periodically for further updates.

## 18.   Do I have to come to the hearing?

No.   Class Counsel will answer any questions the Court may have.   But you are welcome to come at your own expense.   If you send an objection, you don't have to come to Court to talk about it – but you can if you provide advance notice of your intention to appear (*See* Question 19 below).   As long as you filed a written objection with all of the required information on time with the Court and delivered it on time to Class Counsel and Sony's Counsel, the Court will consider it.   You may also pay

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT**

another lawyer to attend, but it is not required.

## 19.   May I speak at the hearing?

You or your attorney may ask the Court for permission to speak at the Fairness Hearing.   To do so, you **must** send a letter saying that it is your "Notice of Intent to Appear in *Landes v. Sony Mobile Communications (U.S.A.), Inc. et al.*" to Class Counsel and Sony's Counsel identified above in response to Question 15 so that they <u>receive</u> it no later than **[date]**.   You must also file the document with the Clerk of Court so that it is received and filed no later than **[date].**   You **must** include your name, address, telephone number, the Mobile Device's model name, and approximately when and where the Mobile Device was purchased, and your signature. Anyone who has requested permission to speak must be present at the start of the Fairness hearing at **[__ p.m.] on** [**date**].   You cannot speak at the hearing if you excluded yourself from the Class.

# H. GETTING MORE INFORMATION

## 20.   How do I get more information?

This Notice summarizes the proposed settlement.   More details are in a Settlement Agreement, including its exhibits and addenda.    You can get a copy of the Settlement Agreement and other information about the settlement, including, but not limited to, answers to frequently asked questions and the Claim Forms, at www**.[website].**   You can also call the toll-free number, [**number**] or write the settlement administrator at [**contact and address**].   You can also look at the documents filed in the lawsuit at the Court at the address provided above in response to Question 15.

## 21. When will the settlement be final?

The settlement will not be final unless and until the Court grants final approval of the settlement at or after the Fairness Hearing and after any appeals are resolved in favor of the settlement.   Please be patient and check the website identified in this Notice regularly.   Please do not contact Sony, cellular phone carriers, or retail stores carrying the Mobile Devices as the Court has ordered that all questions be directed to the Class Action Settlement Administrator.

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
<u>**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**</u>
**PLEASE DO <u>NOT</u> CALL THE JUDGE OR THE CLERK OF COURT**

**Appendix A – Section VII from the Settlement Agreement – Release and Waiver**

A.  The Parties agree to the following release and waiver, which shall take effect upon entry of the Final Judgment and Final Order.

B.  In consideration for the Settlement, Named Plaintiffs and each Class Member, on behalf of themselves and any other legal or natural persons who may claim by, through or under them, agree to fully, finally and forever release, relinquish, acquit, discharge and hold harmless the Released Parties from any and all claims, demands, suits, petitions, liabilities, causes of action, rights, and damages of any kind and/or type regarding the subject matter of the Action, including, but not limited to, compensatory, exemplary, punitive, expert and/or attorneys' fees or by multipliers, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative or direct, asserted or un-asserted, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, violations of any state's deceptive, unlawful, or unfair business or trade practices, false, misleading or fraudulent advertising, consumer fraud or consumer protection statutes, any breaches of express, implied or any other warranties, RICO, or the Magnuson-Moss Warranty Act, or any other source, or any claim of any kind related arising from, related to, connected with, and/or  in any way involving the Action, claims involving waterproof, water resistant or similar terms, and/or the Mobile Devices that are, or could have been, defined, alleged or described in the Complaint, the Action, or any amendments of complaints filed in the Action, including, but not limited to, the communications, disclosures, nondisclosures, representations, statements, claims, omissions, messaging, design, manufacturing, testing, studies, advertising, marketing, promotion, packaging, displays, brochures, functionality, servicing, performance, warrantying, sale, resale, gift or replacement of the Mobile Devices relating to waterproof, water resistant or similar terms.

C.  Notwithstanding the foregoing, the Released Parties shall be held harmless by any Named Plaintiffs or Class Member for any released claim asserted against the Released Parties, by that Named Plaintiffs or Class Member, either directly or by any legal or natural persons who claim by, through, or under that Named Plaintiffs or Class Member.

D.  The Final Judgment and Final Order will reflect these terms.

E.  Named Plaintiffs and each Class Member expressly agree that this Release, the Final Order, and/or the Final Judgment is, will be, and may be raised as a complete defense to, and will preclude any action or proceeding encompassed by, this Release.

F.  Named Plaintiffs and each Class Member shall not now or hereafter institute, maintain, prosecute, assert, and/or cooperate in the institution, commencement, filing, or prosecution of any suit, action,

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

17

and/or proceeding, against the Released Parties, either directly or indirectly, on their own behalf, on behalf of a class or on behalf of any other person or entity with respect to the claims, causes of action and/or any other matters released through this Settlement.

G.  In connection with this Agreement, Named Plaintiffs and each Class Member acknowledge that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action and/or the Release herein.  Nevertheless, it is the intention of Plaintiffs' Class Counsel, Named Plaintiffs and each Class Member fully, finally and forever to settle, release, discharge, and hold harmless all such matters, and all claims relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the Action.

H.  Named Plaintiffs expressly understand and acknowledge and all Class Members will be deemed by the Final Judgment and Final Order to acknowledge and waive Section 1542 of the Civil Code of the State of California, which provides that:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Named Plaintiffs and Class Members expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable or equivalent to Section 1542, to the fullest extent they may lawfully waive such rights.

I.  Named Plaintiffs represent and warrant that they are the sole and exclusive owners of all claims that they personally are releasing under this Agreement.  Named Plaintiffs further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that Named Plaintiffs are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Action or in any benefits, proceeds or values under the Action.  Class Members submitting a Claim Form shall represent and warrant therein that they are the sole and exclusive owner of all claims that they personally are releasing under the Settlement and that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that such Class Member(s) are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Action or in any benefits, proceeds or values under the Action.

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

18

J.   Without in any way limiting its scope, and, except to the extent otherwise specified in the Agreement, this Release covers by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, and/or disbursements incurred by any attorneys, Plaintiffs' Class Counsel, Named Plaintiffs or Class Members who claim to have assisted in conferring the benefits under this Settlement upon the Class.

K.   In consideration for the Settlement, Sony and its past or present officers, directors, employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, and assigns shall be deemed to have, and by operation of the Final Approval Order shall have, released Plaintiffs' Class Counsel and each current and former Named Plaintiffs from any and all causes of action that were or could have been asserted pertaining solely to the conduct in filing and prosecuting the litigation or in settling the Action.

L.   Plaintiffs' Class Counsel and any other attorneys who receive attorneys' fees and costs from this Settlement acknowledge that they have conducted sufficient independent investigation and discovery to enter into this Settlement Agreement and, by executing this Settlement Agreement, state that they have not relied upon any statements or representations made by the Released Parties or any person or entity representing the Released Parties, other than as set forth in this Settlement Agreement.

M. The Parties specifically understand that there may be further pleadings, discovery requests and responses, testimony, or other matters or materials owed by the Parties pursuant to existing pleading requirements, discovery requests, or pretrial rules, procedures, or orders, and that, by entering into this Agreement, the Parties expressly waive any right to receive, hear, or inspect such pleadings, testimony, discovery, or other matters or materials.

N.   Nothing in this Release shall preclude any action to enforce the terms of the Agreement, including participation in any of the processes detailed herein.

O.   Named Plaintiffs and Plaintiffs' Class Counsel hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of the Agreement and shall be included in any Final Judgment and Final Order entered by the Court.

"Released Parties" or "Released Party" means Sony Corporation of America, Sony Mobile Communications AB, Sony Mobile Communications (US) Inc., Sony Electronics Inc., and Sony Corporation of America, and each of their past, present and future parents, predecessors, successors, spin-offs, assigns, holding companies, joint-ventures and joint-venturers, partnerships and partners, members, divisions, stockholders, bondholders, subsidiaries, related companies, affiliates, officers, directors, employees, associates, dealers, representatives, suppliers, vendors, authorized sellers and re-sellers, advertisers, service providers, distributors and sub-distributors, agents, attorneys, administrators and advisors.   The Parties expressly acknowledge that each of the foregoing is included as a Released Party even though not identified by name herein.

**QUESTIONS? CALL TOLL FREE [PHONE NUMBER] OR VISIT [WEBSITE]**
**PLEASE CONTINUE TO CHECK THE WEBSITE AS IT WILL BE PERIODICALLY UPDATED**
**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT**

# Exhibit 5

## EXHIBIT 5 – LIST OF MOBILE DEVICES

| |
|---|
| Xperia M2 Aqua |
| Xperia M4 Aqua |
| Xperia ZR |
| Xperia Z Ultra |
| Xperia Z1 |
| Xperia Z1 Compact |
| Xperia Z1s (T-Mobile) |
| Xperia Z2 |
| Xperia Z3 |
| Xperia Z3 Compact |
| Xperia Z3 (T-Mobile) |
| Xperia Z3v (Verizon) |
| Xperia Z3 Dual |
| Xperia Z3+ Dual |
| Xperia Z3+ |
| Xperia Z5 |
| Xperia Z5 Compact |
| Xperia Z2 Tablet (WiFi) |
| Xperia Z2 Tablet (LTE) |
| Xperia Z2 Tablet (Verizon LTE) |
| Xperia Z3 Tablet Compact (WiFi) |
| Xperia Z3 Tablet Compact (LTE) |
| Xperia Z4 Tablet (WiFi) |
| Xperia Z4 Tablet (LTE) |

# Exhibit 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOGAN LANDES and JAMES GODDARD, individually and on behalf of all others similarly situated, <br><br>          **Plaintiffs,** <br><br>       **v.** <br><br> SONY     MOBILE     COMMUNICATIONS (U.S.A.), INC. and SONY ELECTRONICS, INC., <br><br>          **Defendants.** | Case No. 2:17-cv-2264-JFB-SIL <br><br> **[PROPOSED] ORDER, *INTER ALIA*, GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT, PROVISIONALLY CERTIFYING SETTLEMENT CLASS, DIRECTING NOTICE TO THE CLASS AND <u>SCHEDULING FAIRNESS HEARING</u>** |

WHEREAS, this matter has come before the Court pursuant to *Plaintiffs' and Defendants' Joint Motion for Entry of an Order Granting Preliminary Approval of Class Action Settlement and Issuance of Related Orders (the "Motion")*;

WHEREAS, the Court finds that it has jurisdiction over this Action and each of the parties for purposes of settlement and asserts jurisdiction over the Class Members for purposes of effectuating this settlement and releasing their claims (all capitalized terms have the meaning set forth in the Settlement Agreement, which is attached to the Joint Motion as Exhibit 2); and

WHEREAS, this Court has considered all of the submissions related to the Motion and is otherwise fully advised in the premises;

IT IS HEREBY ORDERED AS FOLLOWS:

**I.       <u>PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT</u>**

1.     The terms of the Settlement Agreement dated July 12, 2017, including all exhibits thereto (the "Settlement Agreement"), which is attached to the Motion as Exhibit 2, are preliminarily approved as fair, reasonable and adequate, are sufficient to warrant sending notice

to the Class, and are subject to further consideration thereof at the Fairness Hearing referenced below. This Preliminary Approval Order ("Order") incorporates herein the Settlement Agreement, and all of its exhibits and related documents. Unless otherwise provided herein, the terms defined in the Settlement Agreement shall have the same meanings in this Order.

2.      The Settlement Agreement was entered into only after extensive arm's length negotiations by experienced counsel. The Court finds that the settlement embodied in the Settlement Agreement ("the Settlement") is sufficiently within the range of reasonableness so that notice of the Settlement should be given as provided in the Settlement Agreement and this Order. In making this determination, the Court has considered the current posture of this litigation and the risks and benefits to the Parties involved in both settlement of these claims and continuation of the litigation.

## II.      THE CLASS, CLASS REPRESENTATIVES AND PLAINTIFFS' CLASS COUNSEL

3.      The Court provisionally certifies the following Class for settlement purposes only (the "Class"): all persons, entities or organizations who, at any time as of or before the entry of this Order, purchased, own(ed), received as a gift or received as a customer service exchange the Mobile Devices manufactured, marketed, sold and/or distributed by Sony Mobile Communications (USA), Inc. in any of the fifty States, the District of Columbia, and Puerto Rico. Excluded from the Class are: (a) any persons or entities that purchased or acquired the Mobile Devices for commercial use or resale; (b) any claims aggregators; (c) any person who claims to be an assignee of rights associated with the Mobile Products; (d) Sony Mobile Communications (USA), Inc., their officers, directors and employees; their affiliates and affiliates' officers, directors and employees; their distributors and distributors' officers, directors and employees; (e) Plaintiffs' Class Counsel; (f) judicial officers and their immediate family

members and associated court staff assigned to this case; and (g) persons or entities who or which timely and properly exclude themselves from the Class.

4.      The "Mobile Devices" are the Sony products listed in Exhibit 5 to the Settlement Agreement, which is expressly incorporated in this Order.

5.      The Court preliminarily finds, for settlement purposes only and conditioned upon the entry of this Order and the Final Order and Final Judgment, the terms of the Settlement Agreement, and the occurrence of the Final Effective Date, that the Class meets all the applicable requirements of FED. R. CIV. P. 23(a) and (b)(3), and hereby provisionally certifies the Class for settlement purposes only.   The Court preliminarily finds, in the specific context of this Settlement, that:  (a) the number of Class Members is so numerous that their joinder in one lawsuit would be impractical; (b) there are some questions of law or fact common to the Class that are sufficient for settlement purposes; (c) the claims of Class Representatives are typical of the claims of the Class Members they seek to represent for purposes of settlement; (d) the Class Representatives have fairly and adequately represented the interests of the Class for settlement purposes and the Class Representatives have retained experienced counsel to represent them and the Class – Nancy Kulesa and Shannon Hopkins of Levi & Korsinsky LLP, whom the Court finds have satisfied the requirements of FED. R. CIV. P. 23(a)(4) and 23(g); (e) the questions of law and fact common to the Class, as pertains to consideration of the Settlement, predominate over any questions affecting any individual Class Member; and (f) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy through settlement.

6.      The Court designates the following Named Plaintiffs as Class Representatives: Logan Landes and James Goddard.

7.     The Court further preliminarily finds that the following counsel fairly and adequately represent the interests of the Class for settlement purposes and hereby appoints them as counsel for the Class pursuant to FED. R. CIV. P. 23(g):

> Nancy Kulesa, Esq.
> Shannon Hopkins, Esq.
> Levi & Korsinsky LLP
> 30 Broad Street
> 24th Floor
> New York, NY 10004

8.     If the Settlement Agreement is not finally approved by the Court, or for any reason the Final Order and Final Judgment are not entered as contemplated in the Settlement Agreement, or the Settlement Agreement is terminated pursuant to its terms for any reason or the Final Effective Date does not occur for any reason, then:

(a)     All orders and findings entered in connection with the Settlement Agreement shall become null and void and have no force or effect whatsoever, shall not be used or referred to for any purposes whatsoever, and shall not be admissible or discoverable in this or any other proceeding;

(b)     The provisional certification of the Class pursuant to this Order shall be vacated automatically and the Action shall proceed as though the Class had never been certified;

(c)     Nothing contained in this Order is to be construed as a presumption, concession or admission by or against Sony or Plaintiffs of any default, liability or wrongdoing as to any facts or claims alleged or asserted in the Action, or in any action or proceeding, including but not limited to, factual or legal matters relating to any effort to certify the Action or any action as a class action;

(d)     Nothing in this Order pertaining to the Settlement Agreement, including any of the documents or statements generated or received pursuant to the claims administration process, shall be used as evidence in any further proceeding in the Action, including but not limited to motions or proceedings seeking treatment of the Action or any action as a class action;

(e)     All of the Court's prior Orders having nothing whatsoever to do with class certification or the Settlement Agreement shall, subject to this Order, remain in force and effect; and

(f)     The terms in Section X of the Settlement Agreement, relating to the

termination of the Settlement Agreement, shall survive.

### III.   NOTICE TO CLASS MEMBERS

9.      The Court has considered the Notice Program in the Settlement Agreement and finds that the notice to the Class and dissemination methodology as described in the Settlement Agreement and in the Declaration of the Settlement Notice Administrator:   (a) meet the requirements of due process and FED. R. CIV. P. 23(c) and (e); (b) constitutes the best notice practicable under the circumstances to all persons entitled to notice, and (c) satisfies the Constitutional requirements regarding notice.  In addition, the forms of notice:  (a) apprise Class Members of the pendency of the Action, the terms of the Settlement, their rights and deadlines under the Settlement; (b) are written in simple terminology; (c) are readily understandable by Class Members; and (d) comply with the Federal Judicial Center's illustrative class action notices.

10.      The Court approves the notice to the Class and dissemination methodology as described in the Settlement Agreement and in the Declaration of the Settlement Notice Administrator in all respects, and it hereby orders that notice be commenced no later than August 17, 2017.

11.      The Class Action Settlement Administrator shall send the Long Form Notice, substantially in the form attached to the Settlement Agreement as Exhibit 4, by U.S. Mail, proper postage prepaid, or by e-mail where addresses are reasonably and readily available to Sony through its own customer registration databases or other such lists as it may possess.  The mailings of the Long Form Notice to these persons and entities shall be substantially completed by September 1, 2017.

12.      The Court further approves, as to form and content, the Short Form Notice and the Long Form Notice.

5

13.     The Court further approves the establishment of an Internet website for the Settlement, which will inform Class Members of the terms of the Settlement Agreement, their rights, dates and deadlines and related information.   The website shall include documents relating to the Settlement, orders of the Court relating to the Settlement and such other information as Plaintiffs' Class Counsel and Sony's Counsel mutually agree would be beneficial to potential Class Members, including but not limited to the Long Form Notice and the Settlement Agreement.   The Court also approves the establishment of Internet banner notifications that will provide settlement-related information to Class Members in accordance with the Settlement Agreement or otherwise agreed to by the Parties.

14.     The Court further approves the establishment of a toll-free telephone number that will provide settlement-related information to Class Members using an automated response system.

15.     Sony shall pay the costs of the Notice Program in accordance with the Settlement Agreement.

16.     The Parties are hereby authorized to establish the means necessary to implement the notice and/or other terms of the Settlement Agreement.

17.     The Class Action Settlement Administrator is Heffler Claims Group. Responsibilities of the Class Action Settlement Administrator are found in the Settlement Agreement.   No later than 20 days before the date of the Fairness Hearing, the Class Action Settlement Administrator shall file with the Court:  (a) a list of those persons who have opted out or excluded themselves from the settlement; (b) the details outlining the scope, methods and results of the Notice Program for which he/she is responsible under the Settlement Agreement.

18.     The Settlement Notice Administrator is Jeanne Finegan of HF Media LLC. Responsibilities of the Settlement Notice Administrator are found in the Settlement Agreement. No later than 20 days before the date of the Fairness Hearing, the Settlement Notice Administrator shall file with the Court the details outlining the scope, methods and results of the parts of the Notice Program for which he/she is responsible under the Settlement Agreement.

## IV.     REQUEST FOR EXCLUSION FROM THE CLASS

19.     Any potential Class Member who wishes to be excluded from the Class must mail a written request for exclusion to the Class Action Settlement Administrator at the address provided in the Long Form Notice, postmarked no later than November 1, 2017.  Any request for exclusion must be signed by the potential Class Member and contain the following information: name, address, and telephone number of the Class Member; the Mobile Device's model name, approximately when and where the model was purchased, the Class Member's signature and statement that the Class Member wants to be excluded from the Class or settlement in *Landes et al. v. Sony Mobile Communications (U.S.A.), Inc., et al.,* No. 2:17-cv-2264 (E.D.N.Y.).

20.     Potential Class Members who timely and validly exclude themselves from the Class shall not be bound by the Settlement Agreement, the Settlement, or the Final Order and Final Judgment.  If a potential Class Member files a request for exclusion, he/she/it may not assert an objection to the Settlement.  The Class Action Settlement Administrator shall provide copies of any requests for exclusion to Plaintiffs' Class Counsel and Sony's Counsel as provided in the Settlement Agreement.

21.     Any potential Class Member that does not properly and timely exclude himself/herself/itself from the Class shall remain a Class Member and shall be bound by all the terms and provisions of the Settlement Agreement, the Settlement, the Final Order and Final

Judgment, whether or not such Class Member objected to the Settlement or submits a Claim Form(s).

## V.   OBJECTIONS

22.    Any Class Member who has not requested exclusion and who wishes to object to the Settlement or Attorneys' Fees, Costs and Expenses (as that term is defined in the Settlement Agreement) or incentive payments to the Named Plaintiffs/Class Representatives must deliver to Plaintiffs' Class Counsel and Sony's Counsel identified below so that it is received by November 1, 2017 and on file with the Clerk of Court on or before November 1, 2017 a written statement of his/her/its objection.

23.    To be considered by the Court, any objection must be in writing and include the following information:  (a) a heading indicating that the writing is an objection to the settlement in this Action; (b) the full name, telephone number and residential address of the objecting Class Member; (c) if represented by counsel, the full name, telephone number, and address of all counsel; (d) all of the reasons why the Class Member objects to the Settlement (including any legal or factual support); (e) a statement whether the objecting Class Member intends to appear at the Fairness Hearing, including whether he/she will on his/her own behalf or through counsel; (f) a statement that the objector is a Class Member, including the Mobile Device's model name, and approximately when and where the Mobile Device was purchased; and (g) the Class Member's dated, handwritten signature (an electronic signature or attorney's signature are not sufficient).  Any documents supporting the objection must also be attached to the objection.  If any testimony is proposed to be given in support of the objection, the names of all persons who will testify must be set forth in the objection.  Class Members may do so either on their own or through an attorney retained at their own expense.  The objection must include proof that he or

she falls within the definition of the Class.  No objection that fails to satisfy these requirements and any other requirements found in the Long Form Notice shall be considered by the Court.

24.     Any notice pursuant to this Section shall be sent to the following:

| Clerk of Court: | Class Counsel: | Sony's Counsel: |
|---|---|---|
| United States District Court<br>Eastern District of New York<br>100 Federal Plaza<br>Central Islip, NY 11722 | Nancy A. Kulesa, Esq.<br>Shannon Hopkins, Esq.<br>Levi & Korsinsky LLP<br>30 Broad Street<br>24th Floor<br>New York, NY 10004 | John P. Hooper, Esq.<br>Reed Smith LLP<br>599 Lexington Avenue<br>28th Floor<br>New York, NY 10022 |

## VI.     FAIRNESS HEARING

25.     The Fairness Hearing will be held on December 1, 2017 at 1:30 p.m. E.S.T. before this Court in courtroom 1020, at the United States District Court for the Eastern District of New York, located at 100 Federal Plaza, Central Islip, NY 11722, to consider, *inter alia*, the following:  (a) whether the Class should be finally certified for settlement purposes; (b) whether the Settlement and Settlement Agreement should be finally approved as fair, reasonable and adequate.  The Court will rule on Plaintiffs' Class Counsel's application for Attorneys' Fees, Costs and Expenses and the Plaintiffs/Class Representatives' requests for incentive awards at or after that time.

26.     On or before October 13, 2017, Plaintiffs' Class Counsel and Sony's Counsel shall file with the Court any memoranda or other materials in support of final approval of the Settlement.  On or before October 13, 2017, Plaintiffs' Class Counsel shall file any application for Attorneys' Fees, Costs and Expenses.  Any reply briefs relating to final approval of the Settlement or Plaintiffs' Class Counsel's Attorneys' Fees, Costs and Expenses or responses to objections to the Settlement shall be filed on or before November 14, 2017.

27.     Any Class Member who has not excluded himself/herself/itself from the Class may appear at the Fairness Hearing in person or by counsel (at his/her/its own expense) and may be heard, to the extent allowed by the Court, either in support of or in opposition to the Settlement and/or Plaintiffs' Class Counsel's Attorneys' Fees, Costs and Expenses.  However, no Class Member shall be heard at the Fairness Hearing unless such person/entity files a "Notice of Intent to Appear in *Landes, et al. v. Sony Mobile Communications (U.S.A.), Inc., et al.*" with the Clerk of Court on or before November 1, 2017 and delivers the same to Plaintiffs' Class Counsel and Sony's Counsel so that it is received by November 1, 2017.  In the notice, the Class Member must include:  (a) his/her/its name, address, telephone number; (b) the Mobile Device's model name, and approximately when and where the Mobile Device was purchased; and (c) the Class Member's signature.

28.     Class Members who intend to object at the Fairness Hearing must also have followed the procedures for objecting in writing as set forth in Paragraphs 22-24 of this Order.

29.     The date and time of the Fairness Hearing shall be subject to adjournment by the Court without further notice to the Class Members other than that which may be posted at the Court, on the Court's website, and/or the settlement website.

30.     Any Class Member may hire an attorney at his/her/its own expense to appear in the Action.  Such attorney shall serve a Notice of Appearance on Plaintiffs' Class Counsel and Sony's Counsel listed in Paragraph 24 above so that it is received on or before November 1, 2017 and file it with the Court on or before November 1, 2017.

## VII.     STAY OF LITIGATION

31.     Pending the Fairness Hearing and the Court's decision whether to finally approve the Settlement, all proceedings in the Action, other than proceedings necessary to carry out or

enforce the Agreement or this Order, are stayed and suspended, until further order from this Court.

32.     Pending the Fairness Hearing and the Court's decision whether to finally approve the Settlement, no Class Member, either directly, representatively, or in any other capacity (other than a Class Member who validly and timely elects to be excluded from the Class), shall commence, continue or prosecute against any of the Released Parties (as that term is defined in the Settlement Agreement) any action or proceeding in any court or tribunal asserting any of the matters, claims or causes of action that are to be released in the Settlement Agreement.  Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's continuing jurisdiction and authority over the Action.  Upon final approval of the Settlement, all Class Members who do not timely and validly exclude themselves from the Class shall be forever enjoined and barred from asserting any of the matters, claims or causes of action released pursuant to the Settlement Agreement against any of the Released Parties, and any such Class Member shall be deemed to have forever released any and all such matters, claims, and causes of action as provided for in the Settlement Agreement.

## VIII.  **CONFIDENTIALITY**

33.     Any information received by the Class Action Settlement Administrator, the Settlement Notice Administrator, or any other person in connection with the Settlement that pertains to personal information regarding a particular Class Member (other than objections or requests for exclusion) shall not be disclosed to any other person or entity other than Plaintiffs' Class Counsel, Sony, Sony's Counsel, the Court and as otherwise provided in the Settlement Agreement.

## IX.    <u>OTHER PROVISIONS</u>

34.    The Parties are authorized to take all necessary and appropriate steps to establish the means necessary to implement the Settlement Agreement.

35.    The deadlines set forth in this Order, including but not limited to adjourning the Fairness Hearing, may be extended by Order of the Court, for good cause shown, without further notice to the Class Members – except that notice of any such extensions shall be included on the settlement website.  Class Members should check the settlement website regularly for updates and further details regarding extensions of these deadlines.

36.    Plaintiffs' Class Counsel and Sony's Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the Settlement Agreement, to the form or content of the notice to the Class or to any other exhibits that the Parties jointly agree are reasonable or necessary.

37.    This Court shall maintain continuing jurisdiction over these settlement proceedings to assure the effectuation thereof for the benefit of the Class.


SO ORDERED this ____ day of _____ 2017.


_____

Hon. Joseph F. Bianco

# Exhibit 7

### Publication Notice

### If You Own or Previously Owned, Purchased, or Received as a Gift or Customer Service Exchange Certain Sony Xperia Smartphones and Tablets, You Could Get Benefits from a Class Action Settlement.

There is a proposed settlement that has been preliminarily approved by a Court in a class action lawsuit against Sony Mobile Communications (USA), Inc. and Sony Electronics, Inc. (collectively "Sony") concerning certain Xperia smartphones and tablets ("Mobile Devices"). The name of the lawsuit is *Landes, et al. v. Sony Mobile Communications (U.S.A.), Inc., et al.*, Case No. 2:17-cv-2264-JFB-SIL (E.D.N.Y.).  Those included in the settlement have legal rights and options that must be exercised by certain deadlines.

### What is the lawsuit about?

The lawsuit

 alleges that certain Mobile Devices are not waterproof and are not designed for or capable of ordinary underwater use.  Sony denies that it has violated any law, denies that it engaged in any and all wrongdoing, and denies that the Mobile Devices are defective.  The Court did not decide which side was right.  Instead, the parties decided to settle.

### Am I Included in the proposed settlement?

Subject to certain limited exclusions, you are included if as of **[date],**

- You own(ed), purchase(d), or received as a gift or as a customer service exchange a Mobile Device that was

- Manufactured, marketed, sold and/or distributed by Sony Mobile Communications (USA), Inc. in any of the fifty States, the District of Columbia and Puerto Rico.

- The class includes persons, entities and/or organizations.

The Mobile Devices are certain Xperia mobile smartphone and tablet models.  For a specific list of the included models, please go to **www.website.com** or call **1-000-000-0000.**

### What does the settlement provide?

The proposed settlement provides for: (1) a warranty extension for damage resulting from water intrusion by an additional 12 months for Mobile Devices that are still in-warranty and six months for those Mobile Devices that are out-of-warranty, both measured as of the date of the issuance of the Preliminary Approval Order; (2) changes to packaging, labeling and advertising intended for end users in the United Sates relating to "waterproof" or substantially identical terms to "water resistance" or its substantial and/or functional equivalent for Mobile Devices currently being sold by Sony or any newly-introduced models with certain IP ratings; and (3) a claim process for eligible Class Members who previously had timely claims for water-related damages

denied by Sony for their in-warranty Mobile Devices in which Sony will pay 50% of the at-issue Manufacturer's Suggested Retail Price for the applicable Mobile Device.

**What are my options?**

<u>Stay in the Class and receive settlement benefits.</u>  You can automatically receive a warranty extension and, if applicable, submit a claim, pursuant to the terms of the Settlement Agreement. The deadline to submit Claim Forms is [**60 days after the date of the Fairness Hearing**].

<u>If you do nothing</u>, you will remain in the class and receive the benefits of the settlement, but will not be able to sue Sony.

<u>You can exclude yourself by</u> [**date**]**,** if you don't want to be part of the settlement. You won't get any settlement benefits, but you keep the right to sue Sony about the issues in the lawsuit.

<u>You can object to all or part of the settlement by</u> [**date**], if you don't exclude yourself.

The full notice describes how to obtain settlement relief, exclude yourself, and object.

The Court will hold a fairness hearing on [**date**] **at** [**time**] to (a) consider whether the proposed settlement is fair, reasonable, and adequate, and (b) decide the plaintiffs' lawyers' request for fees, costs and expenses of up to $1,000,000.00 and awards for each of the Class Representatives of up to $1,000.00.  You may appear at the hearing, but you are not required to and you may hire an attorney to appear for you, at your own expense.

**For more information or a claim form [1-000-000-0000 www.website.com].**

# Exhibit 8

**STANDARD CLAIM FORM FOR PAYMENT IN**
*Landes et al. v. Sony Mobile Communications (U.S.A.), Inc., et al.*

**This form is only needed if: (1) you previously submitted a warranty claim for water intrusion for an in-warranty Mobile Device to Sony; (2) your claim was denied; (3) you are not otherwise excluded from the Class; and (4) you otherwise meet the terms and conditions specified in this Claim Form and the Settlement Agreement. You may be eligible for payment of 50% of the at-issue Manufacturer's Suggested Retail Price ("MSRP") for your Mobile Device if you are a Class Member who previously submitted a warranty claim for water intrusion for an in-warranty Mobile Device to Sony, your claim was denied by Sony and you have proof of this denial.**

You may submit only one Claim for each Mobile Device for which you are seeking payment in this class action settlement.  To determine whether you are a Class Member eligible to make a claim, or for information on the MSRP of your Mobile Device, and for other details regarding the class action settlement, please first visit *[website]*. If you still have questions regarding the claims process, *[call/email __]*.

**<u>INSTRUCTIONS FOR COMPLETING THIS CLAIM FORM AND SUBMITTING A CLAIM FOR PAYMENT</u>**

1)  You can complete the Claim Form online at www.**[website]**.com, or on paper.  Check the form carefully to make sure all of the information is correct and that you have filled in any missing information.  If you are submitting a claim for more than one Mobile Device, you can photocopy this Claim Form and attach a separate sheet containing the information requested, or, if you are submitting this Claim Form online, please check the box near the end of Section II allowing you to make a claim for more than one Mobile Device.

2)  Capitalized terms in this Claim Form have the same meaning as provided in the Settlement Agreement, which is available at *[website]*.  <u>No funds will be paid out unless and until the settlement is finally approved by the Court, including the resolution of any appeals in favor of upholding the settlement.</u>

3)  If you print this Claim Form out, type or print legibly in blue or black ink.  Do not use any highlighters.  Provide **<u>all</u>** requested information to complete and submit this Claim Form, attach supporting documentation, as specified below, and sign the Claim Form.

4)  **You must submit your completed Claim Form and any supporting documentation by mail or electronically no later than [date].  Please check the settlement website, [website], which will be periodically updated.  The completed Claim Form and any supporting documentation, can be submitted online at [website] or mailed to:**

**[Settlement Notice Administrator Address]**

1

*Important*: Keep a copy of your completed Claim Form and the supporting documents. Any documents you submit with your Claim Form will not be returned.  Do not send original documents.  If your claim is rejected for any reason, you will be notified.

**If you fail to timely and fully complete this Claim Form and submit the required supporting documentation, your Claim may be denied.  If your Claim is denied, you will not receive a cash payment for your Claim.   The Settlement Claims Administrator has the right to request verification of eligibility to participate in this settlement.**

| SECTION I – CLASS MEMBER AND MOBILE DEVICE INFORMATION |
|---|

| Name: | | |
|---|---|---|
| *Last* | *First* | *Middle Initial* |
| | | |

| *Type of Mobile Device* |
|---|
| |

| *Your Address:* |
|---|
| *Number/Street/P.O. Box No.* |
| |

| City: | | State: | Zip Code: |
|---|---|---|---|
| | | | |

| Telephone Number: | Email Address: |
|---|---|
| | |

| SECTION II –WARRANTY INFORMATION FOR PRIOR WATER INTRUSION CLAIM |
|---|

Did you previously submit a warranty claim to Sony alleging water intrusion to your in-warranty Mobile Device and Sony denied the claim?

No
Yes

**If you answered "No" to question 1, you are not eligible to submit a claim.**

If you answered "Yes," please complete the following:

| WARRANTY CLAIM SUBMISSION INFORMATION |
|---|

| Date of Submission of In-Warranty Mobile Device: | |
|---|---|
| | . |

| Name of Facility Where the Mobile Device Was Sent: |
|---|
| |

| Address, City and State of Where the Mobile Device Was Sent |
|---|

2

| |
|---|
| |
| *Description of Why the Mobile Device Was Submitted:* |
| |
| *Return of Mobile Device and Reason(s) Why It Was Returned:* |
| |
| *Other Comments/Information to Support the Claim:* |
| |

If you are completing this Claim Form online, please check this box if you are making a claim for more than one Mobile Device.

**<u>Documentation Required to Be Submitted with the Claim</u>**

You MUST attach copies of any documentation received from Sony rejecting or denying the water-intrusion claim.  Do NOT send original documents.

**If you do not attach the requested documentation, the Settlement Notice Administrator will request that you provide such documentation.  If you do not provide the requested documentation or there is no further explanation from you, your claim will be denied and you will not be eligible for a payment for your claim.**

**SECTION III – ATTESTATION**

By signing this form, you affirm that you **HAVE NOT** received a replacement device from or otherwise been paid by Sony for this claim.

I affirm under the laws of the United States of America, that the information in this Claim Form is true and correct to the best of my knowledge, information and belief.  I understand that my Claim Form may be subject to audit, verification and the Settlement Notice Administrator and Court review.

Signature _____

Date _____

3

**SECTION IV – CLAIM FORM COMPLETION AND SUBMISSION CHECKLIST**

Be sure that your completed Claim Form includes your name, current address, telephone number, contact information and the type of Mobile Device.

Provide evidence for the submission, as instructed above.

Keep a copy of your completed Claim Form (plus documentation submitted) for your records.

Sign and date your Claim Form.

Finally, your completed Claim Form and documentation must be submitted electronically no later than [DATE] or postmarked no later than [DATE].  The completed Claim Form and documentation can be submitted online at [website] or mailed to:

[Settlement Notice Administrator Address]

*****

Sony, the Settlement Claims Administrator, and/or the Settlement Notice Administrator are not responsible for any misdelivered, lost, illegible, damaged, destroyed, or otherwise not received mail or e-mail.

Claim Forms will be processed and approved in accordance with the terms of the Settlement Agreement.  Please check the settlement website, **[website]**, for updates.

# Exhibit 9

## EXHIBIT 9 – LIST OF MOBILE DEVICES

| Mobile Device Name | Manufacturer's Suggested Retail Price ("MSRP") At Issue | 50% of MSRP |
|---|---|---|
| Xperia M2 Aqua | $249.99 | $125.00 |
| Xperia M4 Aqua | $299.99 | $150.00 |
| Xperia ZR | $599.99 | $300.00 |
| Xperia Z Ultra | $499.99 | $250.00 |
| Xperia Z1 | $599.99 | $300.00 |
| Xperia Z1 Compact | $579.99 | $290.00 |
| Xperia Z1s (T-Mobile) | $529.99 | $265.00 |
| Xperia Z2 | $599.99 | $300.00 |
| Xperia Z3 | $569.99 | $285.00 |
| Xperia Z3 Compact | $469.99 | $235.00 |
| Xperia Z3 (T-Mobile) | $629.99 | $315.00 |
| Xperia Z3v (Verizon) | $499.99 | $250.00 |
| Xperia Z3 Dual | $629.99 | $315.00 |
| Xperia Z3+ Dual | $499.99 | $250.00 |
| Xperia Z3+ | $449.99 | $225.00 |
| Xperia Z5 | $599.99 | $300.00 |
| Xperia Z5 Compact | $499.99 | $250.00 |
| Xperia Z2 Tablet (WiFi) | $449.99 | $225.00 |
| Xperia Z2 Tablet (LTE) | $549.99 | $275.00 |
| Xperia Z2 Tablet (Verizon LTE) | $599.99 | $300.00 |
| Xperia Z3 Tablet Compact (WiFi) | $429.99 | $215.00 |
| Xperia Z3 Tablet Compact (LTE) | $479.99 | $240.00 |
| Xperia Z4 Tablet (WiFi) | $679.99 | $340.00 |
| Xperia Z4 Tablet (LTE) | $599.99 | $300.00 |

# Exhibit 10

**<u>Cover Letter to In-Database Class Members for Warranty Claims</u>**

[Settlement Administrator]
[Address]
[City, State ZIP Code]
[E-mail Address]

[Date]

[Class Member Name]
[Physical or E-mail Address]

Re:   <u>You Are Eligible for a Cash Payment from the Sony Xperia Class Action Settlement,
Subject to Certain Conditions</u>

Dear Eligible Class Member,

The United States District Court for the Eastern District of New York has preliminarily approved the nationwide class action settlement in *Logan Landes et al. v. Sony Mobile Communications (U.S.A.), Inc., et al.*, No. 2:17-cv-2264-JFB-SIL (E.D.N.Y.) and has authorized the mailing of this letter to you.

**Pursuant to that approval, Sony's warranty return records show that you submitted an in-warranty Mobile Device for water intrusion issues and your claim was denied by Sony. You are entitled to receive a check of 50% of the at-issue Manufacturer's Suggested Retail Price ("MSRP") for the applicable Mobile Device if you timely complete and submit the attached In-Database Claim Form by [date], do not opt out (exclude) yourself from the settlement and otherwise satisfy the other terms and conditions of the Settlement Agreement.  You may also complete and submit the In-Database Claim Form online at [website].  Once you go to the website to complete and submit the In-Database Claim Form, the In-Database Claim Form will be, where available and applicable, prepopulated with information for you, based on information in Sony's database, which may be updated by you.  No funds will be paid out unless and until the settlement is finally approved by the Court, including the resolution of any appeals in favor of upholding the settlement.**

<u>We also enclose a copy of the Long Form Notice that provides other important dates, deadlines and information.  Your legal rights are affected by this class action settlement so please read the Long Form Notice carefully</u>.

If you have any questions, you may write to us at the above-reference physical or e-mail address.  To view the MSRP of your Mobile Device or to receive further information on this settlement, please go to [website] or call [telephone number].  Thank you.

Sincerely,
Settlement Administrator

Enclosures

# Exhibit 11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **LOGAN LANDES, and JAMES GODDARD, individually and on behalf of all others similarly situated,** | **Case No. 2:17-cv-02264** |
| **Plaintiffs,** | |
| **v.** | |
| **SONY MOBILE COMMUNICATIONS (U.S.A.), INC., and SONY ELECTRONICS, INC.,** | |
| **Defendants.** | |

**DECLARATION OF JEANNE C. FINEGAN, APR**

I, JEANNE C. FINEGAN declare as follows:

# INTRODUCTION

1.  I am President and Chief Media Officer of HF Media, LLC, Inc. ("HF") a division of Heffler Claims Group LLC ("Heffler").  This Declaration is based upon my personal knowledge as well as information provided to me by my associates and staff, including information reasonably relied upon in the fields of advertising media and communications.

2.  Heffler and HF Media have been engaged by Defendants Sony Mobile Communications (U.S.A.) Inc., and Sony Electronics, Inc., with the consent of Plaintiffs, to develop and implement a proposed legal notice program (the "Notice Program") as part of the parties' proposed class action settlement. This program is highly targeted and well-designed to reach class members, employing a modern approach to notice taking into consideration direct mail, traditional, online display, social media and mobile media.

3.  This Declaration describes my experience in designing and implementing notices and notice plans, as well as my credentials to opine on the overall adequacy of the notice

effort.  This Declaration will also describe the proposed Notice Plan and address why this comprehensive proposed Notice Plan is consistent with, and indeed exceeds, other similar court-approved best notice practicable notice plans and the requirement of Fed. Civ. P. 23(c)(2)(B) and the Federal Judicial Center ("FJC") guidelines[1] for adequate notice.

4.     Combined, the direct mail, media, including print and internet banner ads and social media, is estimated to reach more than 85 percent of the target audience, i.e., those who use Sony smartphones, the affected members of the Settlement Class (the "Class Members"), with an average frequency of 4.6 times.

## QUALIFICATIONS

5.     My credentials that qualify me to provide an expert opinion include more 30 years of communications and advertising experience. I am the only Notice Expert accredited in Public Relations (APR) by the Universal Accreditation Board, a program administered by the Public Relations Society of America. Further, I have provided testimony before Congress on issues of notice.  Also, I have lectured, published and been cited extensively on various aspects of legal noticing, product recall and crisis communications and have served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the CPSC can increase the effectiveness of its product recall campaigns.

6.     I have served as an expert, directly responsible for the design and implementation of hundreds of class action notice programs, some of which are the largest and most complex programs ever implemented in both the United States and in Canada. My work includes a wide range of class actions and regulatory and consumer matters that include product liability, construction defect, antitrust, asbestos, medical pharmaceutical, human rights, civil rights, telecommunications, media, environmental, securities, banking, insurance and bankruptcy.

7.     Further, I have been at the forefront of modern notice, including plain language as noted in a RAND study[2], and importantly, integrating digital media and social media into court approved legal notice programs such as:

- *Carter v Forjas Taurus S.S., Taurus International Manufacturing*, Inc.,

---

[1] Notice Checklist and Plain Language Guide (2010) ("Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide").
2 Deborah R. Hensler et al., CLASS ACTION DILEMAS, PURSUING PUBLIC GOALS FOR PRIVATE GAIN.  RAND (2000).

Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016);

- *In re: Blue Buffalo Marketing and Sales Practices Litigation*, No. 14-md-02562-RWS (ED Mo. 2016);
- *In re: TracFone Unlimited Service Plan Litigation, No. C-13-3440 EMC (*N.D.CA 2015)*, and;*
- *In re: Skechers Toning Shoes Products Liability Litigation*, No. 3:11-MD-2308-TBR (W.D. Ky. 2012).

8.     As further reference, in evaluating the adequacy and effectiveness of my notice programs, courts have repeatedly recognized my work as an expert.  For example, in:

(a)     **Carter v Forjas Taurus S.S., Taurus International Manufacturing, Inc.,** Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016). In her Final Order and Judgment Granting Plaintiffs Motion for Final Approval of Class Action Settlement, the Honorable Patricia Seitz stated:

*"The Court considered the extensive experience of Jeanne C. Finegan and the notice program she developed. ...There is no national firearms registry and Taurus sale records do not provide names and addresses of the ultimate purchasers... Thus the form and method used for notifying Class Members of the terms of the Settlement was the best notice practicable. ...The court-approved notice plan used peer-accepted national research to identify the optimal traditional, online, mobile and social media platforms to reach the Settlement Class Members."*

9.     Additionally, in January 20, 2016, Transcript of Class Notice Hearing, p. 5 Judge Seitz, gave accolades to Ms. Finegan, noting:

*"I would like to compliment Ms. Finegan and her company because I was quite impressed with the scope and the effort of communicating with the Class."*

(b)     **In Re:  Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation**, Case No. 4:14-MD-2562 RWS (E.D. Mo. 2015), (Hearing for Final Approval, May 19, 2016 transcript p. 49).  During the Hearing for Final Approval, the Honorable Rodney Sippel said:

*"It is my finding that notice was sufficiently provided to class members in the manner directed in my preliminary approval order and that notice met all applicable requirements of due process and any other applicable law and considerations."*

(c)     **In re: Skechers Toning Shoes Products Liability Litigation, No. 3:11-MD-2308-TBR** (W.D. Ky. 2012). In his Final Order and Judgment granting the Motion for Preliminary Approval of Settlement, the Honorable Thomas B. Russell stated:

*"... The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement."*

(d)   ***Quinn v. Walgreen Co., Wal-Mart Stores Inc.,*** **7:12 CV-8187-VB** (NYSD) (Jt Hearing for Final App, March. 5, 2015, transcript page 40-41).  During the Hearing on Final Approval of Class Action, the Honorable Vincent L. Briccetti gave accolades to Ms. Finegan, noting:

*"The notice plan was the best practicable under the circumstances.  ... [and] the proof is in the pudding. ... So the notice has reached a lot of people and a lot of people have made claims."*

(e)   ***DeHoyos, et al. v. Allstate Ins. Co.,*** **No. SA-01-CA-1010** (W.D.Tx. 2001).  In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

*"[T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. ... This program was vigorous and specifically structured to reach the African-American and Hispanic class members.  Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts.  Specifically, in order to reach the identified targets directly and efficiently, the notice program utilized a multi-layered approach which included national magazines; magazines specifically appropriate to the targeted audiences; and newspapers in both English and Spanish."*

10.   Additionally, I have published extensively on various aspects of legal noticing, including the following publications and articles:

(a)   Author, "What Would Class Action Reform Mean for Notice?"  Law360, New York, (April 13, 2017 11:50 AM ET).

(b)   Author, "Bots Can Silently Steal your Due Process Notice."  Wisconsin Law Journal, April 2017.

(c)   Author, "*Don't Turn a Blind Eye to Bots*. Ad Fraud and Bots are a Reality of the Digital Environment." LinkedIn article March 6, 2107.

(d)    Co- Author, "Modern Notice Requirements Through the Lens of Eisen and Mullane" – *Bloomberg BNA Class Action Litigation Report*. 17 CLASS 1077. (October 14, 2016).

(e)   Author, "Think All Internet Impressions are the Same? Think Again" – Law360.com, New York (March 16, 2016).

(f)     Author, "Why Class Members Should See An Online Ad More Than Once" – Law360.com, New York (December 3, 2015).

(g)     Author, 'Being 'Media-Relevant' — What It Means And Why It Matters - Law360.com, New York (September 11, 2013, 2:50 PM ET).

(h)     Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Programs," ABI Journal, Vol. XXX, No 9, November 2011.

(i)     Quoted Expert, "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist," Canadian Supreme Court Law Review, (2011), 53 S.C.L.R. (2d).

(j)     Co-Author, with Hon. Dickran Tevrizian, "Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," BNA Class Action Litigation Report, 12 CLASS 464, 5/27/11.

(k)     Co-Author, with Hon. Dickran Tevrizian, "Your Insight: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape, TXLR, Vol. 26, No. 21, 5/26/2011.

(l)     Author, Five Key Considerations for a Successful International Notice Program, BNA Class Action Litigation Report, 4/9/10 Vol. 11, No. 7 p. 343.

(m)     Quoted: Technology Trends Pose Novel Notification Issues for Class Litigators, BNA Electronic Commerce and Law Report, 15, ECLR 109, 1/27/10.

(n)     Author, Legal Notice: R U ready 2 adapt?  BNA Class Action Litigation Report, Vol. 10, No. 14, 7/24/2009, pp. 702-703.

(o)     Author, On Demand Media Could Change the Future of Best Practicable Notice, BNA Class Action Litigation Report, Vol. 9, No. 7, 4/11/2008, pp. 307-310.

(p)     Quoted in, Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty, Warranty Week, February 28, 2007, available at www.warrantyweek.com/archive/ww20070228.html.

(q)     Co-Author, Approaches to Notice in State Court Class Actions, For The Defense, Vol. 45, No. 11, November, 2003.

(r)     Author, The Web Offers Near, Real-Time Cost Efficient Notice, American Bankruptcy Institute Journal, Vol. XXII, No. 5, 2003.

(s)     Author, Determining Adequate Notice in Rule 23 Actions, For The Defense, Vol. 44, No. 9, September, 2002.

(t)     Co-Author, The Electronic Nature of Legal Noticing, American Bankruptcy Institute Journal, Vol. XXI, No. 3, April, 2002.

(u)     Author, Three Important Mantras for CEO's and Risk Managers in 2002, International Risk Management Institute, irmi.com/, January, 2002.

(v)     Co-Author, Used the Bat Signal Lately, The National Law Journal, Special Litigation Section, February 19, 2001.

(w)     Author, How Much is Enough Notice, Dispute Resolution Alert, Vol. 1, No. 6, March, 2001.

(x)     Author, High-Profile Product Recalls Need More Than the Bat Signal, International Risk Management Institute, irmi.com/, July 2001.

(y)     Author, The Great Debate - How Much is Enough Legal Notice? American Bar Association -- Class Actions and Derivatives Suits Newsletter, Winter 1999.

(z)     Author, What are the best practicable methods to give notice? Georgetown University Law Center Mass Tort Litigation Institute, CLE White Paper: Dispelling the communications myth -- A notice disseminated is a notice communicated, November 1, 2001.

11.    In addition, I have lectured or presented extensively on various aspects of legal noticing.  A sample list includes the following:

a)     American Bar Association Faculty Panelist, 4th Annual Western Regional CLE Class Actions: "Big Brother, Information Privacy, and Class Actions: How Big Data and Social Media are Changing the Class Action Landscape," San Francisco, CA  June, 2017.

b)     Miami Law Class Action & Complex Litigation Forum, Faculty Panelist, "Settlement and Resolution of Class Actions." Miami. FL, December 2, 2016.

c)     The Knowledge Group, Faculty Panelist, "Class Action Settlements: Hot Topics 2016 and Beyond," Live Webcast, www.theknowledgegroup.org/,  October 2016.

d)     BA National Symposium, Faculty Panelist, "Ethical Considerations in Settling Class Actions," New Orleans, LA March 2016.

e)     SF Banking Attorney Association, Speaker, "How a Class Action Notice can Make or Break your Client's Settlement," San Francisco, CA May 2015.

Declaration of Jeanne C. Finegan, APR
Concerning Proposed Class Member Notification                                                6

f)   Perrin Class Action Conference, Faculty Panelist, "Being Media Relevant, What it Means and Why It Maters – The Social Media Evolution: Trends Challenges and Opportunities," Chicago, IL May 2015

g)   Bridgeport Continuing Ed.   Faculty Panelist, "Media Relevant in the Class Notice Context," April 2014.

h)   CASD 5th Annual Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012.

i)   Law Seminars International, Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable… What constitutes a best practicable notice? What practitioners and courts should expect in the new era of online and social media."  Chicago, IL, October 2011.

(j)   CLE International, Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011.

(k)   Consumer Attorneys of San Diego (CASD), Faculty   Panelist,   "21st   Century Class Notice and Outreach," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010.

(l)   Consumer Attorneys of San Diego (CASD), Faculty   Panelist,   "The   Future   of Notice," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2009.

(m) American Bar Association, Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements:   The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard."

(n)   American Bar Association, Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008.

(o)   Faculty Panelist, Women Lawyers Association of Los Angeles (WLALA) CLE Presentation, "The Anatomy of a Class Action."  Los Angeles, CA, February 2008.

(p)   Faculty Panelist, Practicing Law Institute (PLI) CLE Presentation, 11th Annual Consumer Financial Services Litigation.  Presentation: Class Action Settlement Structures -- "Evolving Notice Standards in the Internet Age."   New York/Boston (simulcast) March, 2006; Chicago, April, 2006; and San Francisco, May 2006.

(q) Expert Panelist, U.S. Consumer Product Safety Commission.  I was the only legal notice expert invited to participate as an expert to the Consumer Product Safety Commission to discuss ways in which the CPSC could enhance and measure the recall process.  As an expert panelist, I discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts.  Bethesda, MD, September 2003.

(r.) Expert Speaker, American Bar Association.  Presentation: "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits, Chicago, August 6, 2001.

12.   A comprehensive description of my credentials and experience that qualify me to provide expert opinions on the adequacy of class action notice programs is attached as **Exhibit A**.

## NOTICE PROGRAM SUMMARY

13.   This Notice program is designed to inform class members of the proposed class action settlement between Plaintiffs and Defendants as described in the Settlement Agreement.  In the Settlement Agreement, the class is:

14.   All persons, entities or organizations who, at any time as of or before the entry of the preliminary approval order, purchased, own(ed), received as a gift or received as a customer service exchange the Mobile Devices manufactured, marketed, sold and/or distributed by Sony Mobile Communications (USA) Inc. in any of the fifty States, the District of Columbia, and Puerto Rico.  Excluded from the Class are: (a) any persons or entities that purchased or acquired the Mobile Devices for commercial use or resale; (b) any claims aggregators; (c) any person who claims to be an assignee of rights associated with the Mobile Products; (d) Sony Mobile Communications (USA) Inc., its officers, directors and employees; its affiliates and affiliates' officers, directors and employees; its distributors and distributors' officers, directors and employees; (e) Plaintiffs' Counsel; (f) judicial officers and their immediate family members and associated court staff assigned to this case; and (g) persons or entities who or which timely and properly exclude themselves from the Class. The applicable Mobile Devices are found in the Exhibit to the Settlement Agreement.

15. The proposed Notice Program includes the following components:

- Direct mail notice by first-class U.S. mail to reasonably and readily identifiable Class Members;

- CAFA Notice to appropriate state and federal government officials;

- Publication of a short-form notice ("Publication Notice") in nationally circulated consumer magazines, with Spanish sub-headlines;

- Publication Notice in territorial newspaper in Spanish and English;

- Online display banner advertising specifically targeted to reach class members;

- A press release (U.S.1 newsline and Puerto Rico newsline);

- Social media through Facebook, Twitter and Instagram;

- An informational website (www.xperiawaterproofsettlement.com) on which the notices and other important Court documents are posted; and

- A toll-free information line 844-367-8807 members can call 24/7 for more information about the Settlement, including, but not limited to, requesting copies of the Long Form Notice or Claim Form(s).

## DIRECT NOTICE

16. Pursuant to the terms of the Settlement Agreement, Heffler shall send direct notice via U.S. mail to Class Members reasonably and readily identified by Defendants' customer databases or other such lists as Defendants may possess.

17. Prior to the mailing, all addresses will be checked against the National Change of Address ("NCOA") database, which is maintained by the United States Postal Service ("USPS").

18. Notices that are returned as non-deliverable will be re-mailed to any address indicated by the postal service in the case of an expired automatic forwarding order. Notices returned as non-deliverable, but for which a new address is not indicated by the USPS, will be further searched through a third-party vendor to obtain a more current address. If any such address is found, Notice will be re-mailed within the deadlines specified by the Court in the Preliminary Approval Order. Upon completion of these duties the Settlement Heffler will submit a complete report on the deliverable results of the direct outreach effort.

## CAFA NOTICE

19. Pursuant to the Settlement Agreement, Section IV.G. Heffler will provide notice

of the proposed Settlement under CAFA 28 U.S.C. §1715(b) to appropriate state and federal government officials.

## METHODOLOGY FOR PUBLICATION/INTERNET NOTICE

20.   To appropriately design and target the publication component of the notice program, HF Media utilized a methodology accepted by the advertising industry and embraced by courts in the United States.

21.   Accordingly, we are guided by well-established principles of communication and utilize best-in-class nationally syndicated media research data provided by GfK Mediamark Research and Intelligence, LLC,[3] and online measurement currency comScore,[4] and Telmar, among others, to provide media consumption habits and audience delivery verification of the potentially affected population.   These data resources are used by advertising agencies nationwide as the basis to select the most appropriate media to reach specific target audiences. The resulting key findings are instrumental in our selection of media channels and outlets for determining the estimated net audience reached through this legal notice program. Specifically, this research identifies which media channels are favored by the target audience (i.e., the class members).   For instance, browsing behaviors on the Internet, social media channels that are used, and which magazines class members are reading.

22.   For this program, HF Media employs the best-in-class tools and technology in order to appropriately target class members and appropriately validate audience delivery.  By utilizing media research tools such a Gfk Mediamark Research and Intelligence LLC, and comScore, we can create target audience characteristics or segments, and then select the most appropriate media and communication methods to best reach them.

23.   The fusion of data and media research technology, allows us to measure and accurately report to the Court the percentage of the target audience that will be reached by

---

[3] GfK MRI's *Survey of the American Consumer*® ("MRI") is the industry standard for magazine audience ratings in the U.S. and is used in the majority of media and marketing agencies in the country. MRI provides comprehensive reports on demographic, lifestyle, product usage and media exposure.

[4] comScore is a global Internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and Internet usage data.  comScore maintains a proprietary database of more than 2 million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing. This data includes and fuses 1st party, (website data), second party (data shared by websites for marketing purposes) and 3rd party data, tied to offline purchasing behavior.

Declaration of Jeanne C. Finegan, APR
Concerning Proposed Class Member Notification                                                10

the notice component and how many times the target audience had the opportunity to see the message. In advertising, this is commonly referred to as a "Reach and Frequency" analysis, where "Reach" refers to the estimated percentage of the unduplicated audience exposed to the campaign, and "Frequency" refers to how many times, on average, the target audience had the opportunity to see the message. The calculations are used by advertising and communications firms worldwide, and have become a critical element to help provide the basis for determining adequacy of notice in class actions.

## TARGET AUDIENCE MEDIA USE AND KEY INSIGHTS

24. Magazines are now commonly referred to as traditional media. Based on MRI data, nearly 71 percent of the target audience read one or more magazines during an average month. This audience is also very heavily online with over 88 percent using the internet over the last 30 days. Of this population, we see a reliance on social media with nearly 64 percent visiting a social site in the last 30 days.

## MAGAZINE

25. Based on the key insight data from MRI summarized above, the magazines below were selected based on the highest coverage and index[5] against the target audience characteristics. All magazine and English territorial newspaper ads will include a Spanish language sub-headline, which will direct Spanish speakers to the toll-free number and/or the official Settlement website.

26. *ESPN Magazine* is a widely distributed bi-weekly title with an estimated circulation of 2,139,323. The Publication Notice will be published once as a half-page, black and white ad.

27. *National Geographic* is published monthly, with a circulation of 3,147,721. As part of the world's largest non-profit scientific, education, and entertainment organizations, *National Geographic* reaches a national audience. The summary notice will be published once as a half-page, black and white ad.

---

[5] Index is a media metric that describes a target audience's inclination to use a given outlet. An index over 100 suggests a target population's inclination to use a medium to a greater degree than the rest of the population. For example, an index of 157 would mean that the target is 57 percent more likely than the rest of the population to use a medium.

## PUBLICATION ELEMENTS - U.S. TERRITORY PUERTO RICO

28.    The notice program also includes outreach in the U.S. Territory of Puerto Rico. Notice in Puerto Rico will include a combination of local newspaper, local internet and social media advertising geo-targeted to this region. Additionally, the press release will include distribution to news outlets (broadcast, newspaper and radio stations) in Puerto Rico.

> **The Puerto Rico El Vocero** - circulation of 229,685.
> The Publication Notice will be published once in Spanish. Additionally, dedicated online display ads will appear on the digital version of this newspaper website.
>
> **The San Juan Daily News** - circulation of 50,000.
> The Publication Notice will be published once in English. Additionally, dedicated online display ads will appear on the digital version of this newspaper website.

## PUBLICATION ELEMENTS - INTERNET

29.    Internet advertising is a particularly helpful method of providing notice in this case, given that according to MRI, over 88 percent of Sony Xperia owners are online. Here, HF Media incorporated the most cutting edge data and technology to appropriately deliver ads using Device Atlas and other data to target owners of the affected Sony phones on the sites they are currently browsing and though dedicated advertising on specific web properties. Online ads will be targeted to potential class members, *i.e.*, people who own Sony Phones (Android operating systems) at issue in this settlement. This proposed program intends to serve online ads to users based on the device they use to browse the internet or access mobile applications; for example Sony Mobile Phone users. This device-specific data is employed when an ad is requested and/or served. Once a particular device-specific characteristic (*e.g.* make/model, operating system, browser-type) is identified that matches a given campaign target, based on the users IP address or other unique identifier[6], an ad will be served.

---

[6] Device detection makes it possible to identify web-enabled devices requesting online content. This is referred to as User-Agent lookup or User-Agent parsing.  The User-Agent (UA) string is intended to identify devices requesting online content. The User-Agent tells the server what the visiting device is (among many other things) and this information can be used to determine what content to return.  Every device type, including phones, tablets, desktops, may come with its own UA that makes it possible to detect this device for any purpose.

30.   Importantly, banner advertising will appear in the United States and in Puerto Rico. Ads will be served across multiple devices including desktop and mobile devices.

31.   The Banner ads will provide information for visitors to self-identify themselves as potential Class Members, where they may "click" on the banner and then link directly to the official website for more information and where they may register online, file a claim, or seek additional information including frequently asked questions and important court deadlines and documents.

32.   Further, HF Media ads carry the *AdChoices*[7] icon, where available, as an additional layer of choice and privacy.

## SOCIAL MEDIA

33.   This outreach effort will include the following important social media platforms: Facebook, Instagram and Twitter, which will serve social media ads both in the U.S. and in Puerto Rico.

34.   Facebook targeting will include those who are Owners of Sony Phones and those who engage in content related to Sony Xperia. Further, the program will retarget[8] users who visit the settlement website. Banner ads will appear across desktop newsfeeds and mobile app. In partnership with Facebook, banner ads will appear across Instagram.

35.   Twitter is an online social networking service that enables users to send and read short 140-character messages called "tweets." It has over 400 million users, and 200+ million active users monthly. Using keyword targeting to reach Twitter users based on their search queries, recent Tweets, and Tweets they recently engaged with as well as followers of @SonyXperia[9] and similar names.

---

[7] The *AdChoices* Icon is a sign for consumer information and control for interest-based advertising (which is also referred to as "online behavioral advertising." The *AdChoices* Icon gives browsers the ability to control whether they receive interest-based advertising and from which companies.

[8] Retargeting is an online advertising tactic where advertising is targeted to consumers based on their previous Internet actions, such as visiting a website. Ads are then served to consumers as frequent reminders.

[9] The @ sign is used to call out usernames in Tweets: "Hello @twitter!" ... A username is how you're identified on Twitter, and is always preceded immediately by the @ symbol.

## PRESS RELEASE

36.   A news release will be released over PR Newswire's U.S.1 newslines and to Puerto Rico.

## MEDIA MONITORING

37.   HF Media intends to monitor various media channels for subsequent news articles and various social mentions as a result of the press release efforts.  A complete report on the results will be filed with the Court upon completion of the notice program.

## OFFICIAL SETTLEMENT WEBSITE

38.   An informational, interactive website is an important component of the Notice Program.  A website will be established at www.xperiawaterproofsettlement.com to enable potential Class Members to get information about the Settlement and obtain and/or submit a Claim Form(s).

39.   The site will be optimized for mobile visitors so that information loads on their mobile device quickly. The website will serve as a "landing page for the banner advertising," where Class Members may continue to obtain further information about the class action, their rights, download the Long Form Notice, the Claim Form(s), and related information, including the Settlement Agreement, Court Orders, and Plaintiff's Motion for Approval of Fees, Expenses, and Incentive Awards. The website address will be prominently displayed in the publication notice and is accessible 24-hours a day, 7-days a week.

## TOLL FREE INFORMATION LINE

40.   Additionally, Heffler will establish and will maintain a 24-hour toll-free telephone line (844-367-8807) where callers may obtain information about the class action.

## CONCLUSION

41.   In my opinion, the robust outreach efforts described above reflect a particularly appropriate, highly targeted and contemporary way to employ notice to this class. Through a

multi-media channel approach to notice, which employs direct notice, traditional, digital, social and mobile media, an estimated 85 percent of targeted class members will be reached by the media program, on average, 4.6 times.  In my opinion, the efforts used in this Notice Program are of the highest modern communication standards, are reasonably calculated to provide notice, and are consistent with best practicable court-approved notice programs in similar matters and the Federal Judicial Center's guidelines concerning appropriate reach.

42.   I declare under the penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.  Executed on July 7, 2017 in Tigard, Oregon.


_____
    Jeanne C. Finegan, APR

# Exhibit A



# JEANNE C. FINEGAN, APR

**BIOGRAPHY**



Jeanne Finegan, APR, is President and Chief Media Officer of HF Media, LLC. (a division of Heffler Claims Group), named by *Diversity Journal* as one of the "Top 100 Women Worth Watching," has more than 30 years of communications and advertising experience and is a distinguished legal notice and communications expert. During her tenure, she has planned and implemented over 1,000 high-profile, complex legal notice communication programs.  She is a recognized notice expert in both the United States and in Canada, with extensive international notice experience spanning more than 140 countries and over 40 languages.

Ms. Finegan has lectured, published and has been cited extensively on various aspects of legal noticing, product recall and crisis communications. She has served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the Commission can increase the effectiveness of its product recall campaigns. Further, she has planned and implemented large-scale government enforcement notice programs for the Federal Trade Commission (FTC) and the Securities and Exchange Commission (SEC).

Ms. Finegan is accredited in Public Relations (APR) by the Universal Accreditation Board, which is a program administered by the Public Relations Society of America (PRSA), and is also a recognized member of the Canadian Public Relations Society (CPRS).  She has served on examination panels for APR candidates and worked *pro bono* as a judge for prestigious PRSA awards.

Ms. Finegan has provided expert testimony before Congress on issues of notice, and expert testimony in both state and federal courts regarding notification campaigns. She has conducted numerous media audits of proposed notice programs to assess the adequacy of those programs under Fed R. Civ. P. 23(c)(2) and similar state class action statutes.

She was an early pioneer of plain language in notice (as noted in a RAND study,[1]) and continues to set the standard for modern outreach as the first notice expert to integrate social and mobile media into court approved legal notice programs.

In the course of her class action experience, courts have recognized the merits of, and admitted expert testimony based on, her scientific evaluation of the effectiveness of notice plans.  She has designed legal notices for a wide range of class actions and consumer matters that include

---

1 Deborah R. Hensler et al., CLASS ACTION DILEMAS, PURSUING PUBLIC GOALS FOR PRIVATE GAIN.  RAND (2000).

**HEFFLER Claims Group**

product liability, construction defect, antitrust, medical/pharmaceutical, human rights, civil rights, telecommunication, media, environment, government enforcement actions, securities, banking, insurance, mass tort, restructuring and product recall.

## JUDICIAL COMMENTS AND LEGAL NOTICE CASES

In evaluating the adequacy and effectiveness of Ms. Finegan's notice campaigns, courts have repeatedly recognized her excellent work.  The following excerpts provide some examples of such judicial approval.

*Carter v Forjas Taurus S.S., Taurus International Manufacturing*, Inc., Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016). In her Final Order and Judgment Granting Plaintiffs Motion for Final Approval of Class Action Settlement, the Honorable Patricia Seitz stated:

> *The Court considered the extensive experience of Jeanne C. Finegan and the notice program she developed. …There is no national firearms registry and Taurus sale records do not provide names and addresses of the ultimate purchasers… Thus the form and method used for notifying Class Members of the terms of the Settlement was the best notice practicable. …The court-approved notice plan used peer-accepted national research to identify the optimal traditional, online, mobile and social media platforms to reach the Settlement Class Members.*

Additionally, in January 20, 2016, Transcript of Class Notice Hearing, p. 5 Judge Seitz, gave accolades to Ms. Finegan, noting:

> *I would like to compliment Ms. Finegan and her company because I was quite impressed with the scope and the effort of communicating with the Class.*

*Cook et. al v. Rockwell International Corp. and the Dow Chemical Co.,* No. 90-cv-00181- KLK (D.Colo. 2017)., aka, *Rocky Flats Nuclear Weapons Plant Contamination*. In the Order Granting Final Approval, dated April 28, 2017, p.3, the Honorable John L. Kane said:

> *The Court-approved Notice Plan, which was successfully implemented by [HF Media- emphasis added] (see Doc. 2432), constituted the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice Plan that was implemented, as set forth in Declaration of Jeanne C. Finegan, APR Concerning Implementation and Adequacy of Class Member Notification (Doc. 2432), provided for individual notice to all members of the Class whose identities and addresses were identified through reasonable efforts, … and a comprehensive national publication notice program that included, inter alia, print, television, radio and internet banner advertisements. …Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court finds that the Notice Plan provided the best notice practicable to the Class.*

*Warner et al. v. Toyota Motor Sales, U.S.A. Inc., Case No 2:15-cv-02171-FMO FFMx (C.D. Cal. 2017).* In the Order Re: Final Approval of Class Action Settlement; Approval of Attorney's Fees, Costs & Service Awards, dated May 21, 2017, the Honorable Fernanedo M. Olguin stated:

> *Finegan, the court-appointed settlement notice administrator, has implemented the mutliprong notice program. …the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement. (See Dkt. 98, PAO at 25-28).*

*Michael Allagas, et al., v. BP Solar International, Inc., et al., BP Solar Panel Settlement*, Case No. 3:14-cv-00560- SI (N.D. Cal., San Francisco Div. 2016). In the Order Granting Final Approval, Dated December 22, 2016, The Honorable Susan Illston stated:

> *Class Notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and d. fully satisfied the requirements of the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.*

*In re: Skechers Toning Shoes Products Liability Litigation*, No. 3:11-MD-2308-TBR (W.D. Ky. 2012). In his Final Order and Judgment granting the Motion for Preliminary Approval of Settlement, the Honorable Thomas B. Russell stated:

> *… The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement.*

*Brody v. Merck & Co., Inc., et al,* No. 3:12-cv-04774-PGS-DEA (N.J.) (Jt Hearing for Prelim App, Sept. 27, 2012, transcript page 34). During the Hearing on Joint Application for Preliminary Approval of Class Action, the Honorable Peter G. Sheridan praised Ms. Finegan, noting:

> *Ms. Finegan did a great job in testifying as to what the class administrator will do. So, I'm certain that all the class members or as many that can be found, will be given some very adequate notice in which they can perfect their claim.*

*Quinn v. Walgreen Co., Wal-Mart Stores Inc.,* 7:12 CV-8187-VB (NYSD) (Jt Hearing for Final App, March. 5, 2015, transcript page 40-41). During the Hearing on Final Approval of Class Action, the Honorable Vincent L. Briccetti gave accolades to Ms. Finegan, noting:

*"The notice plan was the best practicable under the circumstances. ... [and] "the proof is in the pudding. This settlement has resulted in more than 45,000 claims which is 10,000 more than the Pearson case and more than 40,000 more than in a glucosamine case pending in the Southern District of California I've been advised about. So the notice has reached a lot of people and a lot of people have made claims."*

*In Re: TracFone Unlimited Service Plan Litigation, No. C-13-3440 EMC (ND Ca).* In the Final Order and Judgment Granting Class Settlement, July 2, 2015, the Honorable Edward M. Chen noted:

> *"...[D]epending on the extent of the overlap between those class members who will automatically receive a payment and those who filed claims, the total claims rate is estimated to be approximately 25-30%. This is an excellent result...*

*In Re:  Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation*, Case No. 4:14-MD-2562 RWS (E.D. Mo. 2015),  (Hearing for Final Approval, May 19, 2016 transcript p. 49). During the Hearing for Final Approval, the Honorable Rodney Sippel said:

> *It is my finding that notice was sufficiently provided to class members in the manner directed in my preliminary approval order and that notice met all applicable requirements of due process and any other applicable law and considerations.*

*DeHoyos, et al. v. Allstate Ins. Co.*, No. SA-01-CA-1010 (W.D.Tx. 2001).  In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

> *[T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. ... This program was vigorous and specifically structured to reach the African-American and Hispanic class members.  Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts.  Specifically, in order to reach the identified targets directly and efficiently, the notice program utilized a multi-layered approach which included national magazines; magazines specifically appropriate to the targeted audiences; and newspapers in both English and Spanish.*

*In re: Reebok Easytone Litigation*, No. 10-CV-11977 (D. MA. 2011).  The Honorable F. Dennis Saylor IV stated in the Final Approval Order:

> *The Court finds that the dissemination of the Class Notice, the publication of the Summary Settlement Notice, the establishment of a website containing settlement-related materials, the establishment of a toll-free telephone number, and all other notice methods set forth in the Settlement Agreement and [Ms. Finegan's] Declaration and the notice dissemination methodology implemented pursuant to the Settlement Agreement and this Court's Preliminary Approval Order... constituted the best practicable notice to Class Members under the circumstances of the Actions.*

**Bezdek v. Vibram USA and Vibram FiveFingers** LLC, No 12-10513 (D. MA) The Honorable Douglas P. Woodlock stated in the Final Memorandum and Order:

> *…[O]n independent review I find that the notice program was robust, particularly in its online presence, and implemented as directed in my Order authorizing notice. …I find that notice was given to the Settlement class members by the best means "practicable under the circumstances." Fed.R.Civ.P. 23(c)(2).*

**Gemelas v. The Dannon Company Inc.,** No. 08-cv-00236-DAP (N.D. Ohio).  In granting final approval for the settlement, the Honorable Dan A. Polster stated:

> *In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, [Ms. Finegan] caused the Class Notice to be distributed on a nationwide basis in magazines and newspapers (with circulation numbers exceeding 81 million) specifically chosen to reach Class Members. … The distribution of Class Notice constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. 1715, and any other applicable law.*

**Pashmova v. New Balance Athletic Shoes, Inc.**, 1:11-cv-10001-LTS (D. Mass.). The Honorable Leo T. Sorokin stated in the Final Approval Order:

> *The Class Notice, the Summary Settlement Notice, the web site, and all other notices in the Settlement Agreement and the Declaration of [Ms Finegan], and the notice methodology implemented pursuant to the Settlement Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Actions, the terms of the Settlement and their rights under the settlement … met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.*

**Hartless v. Clorox Company**, No. 06-CV-2705 (CAB) (S.D.Cal.).  In the Final Order Approving Settlement, the Honorable Cathy N. Bencivengo found:

> *The Class Notice advised Class members of the terms of the settlement; the Final Approval Hearing and their right to appear at such hearing; their rights to remain in or opt out of the Class and to object to the settlement; the procedures for exercising such rights; and the binding effect of this Judgment, whether favorable or unfavorable, to the Class. The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.*

*McDonough et al v. Toys 'R' Us et al,* No. 09:-cv-06151-AB (E.D. Pa.).  In the Final Order and Judgment Approving Settlement, the Honorable Anita Brody stated:

> *The Court finds that the Notice provided constituted the best notice practicable under the circumstances and constituted valid, due and sufficient notice to all persons entitled thereto.*

*In re: Pre-Filled Propane Tank Marketing & Sales Practices Litigation,* No. 4:09-md-02086-GAF (W.D. Mo.)  In granting final approval to the settlement, the Honorable Gary A. Fenner stated:

> *The notice program included individual notice to class members who could be identified by Ferrellgas, publication notices, and notices affixed to Blue Rhino propane tank cylinders sold by Ferrellgas through various retailers. ... The Court finds the notice program fully complied with Federal Rule of Civil Procedure 23 and the requirements of due process and provided to the Class the best notice practicable under the circumstances.*

*Stern v. AT&T Mobility Wireless*, No. 09-cv-1112 CAS-AGR (C.D.Cal. 2009).  In the Final Approval Order, the Honorable Christina A. Snyder stated:

> *[T]he Court finds that the Parties have fully and adequately effectuated the Notice Plan, as required by the Preliminary Approval Order, and, in fact, have achieved better results than anticipated or required by the Preliminary Approval Order.*

*In re: Processed Egg Prods. Antitrust Litig.*, MDL No. 08-md-02002 (E.D.P.A.).  In the Order Granting Final Approval of Settlement, Judge Gene E.K. Pratter stated:

> *The Notice appropriately detailed the nature of the action, the Class claims, the definition of the Class and Subclasses, the terms of the proposed settlement agreement, and the class members' right to object or request exclusion from the settlement and the timing and manner for doing so.… Accordingly, the Court determines that the notice provided to the putative Class Members constitutes adequate notice in satisfaction of the demands of Rule 23.*

*In re Polyurethane Foam Antitrust Litigation*, 10- MD-2196 (N.D. OH). In the Order Granting Final Approval of Voluntary Dismissal and Settlement of Defendant Domfoam and Others, the Honorable Jack Zouhary stated:

> *The notice program included individual notice to members of the Class who could be identified through reasonable effort, as well as extensive publication of a summary notice. The Notice constituted the most effective and best notice practicable under the circumstances of the Settlement Agreements, and constituted due and sufficient notice for all other purposes to all persons and entities entitled to receive notice.*

*Rojas v Career Education Corporation*, No. 10-cv-05260 (N.D.E.D. IL) In the Final Approval Order dated October 25, 2012, the Honorable Virgina M. Kendall stated:

> *The Court Approved notice to the Settlement Class as the best notice practicable under the circumstance including individual notice via U.S. Mail and by email to the class members whose addresses were obtained from each Class Member's wireless carrier or from a commercially reasonable reverse cell phone number look-up service, nationwide magazine publication, website publication, targeted on-line advertising, and a press release. Notice has been successfully implemented and satisfies the requirements of the Federal Rule of Civil Procedure 23 and Due Process.*

*Golloher v Todd Christopher International, Inc. DBA Vogue International (Organix)*, No. C 1206002 N.D CA. In the Final Order and Judgment Approving Settlement, the Honorable Richard Seeborg stated:

> *The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.*

*Stefanyshyn v. Consolidated Industries*, No. 79 D 01-9712-CT-59 (Tippecanoe County Sup. Ct., Ind.). In the Order Granting Final Approval of Settlement, Judge Randy Williams stated:

> *The long and short form notices provided a neutral, informative, and clear explanation of the Settlement. … The proposed notice program was properly designed, recommended, and implemented … and constitutes the "best practicable" notice of the proposed Settlement. The form and content of the notice program satisfied all applicable legal requirements. … The comprehensive class notice educated Settlement Class members about the defects in Consolidated furnaces and warned them that the continued use of their furnaces created a risk of fire and/or carbon monoxide. This alone provided substantial value.*

*McGee v. Continental Tire North America, Inc. et al*, No. 06-6234-(GEB) (D.N.J.).

> *The Class Notice, the Summary Settlement Notice, the web site, the toll-free telephone number, and all other notices in the Agreement, and the notice methodology implemented pursuant to the Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the settlement and their rights under the settlement, including, but not limited to, their right to object to or exclude themselves from the proposed settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notification; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 20 U.S.C. Sec. 1715,*

**HEFFLER CLAIMS**
Group

*and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices,*

***Varacallo, et al. v. Massachusetts Mutual Life Insurance Company, et al***., No. 04-2702 (JLL) (D.N.J.).  The Court stated that:

> [A]*ll of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices. … By working with a nationally syndicated media research firm, [Finegan's firm] was able to define a target audience for the MassMutual Class Members, which provided a valid basis for determining the magazine and newspaper preferences of the Class Members.  (Preliminary Approval Order at p. 9).  . . .  The Court agrees with Class Counsel that this was more than adequate.  (Id. at § 5.2).*

***In re: Nortel Network Corp., Sec. Litig.***, No. 01-CV-1855 (RMB) Master File No. 05 MD 1659 (LAP) (S.D.N.Y.).  Ms. Finegan designed and implemented the extensive United States and Canadian notice programs in this case.  The Canadian program was published in both French and English, and targeted virtually all investors of stock in Canada.  *See* www.nortelsecuritieslitigation.com.  Of the U.S. notice program, the Honorable Loretta A. Preska stated:

> *The form and method of notifying the U.S. Global Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement … constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

Regarding the B.C. Canadian Notice effort: *Jeffry v. Nortel Networks*, [2007] BCSC 69 at para. 50, the Honourable Mr. Justice Groberman said:

> *The efforts to give notice to potential class members in this case have been thorough. There has been a broad media campaign to publicize the proposed settlement and the court processes.  There has also been a direct mail campaign directed at probable investors.  I am advised that over 1.2 million claim packages were mailed to persons around the world.  In addition, packages have been available through the worldwide web site* nortelsecuritieslitigation.com *on the Internet.  Toll-free telephone lines have been set up, and it appears that class counsel and the Claims Administrator have received innumerable calls from potential class members. In short, all reasonable efforts have been made to ensure that potential members of the class have had notice of the proposal and a reasonable opportunity was provided for class members to register their objections, or seek exclusion from the settlement.*

***Mayo v. Walmart Stores and Sam's Club***, No. 5:06 CV-93-R (W.D.Ky.).  In the Order Granting Final Approval of Settlement, Judge Thomas B. Russell stated:

*According to defendants' database, the Notice was estimated to have reached over 90% of the Settlement Class Members through direct mail. The Settlement Administrator … has classified the parties' database as 'one of the most reliable and comprehensive databases [she] has worked with for the purposes of legal notice.'… The Court thus reaffirms its findings and conclusions in the Preliminary Approval Order that the form of the Notice and manner of giving notice satisfy the requirements of Fed. R. Civ. P. 23 and affords due process to the Settlement Class Members.*

*Fishbein v. All Market Inc*., (d/b/a **Vita Coco**) No. 11-cv-05580  (S.D.N.Y.).  In granting final approval of the settlement, the Honorable J. Paul Oetken stated:

*"The Court finds that the dissemination of Class Notice pursuant to the Notice Program…constituted the best practicable notice to Settlement Class Members under the circumstances of this Litigation … and was reasonable and constituted due, adequate and sufficient notice to all persons entitled to such notice, and fully satisfied the requirements of the Federal Rules of Civil Procedure, including Rules 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable laws."*

*Lucas, et al. v. Kmart Corp*., No. 99-cv-01923 (D.Colo.), wherein the Court recognized Jeanne Finegan as an expert in the design of notice programs, and stated:

*The Court finds that the efforts of the parties and the proposed Claims Administrator in this respect go above and beyond the "reasonable efforts" required for identifying individual class members under F.R.C.P. 23(c)(2)(B).*

*In re: Johns-Manville Corp.* **(Statutory Direct Action Settlement, Common Law Direct Action and Hawaii Settlement)**, No 82-11656, 57, 660, 661, 665-73, 75 and 76 (BRL) (Bankr. S.D.N.Y.). The nearly half-billion dollar settlement incorporated three separate notification programs, which targeted all persons who had asbestos claims whether asserted or unasserted, against the Travelers Indemnity Company.  In the Findings of Fact and Conclusions of a Clarifying Order Approving the Settlements, slip op. at 47-48 (Aug. 17, 2004), the Honorable Burton R. Lifland, Chief Justice, stated:

*As demonstrated by Findings of Fact (citation omitted), the Statutory Direct Action Settlement notice program was reasonably calculated under all circumstances to apprise the affected individuals of the proceedings and actions taken involving their interests, Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), such program did apprise the overwhelming majority of potentially affected claimants and far exceeded the minimum notice required. . . . The results simply speak for themselves.*

*Pigford v. Glickman and U.S. Department of Agriculture*, No. 97-1978. 98-1693 (PLF) (D.D.C.). This matter was the largest civil rights case to settle in the United States in over 40 years. The highly publicized, nationwide paid media program was designed to alert all present and past African-American farmers of the opportunity to recover monetary damages against the U.S. Department of Agriculture for alleged loan discrimination.  In his Opinion, the Honorable Paul L. Friedman commended the parties with respect to the notice program, stating;

> *The parties also exerted extraordinary efforts to reach class members through a massive advertising campaign in general and African American targeted publications and television stations. . . . The Court concludes that class members have received more than adequate notice and have had sufficient opportunity to be heard on the fairness of the proposed Consent Decree.*

*In re: Louisiana-Pacific Inner-Seal Siding Litig.*, Nos. 879-JE, and 1453-JE (D.Or.).  Under the terms of the Settlement, three separate notice programs were to be implemented at three-year intervals over a period of six years.  In the first notice campaign, Ms. Finegan implemented the print advertising and Internet components of the Notice program.  In approving the legal notice communication plan, the Honorable Robert E. Jones stated:

> *The notice given to the members of the Class fully and accurately informed the Class members of all material elements of the settlement…[through] a broad and extensive multi-media notice campaign.*

Additionally, with regard to the third-year notice program for Louisiana-Pacific, the Honorable Richard Unis, Special Master, commented that the notice was:

> *…well formulated to conform to the definition set by the court as adequate and reasonable notice.  Indeed, I believe the record should also reflect the Court's appreciation to Ms. Finegan for all the work she's done, ensuring that noticing was done correctly and professionally, while paying careful attention to overall costs.  Her understanding of various notice requirements under Fed. R. Civ. P. 23, helped to insure that the notice given in this case was consistent with the highest standards of compliance with Rule 23(d)(2).*

*In re: Expedia Hotel Taxes and Fees Litigation*, No. 05-2-02060-1 (SEA) (Sup. Ct. of Wash. in and for King County).  In the Order Granting Final Approval of Class Action Settlement, Judge Monica Benton stated:

> *The Notice of the Settlement given to the Class … was the best notice practicable under the circumstances.  All of these forms of Notice directed Class Members to a Settlement Website providing key Settlement documents including instructions on how Class Members could exclude themselves from the Class, and how they could object to or comment upon the Settlement.  The Notice provided due and adequate notice of these proceeding and of the matters set forth in the Agreement to all persons entitled*

*to such notice, and said notice fully satisfied the requirements of CR 23 and due process.*

***Thomas A. Foster and Linda E. Foster v. ABTco Siding Litigation***, No. 95-151-M (Cir. Ct., Choctaw County, Ala.).  This litigation focused on past and present owners of structures sided with Abitibi-Price siding.  The notice program that Ms. Finegan designed and implemented was national in scope and received the following praise from the Honorable J. Lee McPhearson:

> *The Court finds that the Notice Program conducted by the Parties provided individual notice to all known Class Members and all Class Members who could be identified through reasonable efforts and constitutes the best notice practicable under the circumstances of this Action.  This finding is based on the overwhelming evidence of the adequacy of the notice program.  … The media campaign involved broad national notice through television and print media, regional and local newspapers, and the Internet (see id. ¶¶9-11) The result: over 90 percent of Abitibi and ABTco owners are estimated to have been reached by the direct media and direct mail campaign.*

***Wilson v. Massachusetts Mut. Life Ins. Co.***, No. D-101-CV 98-02814 (First Judicial Dist. Ct., County of Santa Fe, N.M.). This was a nationwide notification program that included all persons in the United States who owned, or had owned, a life or disability insurance policy with Massachusetts Mutual Life Insurance Company and had paid additional charges when paying their premium on an installment basis. The class was estimated to exceed 1.6 million individuals. www.insuranceclassclaims.com.  In granting preliminary approval to the settlement, the Honorable Art Encinias found:

> *[T]he Notice Plan [is] the best practicable notice that is reasonably calculated, under the circumstances of the action.  …[and] meets or exceeds all applicable requirements of the law, including Rule 1-023(C)(2) and (3) and 1-023(E), NMRA 2001, and the requirements of federal and/or state constitutional due process and any other applicable law.*

***Sparks v. AT&T Corp.***, No. 96-LM-983 (Third Judicial Cir., Madison County, Ill.). The litigation concerned all persons in the United States who leased certain AT&T telephones during the 1980's. Ms. Finegan designed and implemented a nationwide media program designed to target all persons who may have leased telephones during this time period, a class that included a large percentage of the entire population of the United States.
In granting final approval to the settlement, the Court found:

> *The Court further finds that the notice of the proposed settlement was sufficient and furnished Class Members with the information they needed to evaluate whether to participate in or opt out of the proposed settlement. The Court therefore concludes that the notice of the proposed settlement met all requirements required by law, including all Constitutional requirements.*

*In re: Georgia-Pacific Toxic Explosion Litig.*, No. 98 CVC05-3535 (Ct. of Common Pleas, Franklin County, Ohio).  Ms. Finegan designed and implemented a regional notice program that included network affiliate television, radio and newspaper.  The notice was designed to alert adults living near a Georgia-Pacific plant that they had been exposed to an air-born toxic plume and their rights under the terms of the class action settlement.  In the Order and Judgment finally approving the settlement, the Honorable Jennifer L. Bunner stated:

> *[N]otice of the settlement to the Class was the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The Court finds that such effort exceeded even reasonable effort and that the Notice complies with the requirements of Civ. R. 23(C).*

*In re: American Cyanamid*, No. CV-97-0581-BH-M (S.D.Al.).  The media program targeted Farmers who had purchased crop protection chemicals manufactured by American Cyanamid.  In the Final Order and Judgment, the Honorable Charles R. Butler Jr. wrote:

> *The Court finds that the form and method of notice used to notify the Temporary Settlement Class of the Settlement satisfied the requirements of Fed. R. Civ. P. 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all potential members of the Temporary Class Settlement.*

*In re: First Alert Smoke Alarm Litig.*, No. CV-98-C-1546-W (UWC) (N.D.Al.).  Ms. Finegan designed and implemented a nationwide legal notice and public information program.  The public information program ran over a two-year period to inform those with smoke alarms of the performance characteristics between photoelectric and ionization detection.  The media program included network and cable television, magazine and specialty trade publications.  In the Findings and Order Preliminarily Certifying the Class for Settlement Purposes, Preliminarily Approving Class Settlement, Appointing Class Counsel, Directing Issuance of Notice to the Class, and Scheduling a Fairness Hearing, the Honorable C.W. Clemon wrote that the notice plan:

> *…constitutes due, adequate and sufficient notice to all Class Members; and (v) meets or exceeds all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Alabama State Constitution, the Rules of the Court, and any other applicable law.*

*In re: James Hardie Roofing Litig.*, No. 00-2-17945-65SEA (Sup. Ct. of Wash., King County). The nationwide legal notice program included advertising on television, in print and on the Internet.  The program was designed to reach all persons who own any structure with JHBP roofing products.  In the Final Order and Judgment, the Honorable Steven Scott stated:

> *The notice program required by the Preliminary Order has been fully carried out… [and was] extensive.  The notice provided fully and accurately informed the Class Members of all material elements of the proposed Settlement and their opportunity to*

*participate in or be excluded from it; was the best notice practicable under the circumstances; was valid, due and sufficient notice to all Class Members; and complied fully with Civ. R. 23, the United States Constitution, due process, and other applicable law.*

***Barden v. Hurd Millwork Co. Inc., et al,*** No. 2:6-cv-00046 (LA) (E.D.Wis.) (*"**The Court approves, as to form and content, the notice plan and finds that such notice is the best practicable under the circumstances under Federal Rule of Civil Procedure 23(c)(2)(B) and constitutes notice in a reasonable manner under Rule 23(e)(1).**"*)

***Altieri v. Reebok***, No. 4:10-cv-11977 (FDS) (D.C.Mass.) (*"**The Court finds that the notices … constitute the best practicable notice... The Court further finds that all of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices.**"*)

***Marenco v. Visa Inc.,*** No. CV 10-08022 (DMG) (C.D.Cal.) (*"**[T]he Court finds that the notice plan…meets the requirements of due process, California law, and other applicable precedent. The Court finds that the proposed notice program is designed to provide the Class with the best notice practicable, under the circumstances of this action, of the pendency of this litigation and of the proposed Settlement's terms, conditions, and procedures, and shall constitute due and sufficient notice to all persons entitled thereto under California law, the United States Constitution, and any other applicable law.**"*)

***Palmer v. Sprint Solutions, Inc.,*** No. 09-cv-01211 (JLR) (W.D.Wa.) (*"**The means of notice were reasonable and constitute due, adequate, and sufficient notice to all persons entitled to be provide3d with notice.**"*)

***In re: Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litigation***, No. 1:08-md-01982 RDB (D. Md. N. Div.) (*"**The notice, in form, method, and content, fully complied with the requirements of Rule 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons entitled to notice of the settlement."*)

***Sager v. Inamed Corp. and McGhan Medical Breast Implant Litigation***, No. 01043771 (Sup. Ct. Cal., County of Santa Barbara) (*"**Notice provided was the best practicable under the circumstances."*)*.

***Deke, et al. v. Cardservice Internat'l,*** Case No. BC 271679, slip op. at 3 (Sup. Ct. Cal., County of Los Angeles) (*"**The Class Notice satisfied the requirements of California Rules of Court 1856 and 1859 and due process and constituted the best notice practicable under the circumstances."*)*.

***Levine, et al. v. Dr. Philip C. McGraw, et al***., Case No. BC 312830 (Los Angeles County Super. Ct., Cal.) (*"**[T]he plan for notice to the Settlement Class … constitutes the best notice*

*practicable under the circumstances and constituted due and sufficient notice to the members of the Settlement Class … and satisfies the requirements of California law and federal due process of law."*).

***In re: Canadian Air Cargo Shipping Class Actions***,   Court File No. 50389CP, Ontario Superior Court of Justice, Supreme Court of British Columbia, Quebec Superior Court (*"I am satisfied the proposed form of notice meets the requirements of s. 17(6) of the CPA  and the proposed method of notice is appropriate."*).

***Fischer et al v. IG Investment Management, Ltd. et al***, Court File No. 06-CV-307599CP, Ontario Superior Court of Justice.

***In re: Vivendi Universal, S.A. Securities Litigation***, No. 02-cv-5571 (RJH)(HBP) (S.D.N.Y.).

***In re: Air Cargo Shipping Services Antitrust Litigation***, No. 06-MD-1775 (JG) (VV) (E.D.N.Y.).

***Berger, et al., v. Property ID Corporation, et al.***, No. CV 05-5373-GHK (CWx) (C.D.Cal.).

***Lozano v. AT&T Mobility Wireless***, No. 02-cv-0090 CAS (AJWx) (C.D.Cal.).

***Howard A. Engle, M.D., et al., v. R.J. Reynolds Tobacco Co., Philip Morris, Inc., Brown & Williamson Tobacco Corp.,*** No. 94-08273 CA (22) (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

***In re: Royal Dutch/Shell Transport Securities Litigation,*** No. 04 Civ. 374 (JAP) (Consolidated Cases) (D. N.J.).

***In re: Epson Cartridge Cases, Judicial Council Coordination Proceeding***, No. 4347 (Sup. Ct. of Cal., County of Los Angeles).

***UAW v. General Motors Corporation***, No: 05-73991 (E.D.MI).

***Wicon, Inc. v. Cardservice Intern'l, Inc.***, BC 320215 (Sup. Ct. of Cal., County of Los Angeles).

***In re: SmithKline Beecham Clinical Billing Litig.***, No. CV. No. 97-L-1230 (Third Judicial Cir., Madison County, Ill.).  Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning billings for clinical laboratory testing services.

***MacGregor v. Schering-Plough Corp.,*** No. EC248041 (Sup. Ct. Cal., County of Los Angeles).  This nationwide notification program was designed to reach all persons who had purchased or used an aerosol inhaler manufactured by Schering-Plough.  Because no mailing list was available, notice was accomplished entirely through the media program.

*In re: Swiss Banks Holocaust Victim Asset Litig.*, No. CV-96-4849 (E.D.N.Y.).  Ms. Finegan managed the design and implementation of the Internet site on this historic case.  The site was developed in 21 native languages.  It is a highly secure data gathering tool and information hub, central to the global outreach program of Holocaust survivors. www.swissbankclaims.com.

*In re: Exxon Valdez Oil Spill Litig.*, No. A89-095-CV (HRH) (Consolidated) (D. Alaska).  Ms. Finegan designed and implemented two media campaigns to notify native Alaskan residents, trade workers, fisherman, and others impacted by the oil spill of the litigation and their rights under the settlement terms.

*In re: Johns-Manville Phenolic Foam Litig.*, No. CV 96-10069 (D. Mass).  The nationwide multi-media legal notice program was designed to reach all Persons who owned any structure, including an industrial building, commercial building, school, condominium, apartment house, home, garage or other type of structure located in the United States or its territories, in which Johns-Manville PFRI was installed, in whole or in part, on top of a metal roof deck.

*Bristow v Fleetwood Enters Litig.*, No Civ 00-0082-S-EJL (D. Id).  Ms. Finegan designed and implemented a legal notice campaign targeting present and former employees of Fleetwood Enterprises, Inc., or its subsidiaries who worked as hourly production workers at Fleetwood's housing, travel trailer, or motor home manufacturing plants. The comprehensive notice campaign included print, radio and television advertising.

*In re: New Orleans Tank Car Leakage Fire Litig.*, No 87-16374 (Civil Dist. Ct., Parish of Orleans, LA) (2000). This case resulted in one of the largest settlements in U.S. history.  This campaign consisted of a media relations and paid advertising program to notify individuals of their rights under the terms of the settlement.

*Garria Spencer v. Shell Oil Co.*, No. CV 94-074(Dist. Ct., Harris County, Tex.).  The nationwide notification program was designed to reach individuals who owned real property or structures in the United States, which contained polybutylene plumbing with acetyl insert or metal insert fittings.

*In re: Hurd Millwork Heat Mirror™ Litig.*, No. CV-772488 (Sup. Ct. of Cal., County of Santa Clara).  This nationwide multi-media notice program was designed to reach class members with failed heat mirror seals on windows and doors, and alert them as to the actions that they needed to take to receive enhanced warranties or window and door replacement.

*Laborers Dist. Counsel of Alabama Health and Welfare Fund v. Clinical Lab. Servs., Inc*, No. CV–97-C-629-W (N.D. Ala.). Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning alleged billing discrepancies for clinical laboratory testing services.

*In re: StarLink Corn Prods. Liab. Litig.*, No. 01-C-1181 (N.D. Ill)..  Ms. Finegan designed and implemented a nationwide notification program designed to alert potential class members of the terms of the settlement.

*In re: MCI Non-Subscriber Rate Payers Litig.*, MDL Docket No. 1275, 3:99-cv-01275 (S.D.Ill.). The advertising and media notice program, found to be "more than adequate" by the Court, was designed with the understanding that the litigation affected all persons or entities who were customers of record for telephone lines presubscribed to MCI/World Com, and were charged the higher non-subscriber rates and surcharges for direct-dialed long distance calls placed on those lines. www.rateclaims.com.

*In re: Albertson's Back Pay Litig.*, No. 97-0159-S-BLW (D.Id.).  Ms. Finegan designed and developed a secure Internet site, where claimants could seek case information confidentially.

*In re: Georgia Pacific Hardboard Siding Recovering Program*, No. CV-95-3330-RG (Cir. Ct., Mobile County, Ala.).  Ms. Finegan designed and implemented a multi-media legal notice program, which was designed to reach class members with failed G-P siding and alert them of the pending matter. Notice was provided through advertisements, which aired on national cable networks, magazines of nationwide distribution, local newspaper, press releases and trade magazines.

*In re: Diet Drugs* **(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig**., Nos. 1203, 99-20593.  Ms. Finegan worked as a consultant to the National Diet Drug Settlement Committee on notification issues.   The resulting notice program was described and complimented at length in the Court's Memorandum and Pretrial Order 1415, approving the settlement,

*In re: Diet Drugs* **(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig**., 2000 WL 1222042, Nos. 1203, 99-20593 (E.D.Pa. Aug. 28, 2002).

Ms. Finegan designed the Notice programs for multiple state antitrust cases filed against the Microsoft Corporation.  In those cases, it was generally alleged that Microsoft unlawfully used anticompetitive means to maintain a monopoly in markets for certain software, and that as a result, it overcharged consumers who licensed its MS-DOS, Windows, Word, Excel and Office software. The multiple legal notice programs designed by Jeanne Finegan and listed below targeted both individual users and business users of this software.  The scientifically designed notice programs took into consideration both media usage habits and demographic characteristics of the targeted class members.

*In re: Florida Microsoft Antitrust Litig. Settlement*, No.  99-27340 CA 11 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Montana Microsoft Antitrust Litig. Settlement*, No. DCV 2000 219 (First Judicial Dist. Ct., Lewis & Clark Co., Mt.).

***In re: South Dakota Microsoft Antitrust Litig. Settlement***, No. 00-235(Sixth Judicial Cir., County of Hughes, S.D.).

***In re: Kansas Microsoft Antitrust Litig. Settlement***, No. 99C17089 Division No. 15 Consolidated Cases (Dist. Ct., Johnson County, Kan.) ("The Class Notice provided was the best notice practicable under the circumstances and fully complied in all respects with the requirements of due process and of the Kansas State. Annot. §60-22.3.").

***In re: North Carolina Microsoft Antitrust Litig. Settlement***, No. 00-CvS-4073 (Wake) 00-CvS-1246 (Lincoln) (General Court of Justice Sup. Ct., Wake and Lincoln Counties, N.C.).

***In re: ABS II Pipes Litig.***, No. 3126 (Sup. Ct. of Cal., Contra Costa County). The Court approved regional notification program designed to alert those individuals who owned structures with the pipe that they were eligible to recover the cost of replacing the pipe.

***In re: Avenue A Inc. Internet Privacy Litig.***, No: C00-1964C (W.D. Wash.).

***In re: Lorazepam and Clorazepate Antitrust Litig.***, No. 1290 (TFH) (D.C.C.).

***In re: Providian Fin. Corp. ERISA Litig.***, No C-01-5027 (N.D. Cal.).

***In re: H & R Block., et al Tax Refund Litig.***, No. 97195023/CC4111 (MD Cir. Ct., Baltimore City).

***In re: American Premier Underwriters, Inc, U.S. Railroad Vest Corp.***, No. 06C01-9912 (Cir. Ct., Boone County, Ind.).

***In re: Sprint Corp. Optical Fiber Litig.***, No: 9907 CV 284 (Dist. Ct., Leavenworth County, Kan).

***In re: Shelter Mutual Ins. Co. Litig.***, No. CJ-2002-263 (Dist.Ct., Canadian County. Ok).

***In re: Conseco, Inc. Sec. Litig.***, No: IP-00-0585-C Y/S CA (S.D. Ind.).

***In re: Nat'l Treasury Employees Union, et al.***, 54 Fed. Cl. 791 (2002).

***In re: City of Miami Parking Litig.***, Nos. 99-21456 CA-10, 99-23765 – CA-10 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

***In re: Prime Co. Incorporated D/B/A/ Prime Co. Personal Comm.***, No. L 1:01CV658 (E.D. Tx.).

***Alsea Veneer v. State of Oregon A.A***., No. 88C-11289-88C-11300.

**HEFFLER CLAIMS**
Group

**INTERNATIONAL EXPERIENCE**

*Bell v. Canadian Imperial Bank of Commerce*, et al, Court File No.: CV-08-359335 (Ontario Superior Court of Justice); (2016).

*In re: Canadian Air Cargo Shipping Class Actions* (Ontario Superior Court of Justice, Court File No. 50389CP, Supreme Court of British Columbia.

*In re: Canadian Air Cargo Shipping Class Actions*  Québec Superior Court).

*Fischer v. IG Investment Management LTD.*, No. 06-CV-307599CP (Ontario Superior Court of Justice).

*In Re Nortel I & II Securities Litigation*, Civil Action No. 01-CV-1855 (RMB), Master File No. 05 MD 1659 (LAP) (S.D.N.Y. 2006).

*Frohlinger v. Nortel Networks Corporation* et al., Court File No.: 02-CL-4605 (Ontario Superior Court of Justice).

*Association de Protection des Épargnants et Investissuers du Québec v. Corporation Nortel Networks*, No.: 500-06-0002316-017 (Superior Court of Québec).

*Jeffery v. Nortel Networks Corporation* et al., Court File No.: S015159 (Supreme Court of British Columbia).

*Gallardi v. Nortel Networks Corporation*, No. 05-CV-285606CP (Ontario Superior Court).

*Skarstedt v. Corporation Nortel Networks*, No. 500-06-000277-059 (Superior Court of Québec).


**SEC ENFORCEMENT NOTICE PROGRAM EXPERIENCE**

*SEC v. Vivendi Universal, S.A., et al.,* Case No. 02 Civ. 5571 (RJH) (HBP) (S.D.N.Y.).
The Notice program included publication in 11 different countries and eight different languages.

*SEC v. Royal Dutch Petroleum Company*, No.04-3359 (S.D. Tex.)

**FEDERAL TRADE COMMISSION NOTICE PROGRAM EXPERIENCE**

*FTC v. TracFone Wireless, Inc.,* Case No. 15-cv-00392-EMC.

*FTC v. Skechers U.S.A., Inc.,* No. 1:12-cv-01214-JG (N.D. Ohio).

*FTC  v. Reebok International Ltd.*,  No. 11-cv-02046 (N.D. Ohio)

*FTC v. Chanery and RTC Research and Development LLC [Nutraquest]*, No :05-cv-03460 (D.N.J.)

**BANKRUPTCY EXPERIENCE**

Ms. Finegan has designed and implemented hundreds of domestic and international bankruptcy notice programs.  A sample case list includes the following:

*In re AMR Corporation [American Airlines], et al.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y.) *("due and proper notice [was] provided, and … no other or further notice need be provided.")*

*In re Jackson Hewitt Tax Service Inc.*, et al., No 11-11587 (Bankr. D.Del.) (2011). The debtors sought to provide notice of their filing as well as the hearing to approve their disclosure statement and confirm their plan to a large group of current and former customers, many of whom current and viable addresses promised to be a difficult (if not impossible) and costly undertaking. The court approved a publication notice program designed and implemented by Finegan and the administrator, that included more than 350 local newspaper and television websites, two national online networks (24/7 Real Media, Inc. and Microsoft Media Network), a website notice linked to a press release and notice on eight major websites, including CNN and Yahoo. These online efforts supplemented the print publication and direct-mail notice provided to known claimants and their attorneys, as well as to the state attorneys general of all 50 states. The *Jackson Hewitt* notice program constituted one of the first large chapter 11 cases to incorporate online advertising.

*In re: Nutraquest Inc.*, No. 03-44147 (Bankr. D.N.J.)

*In re: General Motors Corp. et al*, No. 09-50026 (Bankr. S.D.N.Y.).  This case is the 4th largest bankruptcy in U.S. history.   Ms. Finegan and her team worked with General Motors restructuring attorneys to design and implement the legal notice program.

*In re: ACandS, Inc.,* No. 0212687 (Bankr. D.Del.) (2007) (*"Adequate notice of the Motion and of the hearing on the Motion was given."*).

*In re: United Airlines*, No. 02-B-48191 (Bankr. N.D Ill.).  Ms. Finegan worked with United and its restructuring attorneys to design and implement global legal notice programs.  The notice was published in 11 countries and translated into 6 languages. Ms. Finegan worked closely with

legal counsel and UAL's advertising team to select the appropriate media and to negotiate the most favorable advertising rates. www.pd-ual.com.

*In re: Enron*, No. 01-16034 (Bankr. S.D.N.Y.).  Ms. Finegan worked with Enron and its restructuring attorneys to publish various legal notices.

*In re: Dow Corning,* No. 95-20512 (Bankr. E.D. Mich.).  Ms. Finegan originally designed the information website.  This Internet site is a major information hub that has various forms in 15 languages.

*In re: Harnischfeger Inds.,* No. 99-2171 (RJW) Jointly Administered (Bankr. D. Del.).  Ms. Finegan designed and implemented 6 domestic and international notice programs for this case. The notice was translated into 14 different languages and published in 16 countries.

*In re: Keene Corp.,* No. 93B 46090 (SMB), (Bankr. E.D. MO.).  Ms. Finegan designed and implemented multiple domestic bankruptcy notice programs including notice on the plan of reorganization directed to all creditors and all Class 4 asbestos-related claimants and counsel.

*In re: Lamonts,* No. 00-00045 (Bankr. W.D. Wash.).  Ms. Finegan designed an implemented multiple bankruptcy notice programs.

*In re: Monet Group Holdings,* Nos. 00-1936 (MFW) (Bankr. D. Del.).  Ms. Finegan designed and implemented a bar date notice.

*In re: Laclede Steel Co.,* No. 98-53121-399 (Bankr. E.D. MO.).  Ms. Finegan designed and implemented multiple bankruptcy notice programs.

*In re: Columbia Gas Transmission Corp.,* No. 91-804 (Bankr. S.D.N.Y.).  Ms. Finegan developed multiple nationwide legal notice notification programs for this case.

*In re: U.S.H. Corp. of New York, et al*. (Bankr. S.D.N.Y.)  Ms. Finegan designed and implemented a bar date advertising notification campaign.

*In re: Best Prods. Co., Inc.,* No. 96-35267-T, (Bankr. E.D. Va.). Ms. Finegan implemented a national legal notice program that included multiple advertising campaigns for notice of sale, bar date, disclosure and plan confirmation.

*In re: Lodgian, Inc., et al.,* No. 16345 (BRL) Factory Card Outlet – 99-685 (JCA), 99-686 (JCA) (Bankr. S.D.N.Y).

*In re: Internat'l Total Servs, Inc., et al.,* Nos. 01-21812, 01-21818, 01-21820, 01-21882, 01-21824, 01-21826, 01-21827 (CD) Under Case No: 01-21812 (Bankr. E.D.N.Y).

*In re: Decora Inds., Inc. and Decora, Incorp.,* Nos. 00-4459 and 00-4460 (JJF) (Bankr. D. Del.).

*In re: Genesis Health Ventures, Inc., et al*, No. 002692 (PJW) (Bankr. D. Del.).

*In re: Tel. Warehouse, Inc., et al*, No. 00-2105 through 00-2110 (MFW) (Bankr. D. Del.).

*In re: United Cos. Fin. Corp., et al*, No. 99-450 (MFW) through 99-461 (MFW) (Bankr. D. Del.).

*In re: Caldor, Inc. New York, The Caldor Corp., Caldor, Inc. CT, et al.*, No. 95-B44080 (JLG) (Bankr. S.D.N.Y).

*In re: Physicians Health Corp., et al.*, No. 00-4482 (MFW) (Bankr. D. Del.).

*In re: GC Cos., et al.*, Nos. 00-3897 through 00-3927 (MFW) (Bankr. D. Del.).

*In re: Heilig-Meyers Co., et al.*, Nos. 00-34533 through 00-34538 (Bankr. E.D. Va.).


## PRODUCT RECALL AND CRISIS COMMUNICATION EXPERIENCE

*Reser's Fine Foods.*  Reser's is a nationally distributed brand and manufacturer of food products through giants such as Albertsons, Costco, Food Lion, WinnDixie, Ingles, Safeway and Walmart. Ms. Finegan designed an enterprise-wide crisis communication plan that included communications objectives, crisis team roles and responsibilities, crisis response procedures, regulatory protocols, definitions of incidents that require various levels of notice, target audiences, and threat assessment protocols.   Ms. Finegan worked with the company through two nationwide, high profile recalls, conducting extensive media relations efforts.

*Gulf Coast Claims Facility Notice Campaign.* Finegan coordinated a massive outreach effort throughout the Gulf Coast region to notify those who have claims as a result of damages caused by the Deep Water Horizon Oil spill.  The notice campaign included extensive advertising in newspapers throughout the region, Internet notice through local newspaper, television and radio websites and media relations. The Gulf Coast Claims Facility (GCCF) was an independent claims facility, funded by BP, for the resolution of claims by individuals and businesses for damages incurred as a result of the oil discharges due to the Deepwater Horizon incident on April 20, 2010.

*City of New Orleans Tax Revisions, Post-Hurricane Katrina*.  In 2007, the City of New Orleans revised property tax assessments for property owners.  As part of this process, it received numerous appeals to the assessments.  An administration firm served as liaison between the city and property owners, coordinating the hearing schedule and providing important information to property owners on the status of their appeal.  Central to this effort was the comprehensive outreach program designed by Ms. Finegan, which included a website and a heavy schedule of television, radio and newspaper advertising, along with the coordination of key news interviews about the project picked up by local media.

**ARTICLES**

Author, "What Would Class Action Reform Mean for Notice?"  Law360, New York, (April 13, 2017 11:50 AM ET).

Author, "Bots Can Silently Steal your Due Process Notice."  Wisconsin Law Journal, April 2017.

Author, "*Don't Turn a Blind Eye to Bots*. Ad Fraud and Bots are a Reality of the Digital Environment." LinkedIn article March 6, 2107.

Co-Author,  "Modern Notice Requirements Through the Lens of *Eisen* and *Mullane"* – Bloomberg - BNA Class Action Litigation Report, 17 CLASS 1077, (October 14, 2016).

Author, "Think All Internet Impressions Are The Same? Think Again" – Law360.com, New York (March 16, 2016, 3:39 ET).

Author, "Why Class Members Should See An Online Ad More Than Once" – Law360.com, New York, (December 3, 2015, 2:52 PM ET).

Author, 'Being 'Media-Relevant' — What It Means And Why It Matters - Law360.com, New York (September 11, 2013, 2:50 PM ET).

Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Programs," ABI Journal, Vol. XXX, No 9, (November 2011).

Quoted Expert,  "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist," Canadian Supreme Court Law Review,  (2011), 53 S.C.L.R. (2d).

Co-Author, with Hon. Dickran Tevrizian – "Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," BNA Class Action Litigation Report, 12 CLASS 464, May 27, 2011.

Co-Author, with Hon. Dickran Tevrizian, Your Insight, "Expert Opinion: It's More Than Just a Report -Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," TXLR, Vol. 26, No. 21, May 26, 2011.

Quoted Expert, "Analysis of the FJC's 2010 Judges' Class Action Notice and Claims Process Checklist and Guide:  A New Roadmap to Adequate Notice and Beyond," BNA Class Action Litigation Report, 12 CLASS 165, February 25, 2011.

Author, Five Key Considerations for a Successful International Notice Program, BNA Class Action Litigation Report, April, 9, 2010 Vol. 11, No. 7 p. 343.

Quoted Expert, "Communication Technology Trends Pose Novel Notification Issues for Class Litigators," BNA Electronic Commerce and Law, 15 ECLR 109 January 27, 2010.

Author, "Legal Notice: R U ready 2 adapt?" BNA Class Action Report, Vol. 10 Class 702, July 24, 2009.

Author, "On Demand Media Could Change the Future of Best Practicable Notice," BNA Class Action Litigation Report, Vol. 9, No. 7, April 11, 2008, pp. 307-310.

Quoted Expert, "Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty," Warranty Week, warrantyweek.com/archive/ww20070228.html/ February 28, 2007.

Co-Author, "Approaches to Notice in State Court Class Actions," For The Defense, Vol. 45, No. 11, November, 2003.

Citation, "Recall Effectiveness Research: A Review and Summary of the Literature on Consumer Motivation and Behavior," U.S. Consumer Product Safety Commission, CPSC-F-02-1391, p.10, Heiden Associates, July 2003.

Author, "The Web Offers Near, Real-Time Cost Efficient Notice," American Bankruptcy Institute, ABI Journal, Vol. XXII, No. 5., 2003.

Author, "Determining Adequate Notice in Rule 23 Actions," For The Defense, Vol. 44, No. 9 September, 2002.

Author, "Legal Notice, What You Need To Know and Why," Monograph, July 2002.

Co-Author, "The Electronic Nature of Legal Noticing," The American Bankruptcy Institute Journal, Vol. XXI, No. 3, April 2002.

Author, "Three Important Mantras for CEO's and Risk Managers," - International Risk Management Institute, irmi.com, January 2002.

Co-Author, "Used the Bat Signal Lately," The National Law Journal, Special Litigation Section, February 19, 2001.

Author, "How Much is Enough Notice," Dispute Resolution Alert, Vol. 1, No. 6. March 2001.

Author, "Monitoring the Internet Buzz," The Risk Report, Vol. XXIII, No. 5, Jan. 2001.

Author, "High-Profile Product Recalls Need More Than the Bat Signal," - International Risk Management Institute, irmi.com, July 2001.

Co-Author, "Do You Know What 100 Million People are Buzzing About Today?" Risk and Insurance Management, March 2001.

Quoted Article, "Keep Up with Class Action," Kentucky Courier Journal, March 13, 2000.

Author, "The Great Debate - How Much is Enough Legal Notice?" American Bar Association – Class Actions and Derivatives Suits Newsletter, winter edition 1999.

### SPEAKER/EXPERT PANELIST/PRESENTER

| | |
|---|---|
| American Bar Assn. | Faculty Panelist, 4th Annual Western Regional CLE Class Actions, "Big Brother, Information Privacy, and Class Actions: How Big Data and Social Media are Changing the Class Action Landscape" San Francisco, CA  June, 2017. |
| Miami Law Class Action & Complex Litigation Forum | Faculty Panelist, " Settlement and Resolution of Class Actions," Miami, FL December 2, 2016. |
| The Knowledge Group | Faculty Panelist, "Class Action Settlements: Hot Topics 2016 and Beyond," Live Webcast, www.theknowledgegroup.org, October 2016. |
| ABA National Symposium | Faculty Panelist, "Ethical Considerations in Settling Class Actions," New Orleans, LA, March 2016. |
| S.F. Banking Attorney Assn. | Speaker, "How a Class Action Notice can Make or Break your Client's Settlement," San Francisco, CA, May 2015. |
| Perrin Class Action Conf. | Faculty Panelist, "Being Media Relevant, What It Means and Why It Matters – The Social Media Evolution: Trends, Challenges and Opportunities," Chicago, IL May 2015. |
| Bridgeport Continuing Ed. | Speaker, Webinar "Media Relevant in the Class Notice Context." July, 2014. |
| Bridgeport Continuing Ed. | Faculty Panelist, "Media Relevant in the Class Notice Context." Los Angeles, California, April 2014. |
| CASD 5th Annual | Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012. |

| | |
|---|---|
| Law Seminars International | Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable… What constitutes a best practicable notice? What practitioners and courts should expect in the new era of online and social media."  Chicago, IL, October 2011. ***Voted by attendees as one of the best presentations given.*** |
| CASD 4th Annual | Faculty Panelist, "Reasonable Notice - Insight for practitioners on the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, October 2011. |
| CLE International | Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011. |
| CASD | Faculty Panelist, "21st Century Class Notice and Outreach." 3nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010. |
| CASD | Faculty Panelist, "The Future of Notice." 2nd Annual Class Action Symposium CASD Symposium, San Diego California, October 2009. |
| American Bar Association | Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements:  The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard." Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008. |
| Women Lawyers Assn. | Faculty Panelist, Women Lawyers Association of Los Angeles "The Anatomy of a Class Action." Los Angeles, CA, February, 2008. |
| Warranty Chain Mgmt. | Faculty Panelist, Presentation Product Recall Simulation.  Tampa, Florida, March 2007. |
| Practicing Law Institute. | Faculty Panelist, CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures – Evolving Notice Standards in the Internet Age.  New York/Boston (simulcast), NY March 2006; Chicago, IL April 2006 and San Francisco, CA, May 2006. |
| U.S. Consumer Product Safety Commission | Ms. Finegan participated as an invited expert panelist to the CPSC to discuss ways in which the CPSC could enhance and measure the recall process. As a panelist, Ms Finegan discussed how the CPSC could better motivate consumers to take action on recalls and |

how companies could scientifically measure and defend their outreach efforts.  Bethesda, MD, September 2003.

| | |
|---|---|
| Weil, Gotshal & Manges | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." New York, June 2003. |
| Sidley & Austin | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." Los Angeles, May 2003. |
| Kirkland & Ellis | Speaker to restructuring group addressing "The Best Practicable Methods to Give Notice in a Tort Bankruptcy." Chicago, April 2002. |
| Georgetown University Law | Faculty, CLE White Paper: "What are the best practicable methods to Center Mass Tort Litigation give notice? Dispelling the communications myth – A notice Institute disseminated is a notice communicated," Mass Tort Litigation Institute. Washington D.C., November, 2001. |
| American Bar Association | Presenter, "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits. Chicago, IL, August 6, 2001. |
| McCutchin, Doyle, Brown | Speaker to litigation group in San Francisco and simulcast to four other McCutchin locations, addressing the definition of effective notice and barriers to communication that affect due process in legal notice.  San Francisco, CA, June 2001. |
| Marylhurst University | Guest lecturer on public relations research methods. Portland, OR, February 2001. |
| University of Oregon | Guest speaker to MBA candidates on quantitative and qualitative research for marketing and communications programs. Portland, OR, May 2001. |
| Judicial Arbitration & Mediation Services (JAMS) | Speaker on the definition of effective notice.  San Francisco and Los Angeles, CA, June 2000. |
| International Risk Management Institute | Past Expert Commentator on Crisis and Litigation Communications. www.irmi.com. |
| The American Bankruptcy Institute Journal (ABI) | Past Contributing Editor – Beyond the Quill. www.abi.org. |

**BACKGROUND**

Ms Finegan's past experience includes working in senior management for leading Class Action Administration firms including The Garden City Group ("GCG") and Poorman-Douglas Corp., ("EPIQ"). Ms. Finegan co-founded Huntington Advertising, a nationally recognized leader in legal notice communications.  After Fleet Bank purchased her firm in 1997, she grew the company into one of the nation's leading legal notice communication agencies.

Prior to that, Ms. Finegan spearheaded Huntington Communications, (an Internet development company) and The Huntington Group, Inc., (a public relations firm).  As a partner and consultant, she has worked on a wide variety of client marketing, research, advertising, public relations and Internet programs.  During her tenure at the Huntington Group, client projects included advertising (media planning and buying), shareholder meetings, direct mail, public relations (planning, financial communications) and community outreach programs. Her past client list includes large public and privately held companies: Code-A-Phone Corp., Thrifty-Payless Drug Stores, Hyster-Yale, The Portland Winter Hawks Hockey Team, U.S. National Bank, U.S. Trust Company, Morley Capital Management, and Durametal Corporation.

Prior to Huntington Advertising, Ms. Finegan worked as a consultant and public relations specialist for a West Coast-based Management and Public Relations Consulting firm.

Additionally, Ms. Finegan has experience in news and public affairs. Her professional background includes being a reporter, anchor and public affairs director for KWJJ/KJIB radio in Portland, Oregon, as well as reporter covering state government for KBZY radio in Salem, Oregon. Ms. Finegan worked as an assistant television program/promotion manager for KPDX directing $50 million in programming.  She was also the program/promotion manager at KECH-22 television.

Ms. Finegan's multi-level communication background gives her a thorough, hands-on understanding of media, the communication process, and how it relates to creating effective and efficient legal notice campaigns.

**MEMBERSHIPS, PROFESSIONAL CREDENTIALS**

APR    The Universal Board of Accreditation Public Relations Society of America – Accredited.
       **Member of the Public Relations Society of America**
       **Member Canadian Public Relations Society**

**SOCIAL MEDIA**

*LinkedIn: www.linkedin.com/in/jeanne-finegan-apr-7112341b*
*Twitter: @jfinhfmedia*