**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **LOGAN LANDES and JAMES GODDARD, individually and on behalf of all others similarly situated,** | Case No. **2:17-cv-2264-JFB-SIL** |
| **Plaintiffs,** | |
| **v.** | |
| **SONY MOBILE COMMUNICATIONS (U.S.A.), INC. and SONY ELECTRONICS, INC.,** | |
| **Defendants.** | |

**SONY MOBILE COMMUNICATIONS (U.S.A.), INC. AND SONY ELECTRONICS,**
**INC.'S MEMORANDUM OF LAW IN SUPPORT FOR ENTRY OF AN ORDER**
<u>**GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**</u>

**KING & SPALDING LLP**
John P. Hooper
Eric F. Gladbach
1185 Avenue of the Americas
New York, NY 10036
Tel. (212) 556-2100
Fax (212) 556-2222

**REED SMITH LLP**
Geoffrey G. Young
599 Lexington Avenue
New York, New York 10022
Tel. 212-521-5400
Fax 212-521-5450

*Attorneys for Defendants*
*Sony Mobile Communications (U.S.A.), Inc.*
*and Sony Electronics, Inc.*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ...................................................................................................2

    A. Plaintiff's Allegations and Claims ....................................................................2

    B. Pre-Lawsuit Discovery and Settlement Negotiations ..........................................2

    C. Settlement Terms ...........................................................................................3

        1. Warranty Extension ..................................................................................4

        2. Changes to Packaging, Labeling and Advertising ........................................4

        3. Claim Reimbursement ...............................................................................5

    D. The Court Preliminarily Approved the Settlement and Notice Was Disseminated to the Class ................................................................................................5

        1. Publication Notice....................................................................................6

            a) Magazines and Newspapers................................................................6

            b) Internet Banner Advertisements .........................................................7

            c) Social Media ...................................................................................7

        2. Direct Mail Notice ...................................................................................7

        3. Press Release and News Mention Monitoring .............................................8

        4. Website and Toll-Free Telephone Number Were Set Up ..............................8

III. ARGUMENT .....................................................................................................9

    A. This Court Has Jurisdiction to Consider and Rule on the Settlement.................9

        1. The Court Has Personal Jurisdiction Over All Class Members....................9

        2. The Court Has Original Jurisdiction Over All Claims................................10

        3. Notice Satisfied the Requirements of Rule 23(c) and (e) and Due Process................11

    B. The Class Action Fairness Act Notice Favors Final Approval.........................12

C. The Motion for Final Approval Should be Granted Because of the Fairness, Reasonableness, and Adequacy of the Settlement ............................................................13

    1. Public Policy Strongly Favors Class Action Settlements ............................................13

    2. The "Presumption of Fairness" Is Warranted Because the Settlement is the Product of Serious, Informed, Non-Collusive Negotiations ........................................14

    3. The Settlement Has No Obvious Deficiencies and Does Not Improperly Grant Preferential Treatment to the Named Plaintiffs or Segments of the Class .................16

    4. The Settlement Falls Within the Range of Final Approval.........................................17

        a) The Complexity, Expense and Likely Duration of the Litigation Weigh in Favor of Settlement.................................................................................................17

        b) Reaction of the Class to the Settlement Is Overwhelmingly Favorable ...............18

        c) The Stage of the Proceedings and the Amount of Discovery Completed Weigh in Favor of Settlement ..................................................................................18

        d) The Risks of Establishing Liability Support Settlement.......................................19

        e) The Risks of Establishing Damages ....................................................................20

        f) The Risks of Maintaining the Class Action Through the Trial.............................21

        g) The Ability of the Defendants to Withstand a Greater Judgment.........................22

        h) Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and all the Attendant Risks of Litigation...............................................22

IV. THE COURT SHOULD ISSUE A PERMANENT INJUNCTION.......................................23

V. CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
  No. ML132438PSGPLAX, 2017 WL 2559615 (C.D. Cal. June 7, 2017).............................21

*Adams v. S. Farm Bureau Life Ins. Co.*,
  493 F.3d 1276 (11th Cir. 2007) ..................................................................................24

*In re AOL Time Warner, Inc. & ERISA Litig.*,
  No. 02 Civ. 5575,2006 U.S. Dist. LEXIS 78101 (S.D.N.Y. Sept. 28, 2006) ..........................18

*In re Asbestos School Litig.*,
  No. 83-cv-0628, 1991 U.S. Dist. LEXIS 5142 (E.D. Pa. Apr. 16, 1991), aff'd
  mem., 950 F.2d 723 (3d Cir. 1991)...............................................................................25

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d at 174 ...........................................................................................17, 19

*Ayzelman v. Statewide Credit Servs. Corp.*,
  242 F.R.D. 23 (E.D.N.Y. 2007) ...................................................................................22

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*,
  770 F.2d 328 (2d Cir. 1985)....................................................................................24, 25

*Banyai v. Mazur*,
  00 Civ. 9806, 2008 WL 5110912 (S.D.N.Y. Dec. 2, 2008)...................................................21

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) .................................................................................21

*Boelter v. Advance Magazine Publishers Inc.*,
  210 F. Supp. 3d 579, 590–91 (S.D.N.Y. 2016).....................................................................10

*In Re Canon Inkjet Printer Litig.*,
  No. 14-cv-3235 (E.D.N.Y. June 24, 2015), Dkt. #51 ............................................................23

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001).........................................................................................19

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)................................................................................... *passim*

*D'Amato v. Deutsche Bank*,
  235 F.2d 78 (2d Cir. 2001)..........................................................................................22

*In re Diet Drugs*,
   282 F.3d 220 (3d Cir. 2002)..............................................................................24

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) (Bianco, J.)..........................................16

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240(CM), 2007 U.S. Dist. LEXIS 57928 (S.D.N.Y. July 27,
   2007) ................................................................................................................15

*Fink v. Time Warner Cable*,
   837 F. Supp. 2d 279 (S.D.N.Y. 2011), aff'd, 714 F.3d 739 (2d Cir. 2013)...........20

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005).......................................................................22

*In re Giant Interactive Group, Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................15

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................11, 14

*Henson v. Ciba-Geigy Corp.*,
   261 F.3d 1065 (11th Cir. 2001) .........................................................................25

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ........................................................................11

*Jermyn v. Best Buy Stores, L. P.*,
   No. 08 Civ. 214 (CM), 2012 WL 2505644 (S.D.N.Y. June 27, 2012)...................17

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000)...............................................................................13

*In re Joint E. & S. Dist. Asbestos Litig.*,
   134 F.R.D. 32 (E.D.N.Y. 1990) ..........................................................................24

*Juris v. Inamed Corp.*,
   685 F.3d 1294 (11th Cir. 2012) ..........................................................................24

*In re Linerboard Antitrust Litig.*,
   361 F. App'x 392 (3d Cir. 2010) .........................................................................25

*Long v. HSBC USA Inc.*,
   No. 14 Civ. 6233(HBP), 2015 WL 5444651 (S.D.N.Y Sept. 11, 2015)................14

*In re Luxottica Grp. Sp.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) .........................................................................13

*McBean v. City of New York*,
233 F.R.D. 377 (S.D.N.Y. 2006) ...................................................................19, 22

*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d Cir. 2009)...........................................................................14

*Metlife Demutualization Litig.*,
689 F. Supp. 2d 297, 351 (E.D.N.Y. 2010) ...................................................16

*In re Metropo. Life Ins. Co. Sales Practices Litig.*,
MDL 1091, 1999 WL 33957871 (W.D. Pa. Dec. 28, 1999)...........................19

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012).............................................................15

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on
April 20, 2010*,
MDL No. 2179..................................................................................................15

*Outboard Marine Corp. v. Super. Ct.*,
52 Cal. App. 3d 30 (1975) ................................................................................2

*In re Paine Webber Ltd P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y), aff'd, 117 F.3d 721 (2d Cir. 1997) ........................14, 21

*In re PaineWebber Ltd. P'ships Litig.*,
No. 94 CIV. 8547 SHS, 1996 WL 374162 (S.D.N.Y. July 1, 1996).................24

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
No. 08 Civ. 7670 (BSJ) (JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010).............17

*Parker v. Time Warner Ent't Co., L.P.*,
No. 98-CV-04265 (ILG) (JMA), 2009 WL 1940791 (E.D.N.Y. July 6, 2009)................18, 23

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985).........................................................................................9, 10

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*,
No. 08-CV-42 JG VVP, 2015 WL 6964973 (E.D.N.Y. Nov. 10, 2015) .................13

*In re Prudential Sec. Inc. Ltd P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) .....................................................................13

*In re Sony Corp. SXRD Rear Projection Television Mktg., Sales Practices and
Prods. Liab. Litig.*,
No. 09-MD-2102, 2010 WL 3422722 (S.D.N.Y. Aug. 24, 2010)............................23

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
  No. 06 Civ. 5173(RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ...................................22

*Strougo v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) .......................................................................14

*TBK Partners, Ltd. v. W. Union Corp.*,
  517 F. Supp. 380 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982) ...............................18

*Thompson v. Metro. Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) ...............................................................................14

*Torres v. Gristede's Operating Corp.*,
  Nos. 04-CV-3316, 08-CV- 8531, 08-CV-9627 (PAC), 2010 U.S. Dist. LEXIS
  139144 (S.D.N.Y. Dec. 21, 2010) ............................................................................19

*Varacallo v. Mass. Mut. Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005) .................................................................................12

*In re Veeco Instruments Inc. Sec. Litig*,
  05-MDL-165, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...............................................16

*Velez v. Novartis Pharms. Corp.*,
  No. 04 Civ. 09194 (CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ...............................17

*Viggiano v Hansen Nat. Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) .......................................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005).................................................................................13, 14

*In re Warner*,
  2008 WL 5110904 ..............................................................................................14

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982)...................................................................................14

**Statutes**

28 U.S.C. §1332(d)(2) .............................................................................................10

28 U.S.C. §1367(a) ................................................................................................11

28 U.S.C. § 1715.............................................................................................11, 12, 13

All Writs Act, 28 U.S.C. § 1651(a)................................................................................26

Anti-Injunction Act, 28 U.S.C. § 2283 ...........................................................................26

California Consumers Legal Remedies Act, Ca. Civil Code §§ 1750, *et seq*.............................2, 5

MCL 4th § 21.632.........................................................................................................................17

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................................................................. *passim*

http://www.xperiawaterproofsettlement.com (last accessed October 12, 2017) ............................9

## I.  INTRODUCTION

Defendants Sony Mobile Communications (U.S.A.), Inc. and Sony Electronics, Inc. (collectively, "Sony" or the "Sony Defendants") respectfully request that this Court finally approve the class action settlement and find that it is "fair, reasonable and adequate" as is required by Fed. R. Civ. P. 23(e).  The extraordinary settlement delivers multifaceted relief to the Class, which includes (1) a warranty extension for the Mobile Devices for Class Members to cover damage resulting from water intrusion, including both where the applicable warranty has already expired or is still in-force; (2) changes to Sony's packaging, labeling and advertising; and (3) reimbursements of 50% of the MSRP for the affected Mobile Device to Class Members who previously had timely claims denied for water-related damage to their Mobile Device.  This Settlement should be finally approved, pursuant to Rule 23, because the Settlement more than satisfies the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), after the successful dissemination of notice to the Class.

After conducting extensive pre-lawsuit discovery and engaging in substantial settlement negotiations, Sony Defendants and Plaintiffs' Class Counsel, acting on behalf of Plaintiffs and the Class Members, have executed a proposed Settlement Agreement to resolve this class action that alleges that the Sony Defendants deceptively advertised certain Xperia smartphones and tablets as "waterproof."  Sony denies any and all wrongdoing alleged in the Complaint, but nevertheless considers it desirable to enter into this Settlement with a broad Release in order to avoid the burden, expense, and risk and uncertainty of continuing to litigate the claims.

On August 3, 2017, the Court preliminary approved the Settlement, provisionally certified the Class for settlement purposes only, designated the Class Representatives, approved the Notice Program, appointed Jeanne Finegan as the Settlement Notice Administrator and Heffler Claims Group as the Class Action Settlement Administrator, issued a preliminary

injection, and scheduled a final approval hearing for December 1, 2017. *See* Preliminary Approval Order, Dkt. No. 23.[1] The extraordinary Notice Program was then implemented, consistent with the Preliminary Approval Order. The Notice Program reached an estimated 92 percent of the targeted class members, on average 8 times. *See* Declaration of Jeanne C. Finegan, APR ("Finegan Decl."), Dkt. No. 28 at ¶ 33.

## II.     BACKGROUND

### A.     Plaintiff's Allegations and Claims

Plaintiffs filed this Action, on behalf of a nationwide class, alleging, *inter alia*, that the Sony Defendants deceptively advertised the Xperia line of smartphones and tablets as "waterproof." *See* Complaint (Dkt. No. 1), at ¶¶ 1-6. Sony refers the Court to its Memorandum of Law in Support for Entry of an Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Memorandum") for a more fulsome discussion of Plaintiffs' claims and requests for damages. *See* Preliminary Approval Memorandum (Dkt. No. 17).

### B.     Pre-Lawsuit Discovery and Settlement Negotiations

In or around January 2016, the Sony Defendants received a letter from Plaintiffs' Class Counsel pursuant to California Consumers Legal Remedies Act, Ca. Civil Code §§ 1750, *et seq*. ("CLRA"), providing notice of potential claims against the Sony Defendants related to the Mobile Devices. Thereafter, and in accordance with the CLRA's policy goals of encouraging pre-lawsuit resolutions,[2] counsel for the Parties engaged in numerous in-person meetings and substantive telephonic discussions exploring a potential resolution of the Class' claims. During

---

[1]      All capitalized terms shall have the meaning ascribed to them in the Settlement Agreement unless otherwise specified herein.

[2]      Notably, one California court described goals of the CLRA's notice requirements as follows: "The clear intent of the [CLRA] is to provide and facilitate precomplaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished." *Outboard Marine Corp. v. Super. Ct.*, 52 Cal. App. 3d 30, 41 (1975).

the Parties' extensive arm's length negotiations, the Sony Defendants responded to Plaintiffs' Class Counsel's discovery demands. The Parties also used the services of Patrick A. Juneau, a highly-proficient class action mediator, to assist with the resolution of this matter. During these negotiations, Plaintiffs' Class Counsel was given every opportunity to conduct a thorough examination, investigation, and evaluation of the relevant law, facts and allegations to assess the merits of the claims in order to determine the strength of both liability and defenses.

In particular, prior to the filing of the Complaint and in the course of these settlement negotiations, the Sony Defendants produced over 11,000 documents.[3] Further, in December 2016, Plaintiffs' Class Counsel had full access to and conducted an interview of the Director of Sony Customer Services for the Americas in order to assess the merits of Plaintiffs' claims, the Sony Defendants' defenses and valuation issues. The Parties' detailed and informed negotiations, which have taken place in conjunction with the informal discovery process, have taken months for the Parties to complete.

The Sony Defendants deny any and all wrongdoing in connection with any and all of Plaintiffs' claims, but nevertheless consider it desirable to settle them because the settlement will: (i) provide substantial benefits to the Class Members; and (ii) avoid the substantial expense, burden and uncertainty associated with the continued litigation of the Plaintiffs' claims.

### C.     Settlement Terms

The Sony Defendants have agreed to provide substantial relief to Class Members, subject to the terms and conditions detailed in the Settlement Agreement. *See* Preliminary Approval Memorandum (Dkt. No. 17). Relief includes a warranty extension, changes to packaging,

---

[3] Sony Defendants produced documents related to the following: (1) users guides and white papers for the models; (2) product specifications; (3) warranty documents, including complaints; (4) package inserts; (5) IP certifications and test results establishing the water-resistant capabilities of the Mobile Devices; (6) water resistance test instructions; (7) advertising and marketing pictures; (8) website advertising; (9) package artwork; (10) Profit and Loss Statements; and (11) Sales Charts.

labeling and advertising, and reimbursements via a Claim Process for Class Members who previously had timely claims denied for water-related damage to their Mobile Devices.[4]

In return for the relief provided in the Settlement Agreement, the Class will release and discharge the Sony Defendants from any and all claims that were, could have been, or may be asserted in this action, or that relate to Mobile Devices. *See id.* § VII.

### 1. Warranty Extension

As detailed in the Settlement Agreement, the Sony Defendants agreed to extend the limited warranty for water intrusion damage: (a) by 12 months for those Mobile Devices where the warranty is still in effect as of the date of the issuance of the Preliminary Approval Order; and (b) six months for those Mobile Devices that are out-of-warranty as of the date of the issuance of the Preliminary Approval Order. *See* Settlement Agreement § III.A. While Sony had no obligation to implement this relief until the occurrence of the Final Effective Date, per the Settlement Agreement terms, Sony implemented this relief prior to the applicable deadlines on September 14, 2017. *Id.*

### 2. Changes to Packaging, Labeling and Advertising

Pursuant to the Settlement Agreement, the Sony Defendants agreed to change its advertising and marketing intended for end users in the United States, within 90 days of the issuance of the Preliminary Approval Order, for the Mobile Devices currently being sold by the Sony Defendants or any newly-introduced models with IP 65/68 substantiation. *See* Settlement Agreement § III.B. These changes were discussed with Plaintiffs' Class Counsel, as is required

---

[4] The Settlement Agreement also provides that Plaintiffs' Class Counsel will make an application for an award of Attorneys' Fees, Costs, and Expenses in the Action in an amount not to exceed $1,000,000. *See* Settlement Agreement § VIII.B. Further, the Settlement Agreement provides that Plaintiff's Class Counsel may petition the Court for incentive awards of up to $1,000 per Named Plaintiff for bringing the Action and for their time in connection with the Action. *See id.* § VIII.C.

by the Settlement Agreement, and is in the process of being fully implemented, as indicated by the disclaimer included for the subject cellphones. *Id.*[5]

3.     Claim Reimbursement

For Class Members who previously had timely claims for water-related damages denied by the Sony Defendants for their in-warranty Mobile Devices, the Sony Defendants shall issue a check of 50% of the at-issue MSRP (which ranges from $249.99 to $679.99) for the Mobile Device to Class Members who complete and timely return an In-Warranty Claim Form during the Claim Period. *See* Settlement Agreement § III.C.1.

**D.     The Court Preliminarily Approved the Settlement and Notice Was Disseminated to the Class**

The Preliminary Approval Order stated the Settlement Agreement is "fair, reasonable, and adequate." *See* Preliminary Approval Order, at p. 1. The Court found the "Settlement Agreement was entered into only after extensive arm's length negotiations by experienced counsel." *Id.* at 2. "Settlement Agreement is sufficiently within the range of reasonableness so that notice of the Settlement should be given." *Id.* "In making this determination, the Court has considered the current posture of this litigation and the risks and benefits to the Parties involved in both settlement of these claims and continuation of the litigation." *Id.*

The Court noted that the proposed the notice to the Class and dissemination methodology as described in the Settlement Agreement and in the Declaration of the Settlement Notice Administrator: "(a) meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e); (b) constitutes the best notice practicable under the circumstances to all persons entitled to notice,

---

[5] In the event that a reseller continues to use the phrase "waterproof" in its advertising or marketing, the Sony Defendants shall not be responsible for such action or inaction. *See* Settlement Agreement § III.B.

and (c) satisfies the Constitutional requirements regarding notice." *Id.* at p. 5. The Court subsequently ordered that "notice be commenced no later than August 17, 2017." *Id.*

The Class Action Settlement Administrator began disseminating notice on August 17, 2017 and substantially completed by September 26, 2017. *See* Finegan Decl., at ¶4.[6] The Notice Administrator reports that all of the elements of the notice requirements set forth in the Preliminary Approval Order were completed and has reached an estimated 92 percent of the targeted class members, on average, 8 times. *See id.*, at ¶ 33.

### 1. Publication Notice

#### a) Magazines and Newspapers

Publication Notice was published in the nationally circulated magazines, selected based on high coverage and index against the target audience characteristics. *Id.*, at ¶ 16. A half-page, Short Form Notice was published once in the *National Geographic Magazine*, available on newsstands on September 26, 2017, and *ESPN Magazine*, available on August 25, 2017. *Id.*, at ¶¶ 17 and 18. These national magazines have an estimated circulation of 3,147,721 and 2,139,323, respectively. *Id.*

The Notice Program also included outreach in Puerto Rico. *Id.*, at ¶ 20. This notice included a combination of local newspapers, local internet and social media advertising geo-targeted to this region. *Id.* Additionally, the press release included distribution to news outlets in Puerto Rico. *Id.* The newspapers chosen, The Puerto Rico El Vocero, published once in Spanish on August 31, 2017, and The San Juan Daily News, published once in English on August 31, 2017, have estimated circulations of 229,685 and 50,000, respectively. *Id.* Online

---

[6] The notice consisted of Publication Notice including: short-form notice in nationally circulated consumer magazines (with Spanish language sub-headlines), territorial newspaper in Spanish and English, a press release, and social media through Facebook, Twitter and Instagram, Direct Mail, Class Action Fairness Act Notice to appropriate state and federal government officials, internet banner notifications, informational website, and toll-free telephone number. *See* Finegan Decl., at ¶ 11.

display ads also appeared on the digital version of both of the newspapers' websites. *Id.*

      b)  Internet Banner Advertisements

  Internet banner advertising was served across two major networks: Conversant and the Hispanic network, Pulpo. *Id.*, at ¶ 21. Because 63 percent of Sony smartphones users access the internet using multiple devices, ads were served across desktop and mobile devices. *Id.*

  As of October 11, ,2017, over 30,100,000 validated impressions have been served to people in both English and Spanish, targeted to consumers who own Sony Phones (Android operating systems) at issue in this settlement. *Id.*, at ¶ 22. This effort exceeded the original projections of serving 24,427,000 impressions. *Id.*

      c)  Social Media

  This outreach effort also included three social media platforms: Facebook, Instagram, and Twitter. *Id.*, at ¶ 25. Social media ads were served both in the U.S. and in Puerto Rico. *Id.* Specifically, Facebook targeting included those who are owners of Sony phones and who engage in content related to Sony Xperia mobile devices. *Id.*, at ¶ 26. Further, the program retargeted users who clicked to visit the settlement website. *Id.* Banner ads appeared across desktop newsfeeds and mobile apps, including Instagram and Twitter. *Id.*

  The Settlement Administrator and her staff also monitored nearly 1,000 social mentions of the settlement across the Twitterverse and Facebook. *Id.*, at ¶ 28. As of October 11, 2017, 622 contributors Tweeted 832 times. *Id.* Of those Tweets, 494 were regular Tweets and 338 were ReTweets. *Id.* Although not measured into the net audience reach, this effort generated over 32 million impressions, which undoubtedly increased visibility of the notice program. *Id.*

    2.  <u>Direct Mail Notice</u>

  Pursuant to the terms of the Settlement Agreement, on August 30, 2017 Heffler sent Long Form Notices and claim form packages via U.S. Mail to 1,351 Class Members that were

reasonably and readily identified by Defendants' customer databases. *See id.*, at ¶ 12. Another 24 notices were emailed to Class Members for whom only an email address was identified. *See id.* The addresses were checked against the National Change of Address ("NCOA") database, which is maintained by the United States Postal Service ("USPS"). *Id.*, at ¶ 13.

Following the mailing of Notices to Class Members, Heffler has received Notices returned by the USPS with forwarding addresses and Notices returned by the USPS as undeliverable as addressed. *Id.*, at ¶ 14. Heffler has remailed the Notices where USPS has provided a forwarding address or where Heffler has been able to conduct a skip trace to determine the updated address. *Id.*

### 3. Press Release and News Mention Monitoring

A news release was issued on August 18, 2017 over PR Newswire's U.S.1 newsline. *See id.*, at ¶ 30. HF Media monitored various media channels for subsequent news articles and various social mentions as a result of the press release efforts. *Id.* As of October 11, there were 391 pick-ups of the press release and 201 unique news mentions. *Id.* These stories also contributed to the social amplification with nearly 2,400 social shares of the settlement across Facebook, GooglePlus and LinkedIn from news outlets including The Verge, Android Police, PC Magazine, Engadget and Phone Arena. *Id.*

### 4. Website and Toll-Free Telephone Number Were Set Up

Pursuant to the Court's Order, an informational, interactive website www.xperiawaterproofsettlement.com was launched on August 14, 2017 to enable potential Class Members to get information about the Settlement and obtain and/or submit a Claim Form(s). *See id.*, at ¶ 31. Importantly, the website served as a "landing page for the banner advertising," where Class Members may continue to obtain further information about the class action, their rights, download the Long Form Notice, the Claim Form(s), and related information,

including the Settlement Agreement, Court Orders, and Plaintiff's Motion for Approval of Fees, Expenses, and Incentive Awards.  *Id.*  The website address was also prominently displayed in the publication notice and continues to be accessible 24-hours a day, 7-days a week.  *Id.*

The website lists in bold lettering the models at issue, and states that "For covered product where the original manufacturer's limited warranty had not expired as of August 3, 2017, Sony Mobile is extended the warranty for liquid damage for an additional twelve (12) months from date of purchase.  For covered product where the original limited warranty had expired as of August 3, 2017, Sony Mobile is extending the warranty for six months or until March 14, 2018."  *See Landes* Settlement Website, accessible at http://www.xperiawaterproofsettlement.com (last accessed October 12, 2017).  As of October 26, 2017, nearly 51,000 users have visited the website.  *See* Finegan Decl., at ¶ 31.

Additionally, on August 14, 2017, Heffler launched a 24-hour toll-free telephone line (1-844-367-8807) where callers may obtain information about the class action.  *See id.*, at ¶ 32.  As of October 11, 2017, 207 people have called the toll-free line.  *Id.*

## III.  ARGUMENT

### A.    This Court Has Jurisdiction to Consider and Rule on the Settlement

#### 1.    The Court Has Personal Jurisdiction Over All Class Members

This Court has personal jurisdiction over the Plaintiffs, who are parties to this class action and have agreed to serve as Class Representatives.  The Court also has personal jurisdiction over absent Class Members because due process-compliant notice has been provided to the Class. The Supreme Court in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810–12 (1985), held that a court properly exercises personal jurisdiction over absent, out-of-state class members where the court and the parties have safeguarded absent class members' right to due process.

As described above, the extraordinary notice provided to Class Members, combined with the opportunity to object and appear at the Fairness Hearing, fully satisfies due process in order to obtain personal jurisdiction over a Rule 23(b)(3) class. *See Phillips Petroleum Co.*, 472 U.S. at 811–12 (finding that the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing absentees with an opportunity to be heard or an opportunity to exclude themselves from the class).

2.     The Court Has Original Jurisdiction Over All Claims

This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2) because Plaintiffs' Complaint alleges that, in the aggregate, Plaintiffs' claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs; and greater than two-thirds of the class members are citizens of states other than Sony's state of citizenship, which is Delaware. *See* Complaint, Dkt. No. 1, at ¶ 11; *see also Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579, 590–91 (S.D.N.Y. 2016) ("CAFA provides the federal district courts with original jurisdiction to hear a class action if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy exceeds the sum or value of $5,000,000.") (citing *Standard Fire Ins. v. Knowles*, 133 S. Ct. 1345, 1348 (2013)).  In addition, the existence of original jurisdiction authorizes this Court to exercise supplemental jurisdiction under 28 U.S.C. §1367(a) over the remaining state law claims.  *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action ... that they form part of the same case or controversy under Article III.").

3.    Notice Satisfied the Requirements of Rule 23(c) and (e) and Due Process

The extensive notice disseminated to the Class and the contents of that notice, as reviewed and approved by this Court, easily satisfy the requirements of Rules 23(c)(2)(B) and 23(e)(1), due process and any and all other requirements of the United States Constitution.

Under Rule 23(e)(1), the Court must direct notice in a reasonable manner to all Class Members who would be bound by the proposal.  In approving the Notice Program, the Court found that the content of the notices and the methods of dissemination "(a) meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e); (b) constitutes the best notice practicable under the circumstances to all persons entitled to notice, and (c) satisfies the Constitutional requirements regarding notice."  *See* Preliminary Approval Order at p. 5.  The Notice Administrator reports that all of the elements of the notice requirements set forth in the Preliminary Approval Order were completed and has reached an estimated 92 percent of the targeted class members, on average, 8 times.  *See* Finegan Decl., at ¶ 33.  Thus, the procedure for providing notice and the content of the class notice constituted the best practicable notice to Class Members.  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 185 (S.D.N.Y. 2012) ("Where there is compliance with Rule 23(c)(2)(B), the requirements of due process are satisfied.").

Here, the methods of dissemination and contents of the notice more than satisfy Rule 23's requirements that the notice should be "the best practicable under the circumstances, … include[ ] all of the content necessary as a matter of law, and accordingly adequate under Rule 23 [and] due process."  *In re IMAX Sec. Litig.*, 283 F.R.D. at 186 (holding that notice plan that included a combination of direct mail notice, website with information about the settlement, and publication notice which included national editions of newspapers and electronic newswires constituted the best practicable notice under the circumstances); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 450 (S.D.N.Y. 2004) (finding that notice which included direct

mailing, newspapers, notice materials on websites-including a website designed to inform potential class members about the settlement-and a toll-free phone number "sufficient information for class members to understand the proposed partial settlement and their options" and was "best notice practicable under the circumstances").[7]

Specifically, here, the various methods of notice informed Class Members of the terms of the Settlement, their rights and options, including the right to object or request exclusion, applicable dates and deadlines, and the binding effect of the Settlement, if finally approved.

## B. The Class Action Fairness Act Notice Favors Final Approval

Notice under the Class Action Fairness Act or "CAFA," 28 U.S.C. § 1715, has been satisfied. In a class action settlement, CAFA requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official[.]" 28 U.S.C. § 1715(b). A court is precluded from granting final approval of a class action settlement until CAFA notice requirements are met. 28 U.S.C. § 1715(d) ("An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)]").

On July 21, 2017, Heffler timely and properly caused the required CAFA Notice to be sent to the United States Attorney General and all appropriate Federal and State Officials. *See* Finegan Declaration, at ¶ 15. None of the foregoing CAFA Notices were returned as

---

[7] The notices clearly inform Class Members, in plain, easily understood language that complies with the Federal Judicial Center's illustrative notices. *Varacallo v. Mass. Mut. Ins. Co.*, 226 F.R.D. 207, 225-26 (D.N.J. 2005); Preliminary Approval Order at p. 5.

undeliverable. *Id.* As of October 19, 2017, more than 90 days will have passed from "the dates on which the appropriate Federal office and the appropriate State official [were] served." *See* 28 U.S.C. § 1715(d); ); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 JG VVP, 2015 WL 6964973, at *8 n.24 (E.D.N.Y. Nov. 10, 2015) (holding the grant of final approval in abeyance until the 90-day CAFA notice period expires). At this time, there have been no requests or responses from state and federal officials on this matter.

### C. The Motion for Final Approval Should be Granted Because of the Fairness, Reasonableness, and Adequacy of the Settlement

#### 1. Public Policy Strongly Favors Class Action Settlements

The Second Circuit has long recognized "the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (internal quotation marks omitted); *In re Prudential Sec. Inc. Ltd P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions."). "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Grp. Sp.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

The standard employed in the Second Circuit for the evaluation of a proposed settlement is clear: "Before such a settlement may be approved, the district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000) (citing Fed. R. Civ. P. 23(e)(2)). "We have recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement is reached in arm's-length negotiations between experienced, capable counsel

after meaningful discovery. Such a presumption is consistent with the strong judicial policy in favor of settlements, particularly in the class action context." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009); *Wal-Mart Stores*, 396 F.3d at 116 (same); *In re Paine Webber Ltd P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y), aff'd, 117 F.3d 721 (2d Cir. 1997).

In assessing a settlement, the court should neither substitute its judgment for that of the parties who negotiated the settlement, nor conduct a mini-trial on the merits. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); s*ee also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (court should not substitute its "business judgment for that of counsel, absent evidence of fraud or overreaching"); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003) ("absent evidence of fraud or overreaching, courts consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of [class] counsel").

In determining if a proposed settlement is fair, reasonable and adequate, courts in this Circuit look to the nine factors enumerated in *Grinnell. See In re Warner*, 2008 WL 5110904, at *2; *Long v. HSBC USA Inc.*, No. 14 Civ. 6233(HBP), 2015 WL 5444651, at *3 n.2 (S.D.N.Y Sept. 11, 2015). In finding that a settlement is fair, not every factor must weigh in favor of settlement; "rather the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003). In this case, it is clear that the proposed settlement is entitled to the strongest presumption of fairness. Accordingly, the Court should grant final approval to the Settlement.

    2.    The "Presumption of Fairness" Is Warranted Because the Settlement is the Product of Serious, Informed, Non-Collusive Negotiations

Even under the more rigorous standard governing final approval, where a settlement has been negotiated at arm's length by experienced, informed counsel, there is a presumption that it is fair and reasonable. *See Wal-Mart Stores*, 396 F.3d at 117 ("A presumption of fairness,

adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."). "Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 U.S. Dist. LEXIS 57928, at *12 (S.D.N.Y. July 27, 2007).

A court may also consider whether the settlement was reached with the assistance of a judicial officer or other experienced neutral. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) (noting involvement of "an experienced and well-known employment and class action mediator," which was "a strong indicator of procedural fairness"); *In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (noting that settlement was "facilitated by a respected mediator").

Here, there should be little doubt that the settlement between the Sony Defendants and the Class was the product of serious, informed, non-collusive negotiations. The settlement was negotiated by experienced, informed counsel for nearly a year where each Party thoughtfully considered each other's positions and diligently worked to reach a resolution of this matter. Given counsel's experience, the negotiations took place at arm's length, were adversarial, and included the involvement of Patrick A. Juneau, a highly-experienced class action mediator.[8] *See* Declaration of Patrick Juneau in Support of Settlement (Dkt. No. 16-3). The fact that the settlement was prompted by an experienced mediator is further evident that the Settlement was the product of serious, informed, non-collusive negotiations. *See Morris*, 859 F. Supp. 2d at 618.

---

[8]     Among many distinctions, Mr. Juneau has served as the court appointed Special Master in numerous federal and state cases including the following complex and multi-party matters, including, among others, in the "Deepwater Horizon" Multi-District Litigation. *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 Section J (E.D. La.).

In addition, the material settlement terms were not agreed to until the Sony Defendants provided Plaintiffs' Class Counsel ample opportunity to thoroughly review, research, investigate and analyze the matter, which included, the Sony Defendants' production of over 11,000 highly-relevant and confidential documents, providing a key Sony representative for a wide-ranging interview by Plaintiffs' Class Counsel and the Parties participation in numerous in-person and telephone meetings. Due to these efforts, Plaintiffs' Class Counsel had an unfettered opportunity to develop the facts concerning the Sony Defendants' potential liability, defenses and potential likelihood of success. Because the Parties were willing to share significant information about this matter during their negotiations, the Parties were capable of making – and did make – well-informed decisions regarding the Settlement.

3.    The Settlement Has No Obvious Deficiencies and Does Not Improperly Grant Preferential Treatment to the Named Plaintiffs or Segments of the Class

The settlement does not provide "unduly preferential treatment of class representatives or segments of the class." MCL 4th § 21.632, at 321. As a preliminary matter, a class need not provide the exact same settlement to every class member in order for a court to approve the settlement. *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 237-42 (E.D.N.Y. 2010) (Bianco, J.) (granting final approval to class settlement where different groups within the class received varying amounts of relief); *Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 351 (E.D.N.Y. 2010) ("Unless the court reviewing settlement finds stark conflicts of interest, a settlement which contains class members who may recover different amounts is acceptable."); *In re Veeco Instruments Inc. Sec. Litig*, 05-MDL-165, 2007 WL 4115809, at *13 (S.D.N.Y. Nov. 7, 2007) ("[T]here is no rule that settlements benefit all class members equally.").

Here, there is no basis to believe that there are obvious deficiencies in the settlement or that certain members of the Class received preferential treatment. The Settlement Agreement

provides valuable warranty extensions to all Class Members and a straightforward Claims Process for eligible Class Members to obtain reimbursement for prior warranty claims premised upon water-related damage that were previously and timely submitted to and denied by the Sony Defendants. *See* Settlement Agreement § III.A. All Class Members will benefit from the Sony Defendants' changes in packaging, labeling and advertising related to "waterproof." *See* Settlement Agreement § III.B. In return for this relief, Class Members are releasing potential claims against the Released Parties named in the Settlement Agreement. *Id.* § VII.[9]

4. The Settlement Falls Within the Range of Final Approval

Courts in the Second Circuit consider the nine factors set forth in *Grinnell* when evaluating a class settlement. Here, a review of those factors clearly weigh in favor of final approval of the settlement, pursuant to Rule 23.

a) The Complexity, Expense and Likely Duration of the Litigation Weigh in Favor of Settlement

Litigation this Action through trial would be complex, costly, uncertain, and long. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 174. Courts have consistently held that, unless the settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation

---

[9] Moreover, the Settlement Agreement grants Plaintiff's Class Counsel the right to petition the Court for incentive awards of up to $1,000.00 per Named Plaintiff. *See* Settlement Agreement § VIII.C. This award is within the Court's discretion and, thus, will not be unreasonable in light of the Named Plaintiffs' role in this case. *See Jermyn v. Best Buy Stores, L. P.*, No. 08 Civ. 214 (CM), 2012 WL 2505644, at *8 (S.D.N.Y. June 27, 2012) ("Courts in this district and elsewhere routinely approve incentive awards of the type sought here."); *see also Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670 (BSJ) (JCF), 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts."); *Velez v. Novartis Pharms. Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852, at *24-25 (S.D.N.Y. Nov. 30, 2010) (collecting decisions in which courts awarded incentive awards of between $50,000 and $300,000).

with uncertain results. *See TBK Partners, Ltd. v. W. Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456, 460 (2d Cir. 1982).

This case is no exception. As discussed above, the Parties have engaged in extensive informal discovery. To engage in contested discovery and motion practice in this action – which would include extensive written discovery, numerous fact and expert depositions, contested motions for class certification and summary judgment – would be a costly and time-consuming process for the Parties and the Court. Settlement, on the other hand, permits a prompt resolution of this action that provides certain relief to the Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals. Settlement therefore will "grant relief to all class members without subjecting them to the risks, complexity, duration and expense of continuing litigation." *In re AOL Time Warner, Inc. & ERISA Litig.*, No. 02 Civ. 5575, 2006 U.S. Dist. LEXIS 78101, at *24 (S.D.N.Y. Sept. 28, 2006).

      b)      <u>Reaction of the Class to the Settlement Is Overwhelmingly Favorable</u>

Per the Court's Order granting Preliminary Approval, Class Members have until November 1, 2017 to either opt out or object to the Settlement. The opt-out requests and objections will be discussed in a future brief. *See* Preliminary Approval Order at p. 9.

      c)      <u>The Stage of the Proceedings and the Amount of Discovery Completed Weigh in Favor of Settlement</u>

Sufficient discovery has occurred for Plaintiffs to have sufficient information on the merits to allow the Parties to responsibly resolve the case. *See Parker v. Time Warner Ent't Co., L.P.*, No. 98-CV-04265 (ILG) (JMA), 2009 WL 1940791, at *3 (E.D.N.Y. July 6, 2009). The Sony Defendants produced over 11,000 documents, including highly confidential documents, relating to the design, manufacture, IP certification, distribution, claims return, and advertising of the Mobile Devices. The effort made by counsel on both sides confirms that the Parties are

sufficiently well-apprised of the facts of this Action, and the strengths and weaknesses of their respective cases, to negotiate and finalize an acceptable settlement. *See Torres v. Gristede's Operating Corp.*, Nos. 04-CV-3316, 08-CV- 8531, 08-CV-9627 (PAC), 2010 U.S. Dist. LEXIS 139144, at *16 (S.D.N.Y. Dec. 21, 2010) ("The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 ("[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . but an aggressive effort to ferret out facts helpful to the prosecution of the suit.").

d)      <u>The Risks of Establishing Liability Support Settlement</u>

Even in cases where establishing liability appears to be a near certainty, the courts recognize the inherent risks of submitting any claim to a jury. *See, e.g.*, *McBean v. City of New York*, 233 F.R.D. 377, 387 (S.D.N.Y. 2006) (noting that "while it appears likely that plaintiffs would be able to establish liability at trial, things change"). As recognized in *In re Metropo. Life Ins. Co. Sales Practices Litig.*, MDL 1091, 1999 WL 33957871, at *28 (W.D. Pa. Dec. 28, 1999), and in language equally applicable here, there are a "number of ... potential legal and factual obstacles that plaintiffs would [face] if this litigation [were to proceed] to a trial on the merits." The settlement avoids the potential downsides if this Action were to continue as a litigation. *In re Cendant Corp. Litig.*, 264 F.3d 201, 237 (3d Cir. 2001). Here, while Sony is confident (and Plaintiffs are likely equally confident) that their position is correct, there is no assurance that a jury would agree. There are simply too many variables that could affect the outcome of a trial to provide any guarantee of establishing Sony's liability.

Plaintiffs have sought redress on a class-wide basis for Defendants' deceptive business practices in violation several statutes including the Illinois Consumer Fraud and Deceptive Business Practices Act, the California Consumer Legal Remedies Act, California's Unfair

Competition Law, and California's False Advertising Law and common law counts including breach of express warranty, breach of implied warranty, and unjust enrichment. *See* Complaint, at ¶6, Dkt. No. 1. Each of these statutes has various standards and it is impossible to know exactly how a jury will find on one, much less all of the remaining counts.

Additionally, Sony has several arguments in favor of a motion to dismiss or for summary judgment of these claims. For example, Plaintiffs have insufficiently alleged their claims of violations of consumer protection statutes as Sony's conduct was neither "deceptive" nor "misleading" as it is not likely to deceive a reasonable consumer and Sony has meritorious defenses for these counts. *Fink v. Time Warner Cable*, 837 F. Supp. 2d 279, 284 (S.D.N.Y. 2011), aff'd, 714 F.3d 739 (2d Cir. 2013) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). Furthermore, if these claims are analyzed under California law,[10] Plaintiffs will fail on their breach of express warranty claims, as the language provided with the phones, including Start Up Guides, and on advertisements made clear the limitations of the subject phones and therefore there was no breach nor did a breach cause injury to the class. *Viggiano v Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013). Taking these risks into account, the certain benefits of the Settlement are preferable to the uncertainty, delay and risks of continuing with this litigation, including, but not limited to, trial.

e)        The Risks of Establishing Damages

The need for the Class Members to prove their right to damages and non-monetary relief entails considerable risk. Despite Plaintiffs' request in their Complaint for "compensatory and punitive damages," *see* Complaint, at p. 41, Dkt. No. 1, Sony is prepared to argue that the Class Members were not harmed at all as a result of the alleged misrepresentation and the previously

---

[10] For purposes of this argument, the Sony Defendants are not claiming that these claims should or should not be evaluated under California law.

available warranties are sufficient.  For example, if California law prevails for this Action, courts "have struck down damages models…for failing to account for other factors that may drive consumer preferences*." In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. ML132438PSGPLAX, 2017 WL 2559615, at *11 (C.D. Cal. June 7, 2017).

In contrast to the risk of no damages, the Settlement provides for prospective relief, including providing a warranty extension for the Mobile Devices, including for warranties that have already expired, and Sony's change in packaging, labeling, and advertising to remove use of the term "waterproof" or similar language.  It is not merely a "risk" but a certainty that this relief could not be obtained as the result of a trial.  *See Banyai v. Mazur*, 00 Civ. 9806, 2008 WL 5110912, at *4 (S.D.N.Y. Dec. 2, 2008) (noting, as a component of the risk involved, that continued litigation could not have brought about the benefits obtained by settlement).

f)        The Risks of Maintaining the Class Action Through the Trial

Plaintiffs face the risk of adverse rulings or findings if the action is maintained through trial.  *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ("If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome.") (internal citation omitted).  If the case proceeds on a litigation basis, the Sony Defendants expect to argue that individual questions preclude certification of a litigation class and that a litigation class is not manageable or a superior method to resolve Plaintiffs' claims.  Should the Court certify the Class for litigation purposes, the Sony Defendants would likely move to decertify, forcing another round of briefing.  The Sony Defendants may also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f). In other words, the risk, expense, and delay permeate such a process, and the settlement eliminates those possibilities.  *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013).

g)    The Ability of the Defendants to Withstand a Greater Judgment

Class Members are receiving substantial value through the settlement, including (a) warranty extension, (b) changes to packaging, labeling and advertising, and (c) reimbursements. Whether the Plaintiffs and the Class Members could possibly obtain a judgment worth a greater amount does not need to be determined as in the circumstances, "this is not a significant factor." *See Ayzelman v. Statewide Credit Servs. Corp.*, 242 F.R.D. 23, 28 (E.D.N.Y. 2007). Where the other *Grinnell* factors weigh in favor of approval, "this factor alone does not suggest the settlement is unfair." *D'Amato v. Deutsche Bank*, 235 F.2d 78, 86 (2d Cir. 2001). "The fact that a defendant is able to pay more tha[n] it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate." *Parker,* 2009 WL 1940791, at *14 (quoting *In re PaineWebber,* 171 F.R.D. at 129). It is well established that "a defendant is not required to 'empty its coffers' before a settlement can be found adequate." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173(RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008) (citing *McBean*, 233 F.R.D. at 388).

h)    Range of Reasonableness of the Settlement in Light of the Best
       Possible Recovery and all the Attendant Risks of Litigation[11]

*Grinnell* factors eight and nine weigh in favor of settlement as the settlement amount and all provided recovery is reasonable. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) ("Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'") (internal citation omitted). The final two *Grinnell* factors require that this Court determine whether the instant settlement falls within this 'range of reasonableness.'" *McBean*, 233 F.R.D.

---

[11] These factors have been combined.

at 388.  The eighth factor considers the reasonableness of the Settlement compared with the best possible recovery; the ninth considers the reasonableness of the Settlement in light of all the risks of proceeding with the litigation.  *Grinnell*, 95 F.2d at 463.  Applying these factors to the Settlement in this case provides ample support for final approval: the Settlement is not only reasonable but superior to any realistic outcome at trial.

The Sony Defendants agreed to (1) provide a warranty extension for the Mobile Devices, including for warranties that have already expired; (2) change packaging, labeling and advertising to remove use of the term "waterproof" or similar language; and (3) provide a Claim Process relating to previous water-related warranty claim rejections where eligible Class Members will receive 50% of the MSRP for the applicable Mobile Devices.  Moreover, the broad definition of Class ensures every person with a Mobile Device, not just purchasers, are eligible for the settlement relief.  *See* Settlement Agreement § III.  Thus, the settlement fits within the range of final approval.  *See In re Sony Corp. SXRD Rear Projection Television Mktg., Sales Practices and Prods. Liab. Litig.*, No. 09-MD-2102, 2010 WL 3422722 (S.D.N.Y. Aug. 24, 2010) (finding that final approval of the settlement was appropriate where the settlement provided a warranty extension and fulfillment and claim process); *In Re Canon Inkjet Printer Litig.*, No. 14-cv-3235 (E.D.N.Y. June 24, 2015), Dkt. #51 (granting final approval of the settlement where the settlement provided a warranty extension, cash payment or voucher).  Accordingly, all nine of the *Grinnell* factors weigh in favor of final approval.

## IV.    THE COURT SHOULD ISSUE A PERMANENT INJUNCTION

The rights and interests of the Class Members and the jurisdiction of this Court will be impaired if Class Members who have not opted out of the Class proceed with other actions alleging substantially similar claims to those asserted in this Action and/or those claims that are resolved and/or released pursuant to the Settlement Agreement.  Numerous federal courts have

recognized their power to enjoin class members who did not opt out of a settlement from filing or continuing to prosecute state court actions that would interfere with the implementation of a class action settlement. *See, e.g.*, *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 333 (2d Cir. 1985) (injunction was appropriate where "the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a res over which the district judge required full control."); *In re Diet Drugs*, 282 F.3d 220, 235 (3d Cir. 2002). Settlement Class Members are afforded an opportunity to opt out of the Settlement which justifies an injunction to aid the Court in its management of the Settlement. *See Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1291 (11th Cir. 2007).

The Court should issue a permanent injunction pursuant to the exceptions to the Anti-Injunction Act, 28 U.S.C. § 2283. Courts may issue a permanent injunction pursuant to the "necessary in aid of" exception to the Anti-Injunction Act. 28 U.S.C. § 2283. This exception allows a federal court to effectively prevent its jurisdiction over a settlement from being undermined by pending parallel litigation in state courts. *In re PaineWebber Ltd. P'ships Litig.*, No. 94 CIV. 8547 SHS, 1996 WL 374162, at *2 (S.D.N.Y. July 1, 1996) ("Injunctive relief may be considered necessary in aid of a federal court's jurisdiction when designed to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.) (internal quotations removed); *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 38 (E.D.N.Y. 1990); *Juris v. Inamed Corp.*, 685 F.3d 1294, 1339 (11th Cir. 2012) ("[T]he 'in aid of its jurisdiction' exception [may] be used 'to enjoin parallel state class action proceedings that might jeopardize a complex federal settlement and state in personam proceedings that threaten to make complex multidistrict litigation unmanageable."). Another exception to the Anti-Injunction Act

permits injunctions where it is necessary to protect or effectuate a court's judgment, such as where a court has finally approved a class action settlement. *See In re Baldwin-United Corp.*, 770 F.2d at 333; *Juris*, 685 F.3d at 1340; *In re Asbestos School Litig.*, No. 83-cv-0628, 1991 U.S. Dist. LEXIS 5142, at *3 (E.D. Pa. Apr. 16, 1991), aff'd mem., 950 F.2d 723 (3d Cir. 1991).

This Court also has the authority to issue the requested injunction under the All Writs Act, 28 U.S.C. § 1651(a). The All Writs Act permits this Court to issue "all writs necessary or appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The All Writs Act permits a federal district court to protect its jurisdiction by enjoining parallel actions by class members that would interfere with the court's ability to oversee a class action settlement. *See In re Baldwin-United Corp.*, 770 F.2d at 335; *Henson v. Ciba-Geigy Corp.*, 261 F.3d 1065, 1068 (11th Cir. 2001) ("[A] district court has the authority under the [All Writs] Act to enjoin a party to litigation before it from prosecuting an action in contravention of a settlement agreement over which the district court has retained jurisdiction."); *In re Linerboard Antitrust Litig.*, 361 F. App'x 392, 396 (3d Cir. 2010). Accordingly, this Court should issue a permanent injunction to prevent those Settlement Class Members who will not opt out of the Settlement from interfering with the enforcement of the Settlement and jeopardizing the rights and interests of the Settlement Class Members and this Court's jurisdiction.

## V. CONCLUSION

For the foregoing reasons, the Parties respectfully request that, the Motion be granted and the Court enter an order grating final approval to the Settlement.

Dated: New York, New York
     October 13, 2017

**KING & SPALDING LLP**

By: <u>s/ John P. Hooper</u>
     John P. Hooper

Eric F. Gladbach
1185 Avenue of the Americas
New York, New York 10036
Tel.: (212) 556-2000
Fax: (212) 556-2222
E-mail: jhooper@kslaw.com
E-mail: egladbach@kslaw.com


**REED SMITH LLP**

By:  s/ Geoffrey Garrett Young _____
        Geoffrey G. Young
599 Lexington Avenue
22nd Floor
New York, New York 10022
Tel. 212-521-5400
Fax 212-521-5450
E-mail: gyoung@reedsmith.com

*Attorneys for Defendants*
*Sony Mobile Communications (U.S.A.), Inc. and*
*Sony Electronics, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2017, the above and foregoing document was electronically filed on the CM/ECF system and served in accordance with the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, and/or the United States District Court for the Eastern District's Rules on Electronic Service, which will send notification of such filing to all counsel of record.

s/ John P. Hooper
John P. Hooper