# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LOGAN LANDES and JAMES GODDARD,** individually and on behalf of all others similarly situated, | **Case No. 2:17-cv-2264-JFB-SIL** |
| **Plaintiffs,** | |
| **v.** | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND PLAINTIFFS' INCENTIVE AWARD** |
| **SONY MOBILE COMMUNICATIONS (U.S.A.), INC. and SONY ELECTRONICS, INC.,** | |
| **Defendants.** | |

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 3

I.    THE REQUESTED AWARD OF ATTORNEYS' FEES & COSTS IS REASONABLE
UNDER THE LODESTAR AND PERCENTAGE METHODS AND MERITS
APPROVAL ........................................................................................................... 3

    A.   The Requested Fees and Expenses are Reasonable and Appropriate Under the
Percentage of the Fund/Common Fund Method ................................................ 4

    B.   The Requested Fees and Expenses are Reasonable and Appropriate Under the
*Goldberger* Factors .......................................................................................... 5

       i.   Time and Labor Expended ......................................................................... 6

       ii.   Magnitude and Complexities of the Litigation .......................................... 7

       iii.  Risk of Litigation ...................................................................................... 8

       iv.  Quality of Representation .......................................................................... 11

       v.   Requested Fee in Relation to the Value of the Settlement ........................ 11

       vi.  Public Policy Considerations .................................................................... 15

    C.   The Requested Fees and Costs are Reasonable Under a Lodestar Cross-Check ........... 16

    D.   The Class's Reaction to the Fee Request ............................................................ 17

II.   LEAD COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES ........... 18

III.  LEAD COUNSEL'S REQUEST FOR AN INCENTIVE AWARD ........................... 19

IV.  THE REQUESTED FEE -- WHICH DEFENDANTS HAVE AGREED TO PAY --
WAS PROPERLY NEGOTIATED ONLY AFTER THE SETTLEMENT TERMS
WERE AGREED UPON, AND IS REASONABLE ................................................. 21

    A.   Negotiated Fee Agreements Paid By a Defendant Rather than from a Common Fund
Provide the Maximum Benefit to the Class and Are Regularly Encouraged and
Approved by Courts. ......................................................................................... 21

    B.   The Parties Properly Negotiated the fee in this Case With the Assistance of Patrick A.
Juneau Only After an Agreement Was Reached on all Other Settlement Terms. ......... 22

    C.   A Fee Negotiated at Arm's Length under the Mediator's Supervision Weighs Strongly
In Favor of Approval. ........................................................................................ 23

CONCLUSION ................................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abel v. Town Sports Int'l, LLC,*
  2012 U.S. Dist. LEXIS 183444 (S.D.N.Y. Dec. 18, 2012) ........................................................ 3

*Baron v. Commercial & Industrial Bank of Memphis*,
  [1979–80 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 97 (S.D.N.Y. 1979) ...................................... 5

*Bellifemine v. Saofi-Aventis U.S. LLC,*
  No. 07civ2207, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) .......................................... 19, 21

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*,
  480 F. Supp. 1195 (S.D.N.Y. 1979) ........................................................................................... 5

*Blum v. Stenson*,
  465 U.S. 886 (1984) .................................................................................................................. 3

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980) .................................................................................................................. 4

*Central States Southeast and Southwest Areas Health and Welfare Fund v.*
  *Merck-Medco Managed Care, LLC,* 504 F.3d 229 (2d Cir. Oct. 4, 2007) ................................ 4

*Cioffi v. New York Community Bank,*
  456 F. Supp. 2d 202 (E.D.N.Y. 2006) ...................................................................................... 19

*Clark v. Cameron-Brown Co.*,
  [1981 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 98,014 (M.D.N.C. 1981) ................................... 5

*DiSorbo v. City of Schenectady,*
  No. 99-cv-1131, 2004 WL 115009 (N.D.N.Y. Jan.  9, 2004) .................................................. 18

*Dornberger v. Metro. Life Ins. Co.*,
  203 F.R.D. 118 (S.D.N.Y. 2001) ............................................................................................. 21

*Dupler v. Costco Wholesale Corp.*,
  705 F. Supp. 2d 231 (E.D.N.Y. Apr. 15, 2010) ....................................................................... 20

*Evans v. Jeff D.*,
  475 U.S. 717 (1986) ................................................................................................................ 22

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ............................................................................................. 5

*Goldberger v. Integrated Res.*,
  209 F.3d (2d Cir. 2000) .................................................................................................... passim

*Greene v. Emersons, Ltd.*,
  [1987] Fed. Sec. L. Rep. (CCH) ¶ 93,263 (S.D.N.Y. May 20, 1987) ....................................... 5

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ........................................................................................ 22

*In re Acclaim Entertainment, Inc., Secs. Litig.*,
   2007 U.S. Dist. LEXIS 98851 (E.D.N.Y. Oct. 2, 2007) ........................................ 12

*In re Am. Bank Note Holographics*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................. 8

*In re Ampicillin Antitrust Litig.*,
   526 F.Supp. 494 (D.D.C. 1981) .......................................................................... 5

*In re China Sunergy Sec. Litig.*,
   No. 07-cv-7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................... 19

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013) ................................................................ 17

*In re Colgate-Palmolive Co. Erisa Litig.*,
   36 F. Supp. 3d 354 (S.D.N.Y. July 28, 2014) ...................................................... 20

*In re Corel Corp. Inc. Sec. Litig.*,
   293 F. Supp. 2d 484 (E.D. Pa. 2003) ................................................................. 20

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ...................................... 17

*In re Franklin Nat'l Bank Sec. Litig.*,
   [1980 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 97 (E.D.N.Y. 1980) ......................... 5

*In re Fuqi Int'l, Inc. Sec. Litig.*,
   2016 U.S. Dist. LEXIS 20514 (S.D.N.Y. Feb. 19, 2016) ...................................... 12

*In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) .............................................................................. 22

*In re Gilat Satellite Networks, Ltd. Sec. Litig.*,
   No. CV- 02-1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ......................... 19

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................... 8

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)..................... 20

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12-Civ-8557, 2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014) ......... 12

*In re Ikon Office Solutions*,
   194 F.R.D. 166 (E.D. Pa. 2000) ......................................................................... 17

*In re Independent Energy Holdings PLC Sec. Litiq.*,
    302 F. Supp. 2d 180 (S.D.N.Y.2003) ........................................................ 19

*In re Ins. Brokerage Antitrust Litigation*,
    579 F.3d 241 (3d Cir. 2009) ...................................................................... 14

*In re LaBranche Secs. Litig.*,
    Civ. No. 03-CV-8201, slip op. (S.D.N.Y. Jan. 22, 2009) ......................... 12

*In re Marsh  ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................... 4, 5, 10

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ........................................................ 11, 15

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................. 11

*In re New York City Municipal Sec. Litig.*,
    Fed. Sec. L. Rep. (CCH) ¶ 91 (S.D.N.Y. 1984) ......................................... 5

*In re Nortel Networks Corp. Sec. Litig*,
    539 F. 3d 129 (2d Cir. 2008) .................................................................... 16

*In re Prudential Sec. Ltd. P'ships Litig.,*
    958 F. Supp. 410 (S.D.N.Y. 1997) .............................................................. 9

*In re Rite Aid Corp Securities Litig.*,
    396 F.3d 294 (3d Cir. 2005) ................................................................. 6, 18

*In re Rite Aid Corp. Sec. Litig.*,
    362 F. Supp. 2d 587 (E.D. Pa. 2005) ....................................................... 17

*In re Telectronics Pacing Sys. Accufix Atrial "J" Lead Products Litig.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) ....................................................... 8

*In re Telik, Inc. Sec. Litig.,*
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ......................................................... 8

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) .............................................................. 8

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ....................................................... 15

*Jermyn v. Best Buy Stores, L. P.*,
    2012 U.S. Dist. LEXIS 90289 (S.D.N.Y. June 27, 2012) .......................... 16

*Luessenhop v. Clinton Cnty.,*
    558 F. Supp. 2d 247 (N.D.N.Y. 2008) ...................................................... 18

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 358 (S.D.N.Y. 2002) ............................................................... 5, 11, 17

*Maywalt v. Parker & Parsley Petroleum Co.*,
   963 F. Supp. 310 (S.D.N.Y. 1997) ............................................................................ 5

*McBean v. City of New York*,
   233 F.R.D. 377 (S.D.N.Y. 2006) ...................................................................... 22, 23

*McCoy v. Health Net, Inc.*,
   569 F. Supp. 2d 448 (D.N.J. 2008) ....................................................................... 14

*McDaniel v. Cnty. of Schenectady*,
   595 F.3d 411 (2d Cir. 2010) ................................................................................... 4

*Quaratino v. Tiffany & Co.*,
   166 F.3d 422 (2d Cir. 1999) ................................................................................... 4

*Sheppard v. Consol. Edison Co. of New York*,
   Case No. 94-cv-0403(JG), 2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002) ............... 15

*Slomovics v. All for a Dollar, Inc.*,
   906 F. Supp. 146 (E.D.N.Y. 1995) ........................................................................ 21

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ............................................................... 5, 21

*Suffolk v. Long Island Lighting Co.*,
   907 F.2d 1295 (2d Cir. 2990) .................................................................................. 4

*Taft v. Ackermans*,
   2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) ....................................... 12

*Teachers' Ret. Sys. v. A.C.L.N. Ltd.*,
   2004 U.S. LEXIS 8608 (S.D.N.Y. 2004) ................................................................ 9

*U.S. v. Vilus*,
   419 F. Supp. 2d 293 (E.D.N.Y. 2005) ................................................................... 10

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005) ............................................................................... 14

*Velez v. Novartis Pharm. Corp.*,
   04civ09194, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ............................ passim

*Wal-Mart Stores, Inc. v. Visa U.S.A, Inc.*,
   396 F.3d 96 (2d Cir. 2005) ...................................................................................... 4

*Zinman v. Avemco Corp.*,
   [1978 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,325 (E.D.Pa. 1978) ..................... 5

**Statutes**

California's False Advertising Law, Cal. Bus. & Prof. Code§§17500 ........................................... 1

California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 ..................................... 1

Consumer Legal Remedies Act, Cal. Civil Code §§ 1750 ............................................................ 1

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 ........ 1

**Rules**

Rules 23 ....................................................................................................................................... 1

Pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Class Counsel, Levi & Korsinsky LLP ("L&K") respectfully submits this Memorandum of Law in support of their Unopposed Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Award for Plaintiffs.[1]  Class Counsel moves this Court for entry of the [Proposed] Order, submitted herewith, awarding: (i) attorneys' fees in the amount of $984,153, or approximately 16% of the Settlement value (as defined herein) in the above-captioned consumer class action (the "Action"); (ii) reimbursement of $13,846.34 in reasonable and necessary expenses that were incurred in connection with prosecuting this Action; and (iii) and an Incentive Award of $1,000 for each Plaintiff.  Defendants Sony Electronics, Inc. and Sony Mobile Communications (U.S.A.), Inc. (collectively, "Defendants") do not oppose this motion.

## **INTRODUCTION**

In this Action, Plaintiffs Logan Landes ("Landes") and James Goddard ("Goddard" and, collectively, "Plaintiffs") asserted claims on behalf of a nationwide class, with a California subclass and an Illinois subclass, for violations under California's Consumer Legal Remedies Act, Cal. Civil Code §§ 1750, et seq. ("CLRA"), California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq. ("FAL"), California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. ("UCL"), Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, et seq. ("ICFA"), as well as claims of breach of express warranty, breach of implied warranty, and unjust enrichment.  Plaintiffs allege that Defendants deceptively advertised its Mobile Devices as being "waterproof."

---

[1] Unless otherwise stated, capitalized terms have the same meaning as set forth in the Settlement Agreement dated July 12, 2017, filed with the Court on July 14, 2017 (Dkt. No. 16-2).

Through the efforts of Plaintiffs and Class Counsel, Class Counsel negotiated a settlement providing for: (1) a warranty extension for Class Members where there is damage resulting from water intrusion, including where the applicable warranty has already expired; (2) changes to Defendants' packaging, labeling and advertising; and (3) reimbursement to Class Members who previously had timely claims for water-related damage to their Mobile Device but were denied 50% of the MSRP for the affected Mobile Device. The Settlement is an excellent result, particularly when viewed in light of the considerable risks and uncertainties posed by further litigation and the challenges in potentially conducting discovery abroad, as discussed further in Plaintiffs' Memorandum of Law in Support of Joint Motion for Final Approval of Class Settlement.

The substantial and certain recovery obtained for the Class was achieved through the efforts, skill, experience, and effective advocacy of Class Counsel, only after a thorough investigation of the facts underlying the allegations in the Complaint and one year of protracted negotiations.

The reaction of the Class strongly supports the requested fee. Pursuant to the Court's August 2, 2017 Order (the "Preliminary Approval Order"), Heffler Claims Group, LLC, the Claims Administrator, employed direct notice, traditional notice, digital notice, and social and mobile media notice to an estimated 92% of the targeted Class members. *See* Declaration of Jeanne C. Finegan, APR at ¶ 4. The Notice of Proposed Settlement (the "Notice") and the Claim form for Payment (the "Claim Form") (collectively the "Notice Packet") specifically advised Class Members that Class Counsel intended to apply to the Court for an award of attorneys' fees and expenses not to exceed $1,000,000.00 and an incentive award of up to $1,000 for each Plaintiff, totaling $2,000, in recognition of their valuable services to the Class. The deadline to request to be

2

excluded from the Settlement and file objections to the Settlement is November 1, 2017. To date, only one objections has been filed with respect to any aspect of the Settlement, but no objections have been received that relate to the request for fees and reimbursement of expenses, or the request for Plaintiffs' Incentive Award.

As set forth below, Plaintiffs' requested attorneys' fees and costs and requested incentive awards are fair and reasonable.  Accordingly, Plaintiffs respectfully request that the Court grant this instant motion in its entirety.

<u>**ARGUMENT**</u>

**I.   THE REQUESTED AWARD OF ATTORNEYS' FEES & COSTS IS REASONABLE UNDER THE LODESTAR AND PERCENTAGE METHODS AND MERITS APPROVAL**

The party seeking attorneys' fees "bears the burden of demonstrating that its requested fees are reasonable." *Abel v. Town Sports Int'l, LLC,* 2012 U.S. Dist. LEXIS 183444, at *88 (S.D.N.Y. Dec. 18, 2012) (*citing Blum v. Stenson*, 465 U.S. 886, 897 (1984)). There are two common methods in which courts determine whether a fee is reasonable: percentage and lodestar methods. In the percentage method, the "court sets some percentage of the recovery as a fee." *Goldberger v. Integrated Res.*, 209 F.3d, at *47 (2d Cir. 2000). The lodestar method uses "a presumptively reasonable fee, which is computed by multiplying the number of hours each attorney has expended by the hourly rate of attorneys of similar skill charge in the area; then it applies to that figure a multiplier which factors in the litigation risks and other considerations." *Velez v. Novartis Pharm. Corp.,* 04civ09194, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010).

Courts in the Second Circuit generally express a preference for the percentage fund method (also known as the common fund method), along with a lodestar cross-check to ensure the reasonableness of the requested percentage. *Velez,* 2010 WL 4877852, at *21; *see also Wal-Mart*

*Stores, Inc. v. Visa U.S.A, Inc.,* 396 F.3d 96, 122 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interest of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."); *Goldberger,* 209 F.3d at 47-50; *McDaniel v. Cnty. of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010).

### A. The Requested Fees and Expenses are Reasonable and Appropriate Under the Percentage of the Fund/Common Fund Method

"It is by now well established that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *see also Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, LLC,* 504 F.3d 229, 249 (2d Cir. Oct. 4, 2007). The percentage of the fund method can be used even where attorneys' fees are also awardable pursuant to statutory fee-shifting provisions. *Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1397 (2d Cir. 2990) (awarding fees using common fund rather than fee-shifting provision of RICO Act). It is also true that principles underlying the lodestar methodology in fee-shifting cases call generally for approval of a full lodestar fee award when plaintiffs' counsel act as private attorneys general in enforcing important public rights and prevail. *Quaratino v. Tiffany & Co.,* 166 F.3d 422 (2d Cir. 1999) (awarding fee based on lodestar far exceeding damages award to plaintiff).

"The federal courts have established that a standard fee in complex class action cases like this one, where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit." *Velez,* 2010 WL 4877852, at *21; *accord In re Marsh ERISA Litig.,* 265 F.R.D. 128, 149 (S.D.N.Y. 2010) ("Traditionally, courts in this Circuit and

elsewhere have awarded fees in the 20%-50% range in class actions.").[2]  "District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." *Velez,* 2010 WL 4877852, at *21.  This is especially true where the fund is not a "mega recovery." *See In re Marsh ERISA Litig.,* 265 F.R.D. at 149.

To account for attorneys' fees, Class Counsel are seeking $984,153 or approximately 16% of the Settlement Fund. This percentage is consistent with many fee-only awards granted in similar class actions with funds of similar size, and not "mega recoveries."  Class Counsel's request is also supported by the *Goldberger* factors generally considered in assessing the reasonableness of a common fund or lodestar class action, as illustrated below.

### B.  The Requested Fees and Expenses are Reasonable and Appropriate Under the *Goldberger* Factors

Regardless of whether the common fund or lodestar method is used, courts are guided by the following factors: "(1) time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested

---

[2] *See also e.g., In re New York City Municipal Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 91, 419, at 98,085 (S.D.N.Y. 1984) (fees and disbursements: almost 33% of $13,450,000 settlement); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fees of 33.3% of 11.5 million settlement fund); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (33.33% awarded); *Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310, 313 (S.D.N.Y. 1997) (33.4 % of settlement); *In re Franklin Nat'l Bank Sec. Litig.,* [1980 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,571, at 97,988 (E.D.N.Y. 1980) (Chief Judge Weinstein awarded plaintiffs' counsel 34% of the class recovery); *Clark v. Cameron-Brown Co.*, [1981 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 98,014 (M.D.N.C. 1981) (35% of $2.85 million settlement); *Baron v. Commercial & Industrial Bank of Memphis*, [1979–80 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,132, at 96,244 (S.D.N.Y. 1979) (36% of $900,000 settlement); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188–89 (W.D.N.Y. 2005) (awarding 38.26%); *In re Ampicillin Antitrust Litig.*, 526 F.Supp. 494 (D.D.C. 1981) (45% of $7.3 million settlement fund awarded in fees and expenses); *Greene v. Emersons, Ltd.*, [1987] Fed. Sec. L. Rep. (CCH) ¶ 93,263 (S.D.N.Y. May 20, 1987) (46.2% of common fund awarded as fees and expenses); *Zinman v. Avemco Corp.*, [1978 Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,325, at 93,092–93 (E.D.Pa. 1978) (50% of $260,000 settlement awarded); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195 (S.D.N.Y. 1979) (53% of settlement fund awarded).

fee in relation to the settlement; and (6) public policy considerations." *Goldberger,* 209 F.3d at 50. The *Goldberger* factors "need not be applied in a formulaic way" because each case is different and "in certain cases, one factor may outweigh the rest." *Rite Aid,* 396 F.3d at 301. Class Counsel respectfully submits that an analysis of the foregoing *Goldberger* factors, as well as an analysis under the percentage-of recovery and lodestar methods, demonstrates that the present fee and expense request is reasonable and appropriate and should be approved by the Court.

### i.   Time and Labor Expended

A review of the time and effort expended by Class Counsel establishes that the requested fee is justified. For the past year, Class Counsel has devoted a significant amount of time and resources to the research, investigation and prosecution of this Action, resulting in an excellent recovery for the Class without the substantial expense, risk and delay of continued litigation. This Settlement was reached at a point when Class Counsel had committed extensive resources to understanding the facts and challenges posed by the claims and defenses that could impact any recovery for the Class.

Class Counsel has spent approximately 1,160 hours researching, investigating, and prosecuting this case on behalf of the Class for an aggregate lodestar of approximately $669,478.25, and have incurred $13,846.34 in expenses. *See* Declaration of Nancy A. Kulesa ("Kulesa Dec.") filed concurrently herewith, ¶¶11, 13. As detailed in the Final Approval Motion and accompanying papers, during the course of this Action, Class Counsel: (a) researched the facts and claims that formed the basis of the initial complaint; (b) sent a demand letter pursuant to the CLRA providing notice of the potential claims; (c) conducted an extensive investigation into the underlying facts, including an interview of the Director of Sony Customer Services for the Americas; (d) thoroughly researched the law pertinent to the Class members' claims and the

Defendants' potential defenses; (e) engaged in informal settlement negotiations; (f) reached an agreement in principal to settle the litigation as to Defendants; (g) thoroughly reviewed and analyzed a substantial volume of discovery materials provided by Defendants; (h) retained and consulted an expert on damages; (i) sought and evaluated competitive bids from multiple claims administrators for administration of this Settlement; (j) prepared and filed the motion for preliminary approval and stipulation of settlement, which was approved by this Court on August 3, 2017; (k) prepared and oversaw the publication of the Notice in *National Geographic Magazine* and *ESPN Magazine* and elsewhere; and (l) oversaw the settlement administration process, including, inter alia, mailing of the Notice and Claim Form, supplying the Notice and Claim Form to the Class, tracking requests for exclusion, and assisting consumers with questions regarding the criteria for recovery and the procedure for filing claims. Additionally, the parties participated in several meetings and telephonic conferences and attended an in-person mediation before Patrick A. Juneau, a highly-skilled class action mediator, on March 17, 2017. *See* Kulesa Decl. at ¶5. While this mediation was not successful on this date, the parties met subsequently, over a period of six months, to negotiate the terms of the settlement presently before the Court. *Id.*   The parties then reviewed the terms of the settlement with Patrick A. Juneau.  Accordingly, this factor supports approval of the Fee and Expense requested.

### ii.   Magnitude and Complexities of the Litigation

Consideration of the second *Goldberger* factor reveals that the magnitude and particular legal complexities of this consumer class action support Class Counsel's fee request. "Most class actions are inherently complex and settlement avoids the costs, delays, and a multitude of other problems associated with them." *In re Telectronics Pacing Sys. Accufix Atrial "J" Lead Products Litig.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (citation omitted).

This case was not a simple case, but involved complex and unique issues of fact and law including the science behind the design and manufacturing of the Mobile Devices and whether they were "waterproof" as advertised. Consumer perceptions and reactions to the labeling and representations of the Mobile Devices, as well as damages calculations attributable to the challenged advertising, raised additional complex issues. Had the case proceeded to trial, the complex scientific issues raised by the Plaintiffs' claims would have been at issue, and Plaintiffs would inevitably have to confront a variety of risks resulting in potential loss of the case. Taken together, the foregoing factors regarding the magnitude and complexity of this consumer class action support the conclusion that the requested fee is reasonable and fair.

### iii.  Risk of Litigation

The Second Circuit "has identified the risk of success as perhaps the foremost factor to be considered in determining" reasonable attorneys' fees. *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, at *592  (S.D.N.Y. 2008) ("Courts have repeatedly recognized 'that the risk of the litigation' is a pivotal factor in assessing the appropriate attorneys' fees to award plaintiffs' counsel in class actions."). Courts in this Circuit have long recognized the risk associated with a case bears heavily upon the determination of an appropriate fee award. *In re Am. Bank Note Holographics,* 127 F. Supp. 2d 418, 432-33 (S.D.N.Y. 2001) (It is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award."). The risk of non-payment is especially high in class actions with contingent fee arrangements, like here. *In re Warner Commc'ns Sec. Litig*., 618 F. Supp. 735, 747 (S.D.N.Y. 1985) all' d, 798 F.2d 35 (2d Cir. 1986) ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award"); *Teachers' Ret. Sys. v. A.C.L.N. Ltd.,* 2004 U.S. LEXIS 8608 (S.D.N.Y. 2004) ("Little

about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."); *In re Prudential Sec. Ltd. P'ships Litig.,* 958 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

Although Defendants did not file a motion to dismiss, even if Plaintiffs survived dismissal, absent the Settlement, the litigation would have been expensive and time consuming, as Defendants would have vigorously opposed Plaintiffs' motion for class certification, undoubtedly filed a motion for summary judgment, and some of the relevant discovery and key witnesses are located in Japan. Thus, briefing and discovery—including expert discovery—to resolve those motions would have entailed further substantial time, effort, and costs to the Class. The claims brought by Plaintiffs themselves contain significant risk in: (i) ascertaining who purchased a Mobile Device and would be a member of the class; and (ii) ascertaining which Mobile Devices were or were not "waterproof."

Further, assuming that Plaintiffs survived Defendants' motion for summary judgment, and assuming a class was certified, trial preparation would have required many additional hours of work at great expense. The trial in this case would be very complicated for jurors given the complex design and manufacturing issues and whether a reasonable consumer would have been misled by the Defendants' advertising.  Litigation also bears the risk of an appeal, which would further delay and diminish the Class Members' receipt of the benefits of this Action.

In addition to the risks regarding class certification and the merits, there also existed significant risk that Class Counsel, despite committing substantial resources to this matter, would not receive any compensation, as their payment was entirely contingent upon Plaintiffs prevailing. From the beginning, Class Counsel understood that they were embarking on a complex, expensive

9

and lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require. In undertaking that responsibility, Class Counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Action and that funds were available to compensate staff, experts, and to pay for the considerable out-of-pocket costs which a case such as this entails. Because of the nature of a contingent practice whose cases are predominantly complex, lasting several years, not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. The substantial risk of non-recovery inherent in contingent class actions is well documented in New York.

> Moreover, in addition to the risks discussed above, Plaintiffs' Counsel had to contend with the traditional risks inherent in any contingent litigation. [Class] Counsel accepted this case on a contingent basis, with the attendant risk that they would receive nothing at all. There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk. Cf. Blum v. Stenson, 465 U.S. 886, 902 (1984) (Brennan, J., concurring) ("[T]he risk of not prevailing, and therefore the risk of not receiving any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee."); Gaskill v. Gordon, 160 F.3d 361, 363 (7th Cir. 1998) ("Because they shift part of the risk of loss from client to lawyer, contingent-fee contracts usually yield a larger fee in a successful case than an hourly fee would."). The risk factor, then, strongly supports the requested fee.

*In re Marsh ERISA Litig.,* 265 F.R.D. at 148. "[A]n attorney will therefore require a higher contingency rate to compensate for the fact that not all of the cases he works will result in remuneration." *U.S. v. Vilus,* 419 F. Supp. 2d 293, 299 (E.D.N.Y. 2005).

In light of the risks of litigation, this factor weighs strongly in favor of approval of the requested attorneys' fees.

### iv.   Quality of Representation

In evaluating the fourth *Goldberger* factor, the "quality of representation," courts in the Second Circuit "review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008). Class Counsel practices extensively in complex federal civil litigation, including the litigation of consumer class actions, and has successfully litigated these types of actions in courts throughout the country. *See* Kulesa Dec., Ex. 1 (firm resume).  To achieve the Settlement in this Action, despite the Defendants' strong arsenal of possible arguments on a motion to dismiss, summary judgment, class certification and trial, took a great deal of legal acumen and negotiating skill. Here, the Defendants were represented by King & Spalding LLP and Reed Smith LLP, exceptionally skilled firms with a reputation for vigorous advocacy in the defense of complex civil cases. *See Maley*, 186 F. Supp. 2d at 373 (noting that the quality and vigor of opposing counsel is also a significant consideration when determining the quality of services provided by plaintiffs' counsel); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998) (same). Thus, Class Counsel was faced with opposing counsel from an all-star team of sophisticated and experienced defense counsel.

This Settlement therefore represents a highly favorable result for the Class, one that is attributable to the diligence, determination, hard work and reputation of Class Counsel, who developed, litigated and successfully negotiated the settlement of this action Across from a highly skilled and determined defense team. Accordingly, the quality of representation factor weighs heavily in favor of supporting Class Counsel's fee request.

### v.   Requested Fee in Relation to the Value of the Settlement

The fee requested in this case—$984,153, or approximately 16% of the proposed Settlement Fund—is reasonable and falls in line with (and indeed, well under) fee awards in comparable actions in this Circuit. *See, e.g., In re Fuqi Int'l, Inc. Sec. Litig.*, 2016 U.S. Dist. LEXIS 20514, at *28 (S.D.N.Y. Feb. 19, 2016) (approving attorneys' fees of 33% of $7.5 million settlement fund in securities litigation prior to motion to dismiss); *Maley*, 186 F. Supp. 2d at 369 (approving 33 1/3% of $11.5 million securities fraud class action settlement while motions to dismiss pending); *In re Acclaim Entertainment, Inc., Secs. Litig.*, 2007 U.S. Dist. LEXIS 98851, at *16 (E.D.N.Y. Oct. 2, 2007) (holding that attorneys' fees request of 30% of $13,650,000 settlement fund "is consistent with awards in similarly complex cases in this jurisdiction"); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557, 2014 U.S. Dist. LEXIS 177175, at *33-34, 46 (S.D.N.Y. Dec. 19, 2014) ("the 33 1/3% fee requested by Lead Counsel in this Action is consistent with percentage fees awarded in this Circuit and nationwide."); *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) (30% of fee award of $15.175 million settlement fund of cash and stock); *In re LaBranche Secs. Litig.*, Civ. No. 03-CV-8201, slip op. (S.D.N.Y. Jan. 22, 2009) (30% fee awarded in $13 million settlement).

In this litigation, the parties reached a nationwide settlement encompassing certain Xperia model smartphones. Approximately 807,569 devices that are included in the settlement were sold during the Class Period.   As described herein, this Settlement provides substantial relief to the Class.  The monetary benefit created as a result of this litigation has a total approximate value of $6,241,611 ***not*** including; (i) the cost of administration and notice paid by Defendants; (ii) the benefit of  future repairs paid for by Sony and not the Class under the extended warranty component of the Settlement; and (iii)  the value of the injunctive relief obtained on behalf of the class (*see infra*) and can be calculated or evaluated as follows:

**Warranty:**

Sony's records reveal that there were approximately 807,569 devices sold that are the subject of this litigation.  Sony's warranty records also reveal that approximately 40,350 of the devices were in warranty on the effective settlement date of August 3, 2017 and eligible for a one year warranty extension.  Therefore, 767,219 devices were out of warranty as of the effective date of the settlement and thus, eligible for a six month warranty extension.   In order to provide a very conservative valuation, only warranties marketed by Sony were used in the valuation of the settlement.  Plaintiffs' expert used $12.75 as the value of the full year warranty and $6.37 as the value of the six month warranty to arrive at a valuation of $5,401,611 worth of recovery to the class for the value of the warranty extension ***alone***.

**Warranty Repairs:**

The valuation of the settlement does not include the cost of warranty repairs that will now be taken on by Sony rather than the Class Members, which may be substantial.  This is an additional factor that increases the valuation of the settlement.

**Reimbursement of MSRP:**

Assuming the incident rate for water related claims is approximately 5% on average, the total number of Mobile Devices included in the Class that may claim water intrusion damages is approximately 40,000.  If the average return per valid claim is $300.00 per claim and, assuming an  approximately 7% claims rate, the recovery for the Class based on reimbursement of half of the MSRP alone for Class Members would be about $840,000.[3]

**Administration of Expenses:**

---

[3] The claims rate is based on the ease of filing a claim in this litigation.  Here, there is a streamlined process with direct mailing of claim forms to class members and a simplified claim form for those who had their in-warranty claims for water related damages denied.

The administrative expenses of the settlement, all to be paid by the Defendant are critical since the Settlement cannot be effectuated without this process -- therefore this a direct benefit to the Class.  Significantly, the Class benefits are not diminished by the administrative expenses because Defendants have agreed to pay these amounts in addition to the settlement benefits. These benefits are calculated as part of the value of the benefit conferred by the settlement.  *Varacallo v. Massachusetts Mut. Life Ins.* Co., 226 F.R.D. 207, 250 (D.N.J. 2005) (the direct benefit of providing claims administration in addition to and apart from other benefits is included in calculating the overall benefit to the Class); see also *In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241, at *283-84 (3d Cir. 2009). Thus, the administrative expenses increase the valuation of the settlement value even further.

**Injunctive Relief:**

Although injunctive relief does not lend itself to precise mathematical calculations, courts have often adopted the fair value of injunctive relief proposed by the parties when estimating the total value of settlements and the appropriate percentage thereof for attorneys' fees. *See McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 478 (D.N.J. 2008) (noting that "[t]he parties fairly valued the injunctive relief at between $26 and $38 million," and determined "that the requested attorneys' fee was reasonable"); *Sheppard v. Consol. Edison Co. of New York*, Case No. 94-cv-0403(JG), 2002 WL 2003206, at *7 (E.D.N.Y. Aug. 1, 2002) (considering the "estimated $5 million in non-monetary, injunctive relief part of the total settlement in evaluating the reasonable attorneys' fees").

The settlement of this class action provides valuable injunctive relief to the Class. Class Members are no longer exposed to allegedly deceptive and misleading marketing; they benefit from the continued use of new and updated packaging and labeling; and benefit from the Defendants' promise that such labeling changes shall remain in effect. Because of this relief, Class

14

Members (and future consumers of Sony) have the ability to make a more sound and informed decision when purchasing the Mobile Devices.

The value of injunctive relief should be considered in addition to Class Counsel's lodestar. Accordingly, this Settlement provides significant and concrete relief to the Class, a factor that further supports Class Counsel's application for attorneys' fees and costs.

### vi. Public Policy Considerations

Class Counsel respectfully submits that public policy considerations—the sixth and final *Goldberger* factor—support Class Counsel's fee request of approximately 16% of the Settlement Fund. *See Goldberger*, 209 F. 3d at 50. Courts in the Second Circuit have held that "[p]ublic policy concerns favor the award of reasonable attorneys' fees in class action securities litigation." *In re Merrill Lynch,* 249 F.R.D. at 141-42. "In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." *In re WorldCom, Inc. Sec. Litig*., 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005).

This Settlement promotes the public policy of protecting consumers throughout the United States.  The alleged violations of these consumer protection acts are precisely the type of conduct that is not likely to be addressed via individual lawsuits, but that are best resolved via a class action with far reaching and meaningful benefits to a large number of people, including injunctive relief that halts and/or prevents the wrongful conduct. This Settlement, while providing substantial injunctive relief to potentially thousands of Class Members, provides relief that would likely never be obtained absent a class action, including labeling changes. Moreover, these benefits are available now, rather than after years of litigation as the labeling changes have already been made by the Defendants. Thus, the public policy factors weigh in favor of approving Class Counsel's

requested attorneys' fees and expenses. *See Jermyn v. Best Buy Stores, L. P.*, 2012 U.S. Dist. LEXIS 90289, at *12 (S.D.N.Y. June 27, 2012) (noting, in evaluating the public policy *Goldberger* factor, that Class Counsel's efforts improved the experience of consumers nationwide).

Further, the positive public policy impact of the settlement necessitates a lodestar multiplier. *See In re Nortel Networks Corp. Sec. Litig*, 539 F. 3d 129, 132 (2d Cir. 2008) (the district court found that a 2x multiplier properly balanced the policy goals of encouraging counsel to pursue meritorious litigations while protecting against excessive fees). Where, as here, Class Counsel assumed substantial risk in undertaking this action and achieved a significant benefit to the Class, an important public policy is served by awarding attorneys' fees that adequately compensate counsel.

### C.  The Requested Fees and Costs are Reasonable Under a Lodestar Cross-Check

"Although lodestar analysis is no longer the preferred method of calculating attorneys' fees in connection with class action settlements, if the percentage of fund figure compares favorably with a lodestar that uses reasonably hourly rates and a reasonable multiplier, it tends to validate the percentage of funds figure." *Velez,* 2010 WL 4877852, at *22.

Here, a lodestar cross-check confirms the reasonableness of the requested attorneys' fee. Under Class Counsel's applicable billable rates at approximately 1,160 total hours, the requested $984,153 attorney fee represents a lodestar multiplier of approximately 1.47.  Class Counsel are therefore requesting little more than the value of the time they spent litigating the Action. Such a lodestar multiplier is well below the range commonly approved by district courts in this Circuit. *See, e.g., Maley*, 186 F. Supp. 2d at 369 (noting that 33 1/3% of $11.5 million settlement "will amount to a multiplier of 4.65, well within the range awarded by courts in this Circuit and courts throughout the country."); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 374

(S.D.N.Y. 2013) (approving 2.8 lodestar multiplier); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *54 (S.D.N.Y. July 27, 2007) (holding that lodestar multiplier of 2.48 "is within the range found to be reasonable by courts that have used lodestar cross checks in complex class actions with outstanding results in the fact of substantial risks) (*citing In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005)) (multiplier of 6.96). Indeed, courts in the Second Circuit routinely recognize that a similar multiplier is a strong indication of the reasonableness of the proposed fee.

The lodestar/multiplier analysis is to be used merely as a cross-check on reasonableness, and should not form the starting point of the Court's review. Otherwise, the Court's approach would undermine the principles supporting the percentage approach and encourage litigants to needlessly build lodestar and potentially discourage timely, yet meaningful settlements. *See In re Ikon Office Solutions,* 194 F.R.D. 166, at *196 (E.D. Pa. 2000) "The court will not reduce the requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request of thirty percent.").

### D.  The Class's Reaction to the Fee Request

The positive reaction of the Class following the dissemination of the Court-prescribed Notice and Claim form and publication of Summary Notice, which advised the Class that Class Counsel would apply to the Court for an award of attorneys' fees and expenses not to exceed $1,000,000.00, further supports Class Counsel's fee request. As of the filing of this Motion, approximately 92% of the Class received notice.  Specifically, Notices were sent via U.S. Mail to 1,351 Class Members and 24 were emailed to Class Members. Notice was published in *National*

17

*Geographic Magazine* and *ESPN Magazine,* on social media, the web, and via a toll free information line. To date, not a single objection nor request for exclusion has been filed challenging Class Counsel's fee and reimbursement request.[4] Although the November 1, 2017 deadline to object to any aspect of the Settlement, including the request for fees and expenses, has not yet passed, Class Members' lack of objection supports Class Counsel's fee and expenses request. "[S]uch a low level of objection is a 'rare phenomenon.'" *In re Rite Aid Corp Securities Litig.*, 396 F.3d 294, 305 (3d Cir. 2005)(citation omitted). Accordingly, the Class's reaction to the Settlement evidences the inherent fairness of the fee request.

## II.  LEAD COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES

"It is well settled that counsel who create a common fund . . . are entitled to the reimbursement of [all reasonable] litigation costs and expenses . . . . " *Velez,* 2010 WL 4877852, at *23.  Compensable items include, among others, photocopying, travel expenses, telephone cots, postage, deposition costs, service of process fees, and filing fees. *See Luessenhop v. Clinton Cnty.,* 558 F. Supp. 2d 247, 271-72 (N.D.N.Y. 2008); *DiSorbo v. City of Schenectady,* No. 99-cv-1131, 2004 WL 115009, at *5 (N.D.N.Y. Jan.  9, 2004) (awarding airfare and hotel expenses); *Cioffi v. New York Community Bank,* 456 F. Supp. 2d 202, 217 (E.D.N.Y. 2006) (awarding filing fees, service costs, photocopying, costs of depositions, and subpoena fees).  Although the contemplated attorneys' fees of $984,153  are not inclusive of expenses, it should be noted that the expense reimbursement of $13,846.34 is also reasonable, as these are the types of expenses customarily charged in this type of litigation and were "incidental and necessary to the representation" *In re Independent Energy Holdings PLC Sec. Litiq.*, 302 F. Supp. 2d 180, 183 (S.D.N.Y.2003); *see also*

---

[4] An objection was filed on September 25, 2017 challenging the Settlement. Dkt. No. 26. The objection did not object to the attorneys' fee or Plaintiffs' incentive award.

*In re China Sunergy Sec. Litig.*, No. 07-cv-7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011). Thus, it is appropriate to consider the reasonableness of reimbursement of those expenses.

### III. LEAD COUNSEL'S REQUEST FOR AN INCENTIVE AWARD

"In the Second Circuit, 'the Courts have, with some frequency, held that a successful Class action plaintiff, may, in addition to his or her allocable share of the ultimate recovery, apply for and, in the discretion of the Court, receive an additional award, termed an incentive award.'" *Bellifemine v. Saofi-Aventis U.S. LLC,* No. 07civ2207, 2010 WL 3119374, at *7 (S.D.N.Y. Aug. 6, 2010). Such awards are an important way of "reimbursing class representatives who take on a variety of risks and tasks when they commence representative actions, such as complying with discovery requests and often must appear as witnesses in the action." *Velez v. Novartis Pharm. Corp.,* 04civ09194, 2010 WL 4877852, at *25 (S.D.N.Y. Nov. 20, 2010). Indeed, courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Gilat Satellite Networks, Ltd. Sec. Litig.*, No. CV- 02-1510, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007) (awarding plaintiffs $300 per hour for their time spent managing the case). "Incentive awards are not uncommon in class action litigation ... particularly where ... a common fund has been created for the benefit of the entire class." *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 498 (E.D. Pa. 2003) (citation and internal quotes omitted) (alterations in original). "These awards are generally in keeping with the public policy concerns cited in class actions." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *4 (C.D. Cal. June 10, 2005).

Plaintiffs request $1,000 each as incentive awards for bringing, prosecuting and serving as plaintiffs in this Action. The Notice informed Class members that Plaintiffs would seek such reimbursement and no objections were filed. Such an award is reasonable because the Plaintiffs: (1) agreed to serve as representatives of the Class; (2) are willing, able and ready to perform all of the duties and obligations of representatives of the Class, including but not limited to, being involved in discovery and fact finding; (3) have read the pleadings in the Action or have had the contents of such pleadings described to them; (4) are familiar with the results of the fact-finding undertaken by Plaintiffs' Class Counsel; (5) have been kept apprised of settlement negotiations among the Parties, and have either read the Settlement Agreement, including the exhibits annexed there, or have received a detailed description of it from Plaintiffs' Class Counsel and have agreed to its terms; and (6) have consulted with Plaintiffs' Class Counsel about the Action and the obligations imposed on the representatives of the Class. *See In re Colgate-Palmolive Co. Erisa Litig.*, 36 F. Supp. 3d 354, 354 (S.D.N.Y. July 28, 2014) (providing a $5,000 incentive award for each of six named plaintiffs where those plaintiffs participated in the litigation, reviewed filings and "communicated regularly with Class Counsel"); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245 (E.D.N.Y. Apr. 15, 2010) (granting a $5,000 incentive award for a named plaintiff who "reviewed the complaint in the California Action and discussed the facts with counsel"); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 264 (S.D.N.Y. 2003) (awarding the class representative a $15,000 incentive award); *Dornberger v. Metro. Life Ins. Co*., 203 F.R.D. 118 (S.D.N.Y. 2001) (reviewing case law supporting awards from $2,500 to $85,000).

An incentive award of $1,000 for each Plaintiff is justified in light of Plaintiffs' willingness to devote their time and energy to this litigation, and are reasonable in light of the overall benefits conferred upon the Class. *Bellifemine,* 2010 WL 3119374, at *7.

## IV. THE REQUESTED FEE -- WHICH DEFENDANTS HAVE AGREED TO PAY -- WAS PROPERLY NEGOTIATED ONLY AFTER THE SETTLEMENT TERMS WERE AGREED UPON, AND IS REASONABLE

Only after agreement was reached as to the terms of the Settlement benefiting the Class, Class Counsel negotiated with Counsel for Defendants regarding the payment of attorneys' fees and expenses, so that the recovery of the Class would not be reduced by payment of attorneys' fees. After extensive arm's length negotiations with the assistance of mediator Patrick A. Juneau, Defendants agreed to pay an award of fees and expenses of up to $1 million. As set forth herein, this negotiated fee to be paid by Defendants in no way diminishes the recovery for the Class and is reasonable under both the loadstar and percentage methods. Indeed, the reasonableness of the fee is underscored by the fact that the single objection received did not take issue with the amount of the fee award being sought. That fact alone strongly evidences that the fee request is fair and reasonable. *See Slomovics v. All for a Dollar, Inc.,* 906 F. Supp. 146. 150 (E.D.N.Y. 1995) (internal citations omitted).

### A. Negotiated Fee Agreements Paid By a Defendant Rather than from a Common Fund Provide the Maximum Benefit to the Class and Are Regularly Encouraged and Approved by Courts.

Negotiated fee agreements between plaintiffs and defendants in consumer class actions can provide a greater benefit to the class than a common fund and are encouraged, particularly where, as here, the attorneys' fees are negotiated separately from the settlement and after all terms of the settlement on behalf of the class have been agreed to by the parties. *See, Evans v. Jeff D.,* 475 U.S. 717, 734-38 n.30 (1986) (indicating that parties may negotiate fees as well as settlement).

In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the United States Supreme Court held that negotiated, agreed-upon attorneys' fee provisions are the "ideal" toward which the parties should strive. "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."

Moreover, the attorneys' fees in this case will not be awarded from a "common fund" created for the class as a whole. Here, Defendants have agreed to pay the negotiated fee in addition to the class recovery. Thus regardless of the size of the fee award, class members who apply for recovery under the terms of the Settlement will receive the same benefit; the fee award does not reduce the recovery to the class. Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished. *See McBean,* 233 F.R.D. at 392 (stating that if "money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members"). Still, even where the defendant pays the attorneys' fees, a court must assess the reasonableness of the fee award, particularly because practical realities suggest that generally "a defendant is interested only in disposing of the total claim asserted against it," and not in "the allocation between the class payment and the attorneys' fees." *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768 at 819–20 (3d Cir. 1995).

**B**.    **The Parties Properly Negotiated the fee in this Case With the Assistance of Patrick A. Juneau Only After an Agreement Was Reached on all Other Settlement Terms.**

The parties properly negotiated the fees and expenses to be paid Sony. Plaintiffs' Counsel and Defendants' counsel separated the issues of class settlement and fees, negotiating all substantive terms of the Settlement first and deferring discussion of attorneys' fees and expenses until after all substantive terms were in place. (*See* Lax Aff. 34-37.) The fee was negotiated under

22

normal market conditions: Class Counsel wished to maximize their fees, to compensate them, as courts encourage, for their risk, contingency, innovation, work, and creativity; Defendants' counsel had a direct interest in negotiating the lowest amount their client would be required to pay. Because the fee was negotiated after all of the other aspects of the Settlement were resolved, there is no concern that the Class members were prejudiced or their benefits diminished in exchange for Class Counsel's compensation.

C.   **A Fee Negotiated at Arm's Length under the Mediator's Supervision Weighs Strongly In Favor of Approval.**

Another factor weighing strongly in favor of approval of the requested fee is that it was negotiated at arm's length under the supervision of Patrick A. Juneau. *See McBean v. City of New York,* 233 F.R.D. 377,386 (S.D.N.Y. 2006) (involvement of judicial mediator weighs strongly in favor of approval of negotiated fee). The result of these negotiations is an arm's length, negotiated, reasonable fee. The resulting negotiated total amount of $1 million for both fees and reimbursen1ent of all expenses, is also reasonable under the loadstar and percentage methods.

## CONCLUSION

For the foregoing reasons, the Court should, respectfully, grant the relief requested in full.

DATED: October 13, 2017                    **LEVI & KORSINSKY LLP**

                                           By: /s/ Nancy A. Kulesa
                                           Nancy A. Kulesa
                                           Shannon Hopkins
                                           733 Summer Street, Suite 304
                                           Samford, CT 06901
                                           Tel. (212) 363-7500
                                           Fax: (212) 363-7171
                                           E-mail: nkulesa@zlk.com
                                           E-mail: shopkins@zlk.com


                                           *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on October 13, 2017, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system which will send notification of such filing to all counsel of record.


/s/ Nancy A. Kulesa
Nancy A. Kulesa

25